No. 20-2129

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

DUSTIN JOHN HIGGS,
*PETITIONER-APPELLANT,*

V.

T. J. WATSON, WARDEN,
*RESPONDENT-APPELLEE.*

_____

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:16-cv-321, Hon. Jane Magnus-Stinson, Chief J.

_____

## APPENDIX TO BRIEF FOR APPELLANT

### Volume III

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Dated: September 25, 2020

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

# Index to Appendix

## Volume 1

District Court Order Denying Petition For Writ of Habeas Corpus, April 30, 2020 .................................................................................................... APP-001

## Volume II

*United States v. Higgs*, 353 F. 3.d 281 (4th Cir 2003) .................................. APP-008

*United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004) ................................. APP-080

*United States v. Higgs*, 711 F. Supp. 2d 479 (D. Md. 2010) .......................... APP-091

*United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011) .................................. APP-163

*United States v. Higgs*, Crim. No. PJM-98-0520, Civ. No. PJM-05-3180, 2016 WL 3541387 (D. Md.June 29, 2016) ................................................................................................ APP-187

*In re Higgs*, No. 16-8, Order (4th Cir. June 27, 2016).................................. APP-204

*In re Haynes*, No. 16-9516, Order (4th Cir. July 25, 2016) ........................... APP-206

## Volume III

*In re Higgs*, No. 20-2, Order (4th Cir. Feb. 6, 2020) .................................... APP-209

*United States v. Higgs*, Crim. No. PJM-98-520 (D. Md.), Second Superseding Indictment................................................................................................ APP-210

*United States v. Higgs*, Crim. No. PJM-98-0520 (D. Md.), Tr. 10/10/2000, Excerpts................................................................................................... APP-225

*United States v. Higgs*, Crim. No. PJM-98-0520, Verdict Form.................... APP-230

*United States v. Higgs*, Crim. No. PJM-98-0520 (D. Md.), Judgment and Order (Jan. 9, 2001) .......................................................................................... APP-233

*In re Higgs*, No. 16-8, Government's Opposition to Defendant's Application to File Successive § 2255 Mot. (4th Cir. June 3, 2016) .................................... APP-245

*In re Higgs*, No. 20-2, Resp. in Opposition of Respondent's United States of America (4th Cir. Jan. 28, 2020) ................................................................ APP-317

FILED:  February 6, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-2
(8:98-cr-00520-PJM-2)
_____

In re: DUSTIN JOHN HIGGS

  Movant


_____

O R D E R
_____

Movant has filed a motion under 28 U.S.C. § 2244 for an order authorizing the district court to consider a second or successive application for relief under 28 U.S.C. § 2255.

The court denies the motion.

Entered at the direction of Judge Floyd with the concurrence of Judge Keenan and Judge Richardson.

For the Court

/s/ Patricia S. Connor, Clerk

**APP-209**

DAJ/SW USAO#1996R00274

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. PJM-98-0520** |
| **v.** : | |
| : | (Murder, 18 U.S.C. § 1111; Kidnapping, |
| **WILLIS MARK HAYNES** : | 18 U.S.C. § 1201(a)(2); Use of a Handgun |
| **and** : | During Crime of Violence, 18 U.S.C. |
| **DUSTIN JOHN HIGGS,** : | § 924(c); Aiding and Abetting, |
| **Defendants** : | 18 U.S.C. § 2) |
| : | |

...oOo...

## SECOND SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges.

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

DEC 2 0 ⁻⁻⁻

## COUNT TWO

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

2

**000058**                                                                          **APP-211**

## ALTERNATIVE COUNT THREE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping

18 U S C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

3

## COUNT FOUR

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Tamika Black, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Tamika Black.

18 U.S.C § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

4

**000060**                                                                 APP-213

## COUNT FIVE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts One, Two, Alternative Count Three and Count Four of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C § 2

5

**000061**

## COUNT SIX

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C § 2

6

APP-216

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

**and**

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C § 7
18 U.S.C. § 2

7

**000063**

## ALTERNATIVE COUNT EIGHT

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

**and**

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C § 2

8

**000064**                                                                          **APP-217**

## COUNT NINE

The Grand Jury for the District of Maryland further charges.

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Mishann Chinn, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Mishann Chinn

18 U.S.C. § 1201(a)(2)
18 U.S C § 7
18 U S.C. § 2

9

000065

## COUNT TEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Six, Seven, Alternative Count Eight and Nine of this Second Superseding Indictment, which are incorporated by reference herein

18 U.S.C. § 924(c)
18 U.S.C. § 2

10

**000066**

APP-219

## COUNT ELEVEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

## WILLIS MARK HAYNES

### and

## DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.


18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

11

APP-221

## COUNT TWELVE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

**and**

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm. in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping

18 U.S.C. § 1111
18 U.S.C § 7
18 U.S.C § 2

12

## ALTERNATIVE COUNT THIRTEEN

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

**and**

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

13

APP-223

## COUNT FOURTEEN

The Grand Jury for the District of Maryland further charges

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Tanji Jackson, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Tanji Jackson.

18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

14

000070

## COUNT FIFTEEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Eleven, Twelve, Alternative Count Thirteen and Count Fourteen of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

_____
Lynne A. Battaglia
United States Attorney

A TRUE BILL:

_____
FOREPERSON

_____
Date

15

000071

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION


UNITED STATES OF AMERICA

    VS.                    CRIMINAL NO. PJM-98-0520

DUSTIN JOHN HIGGS

            DEFENDANT

                       Greenbelt, Maryland

                       October 10, 2000


    The above-entitled case came on for trial before the Honorable Peter J. Messitte, United States District Judge

VOLUME XVIII

A P P E A R A N C E S

For the Government:

    Deborah A. Johnston, Esquire
    Sandra Wilkinson, Esquire
    Joseph Uberman, Esquire

For Defendant Higgs:

    Harry J. Trainor, Jr., Esquire
    Timothy J. Sullivan, Esquire

Gail A. Simpkins, RPR
Official Court Reporter

APP-225

Now the defendant is charged with using or carrying a firearm during the commission of crimes of violence. If upon all the evidence you find the government has failed to prove crimes of violence beyond a reasonable doubt, you proceed no further. The handgun offenses are only to be considered by you if you first find the defendant guilty of a crime of violence.

In reaching your verdict on the handgun charges, you may consider the evidence of the crimes of violence only for the purpose of determining whether the elements of a handgun offense have been satisfied. Here is what they are. This is what the government has to prove beyond a reasonable doubt regarding the handgun offense.

First, defendant counseled, commanded, induced, procured, willfully caused or aided and abetted another to commit a crime of violence for which he might be prosecuted in a court of the United States and second, that the defendant knowingly used or carried a firearm during and in relation to the commission of the crimes charged.

The first element the government has to prove beyond a reasonable doubt is, again, the defendant committed or counseled, commanded, induced, procured or

willfully caused or aided and abetted another to commit a crime of violence for which he might be prosecuted in a court of the United States.

The defendant is charged in the indictment with the crime of murder. He is also charged in the indictment with the crime of kidnapping. I instruct you that each of these crimes are crimes of violence. However, it is for you to determine whether the government has proven beyond a reasonable doubt that the defendant committed or counseled, commanded, induced, procured, willfully caused or aided and abetted another to commit the crimes of violence charged.

The second element that has to be considered in connection with the handgun offense and which the government would have to prove beyond a reasonable doubt is that the defendant knowingly used or carried the firearm during and in relation to the commission of the murder and kidnapping charges.

A firearm is any weapon which will or is designed or may be readily converted to expel a projectile by means of an explosive. In order to prove that the defendant used or counseled, commanded, induced, procured, willfully caused or aided and abetted another to use a firearm, the government must proved beyond a

reasonable doubt an active employment of the firearm during and in relation to the commission of the crime of violence with which he is charged.

This does not mean that the defendant must actually fire or attempt to fire the weapon; although, those would obviously constitute use of the weapon. Brandishing, displaying or even referring to the weapon so that others present knew that the defendant had the firearm available if needed all constitute use of the firearm.

However, the mere possession of a firearm at or the site of a crime without active employment, as I just described it, is not sufficient to constitute a use of the firearm.

In order to prove that the defendant carried the firearm the government must prove beyond a reasonable doubt that the defendant had the weapon within his control in such a way that it furthered the commission of the crimes of violence or was an integral part of the commission of the crimes.

The defendant does not necessarily have to have held the firearm physically; that is, to have had physical possession of it on his person. If you find that the defendant had dominion and control over the place where the firearm was located and had the power

and intention to exercise control over the firearm in such a way that it furthered the commission of the crime or crimes of violence, you may find that the government has proven that the defendant carried the weapon.

It is not sufficient to prove carrying if the government, if all the government has proven is that the firearm was transported in a vehicle in which defendant was riding. There must be proof that the defendant knew of the weapon's presence and had the power and intention to exercise control of the weapon so that it was available for his use in the commission of the crime if the need arose.

To satisfy this element, you must also find that the defendant knowingly used or carried the firearm. This mean that he used or carried the firearm purposely and voluntarily and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the defendant knew that he was breaking the law.

I have indicated, Juror Number 1, you will be the foreman in this case. You will, if you need to communicate with me, as I will say later after closing argument, you will do so by written note. I will

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA        :

            V.                      :      **CRIMINAL NO. PJM-98-0520**

DUSTIN JOHN HIGGS            :

...oooOooo...

## VERDICT SHEET

1. Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tamika Black?

   Guilty    ✓          Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 2. If you find the defendant not guilty to Question 1, please proceed to Question 2. In either case, please answer Questions 3, 4, 5 and 6.

2. Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tamika Black?

   Guilty _____          Not Guilty _____

3. Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tamika Black?

   Guilty    ✓          Not Guilty _____

4. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tamika Black?

   Guilty    ✓          Not Guilty _____

5. If you find the defendant guilty of the kidnapping of Tamika Black, did the kidnapping result in her death?

   Yes    ✓          No _____

6. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black?

   Guilty    ✓          Not Guilty _____

**APP-230**

7. Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Mishann Chinn?

Guilty __✓__     Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 8. If you find the defendant not guilty to Question 7, please proceed to Question 8. In either case, please answer Questions 9, 10, 11 and 12.

8. Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Mishann Chinn?

Guilty _____     Not Guilty _____

9. Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Mishann Chinn?

Guilty __✓__     Not Guilty _____

10. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Mishann Chinn?

Guilty __✓__     Not Guilty _____

11. If you find the defendant guilty of the kidnapping of Mishann Chinn, did the kidnapping result in her death?

Yes __✓__     No _____

12. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn?

Guilty __✓__     Not Guilty _____

2

APP-231

13. Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tanji Jackson?

Guilty ✓_____ Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 14. If you find the defendant not guilty to Question 13, please proceed to Question 14. In either case, please answer Questions 15, 16, 17 and 18.

14. Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tanji Jackson?

Guilty _____ Not Guilty _____

15. Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tanji Jackson?

Guilty ✓_____ Not Guilty _____

16. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tanji Jackson?

Guilty ✓_____ Not Guilty _____

17. If you find the defendant guilty of the kidnapping of Tanji Jackson, did the kidnapping result in her death?

Yes ✓_____ No _____

18. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson?

Guilty ✓_____ Not Guilty _____

_____
Date

_____
Foreperson

3

APP-232

esp

# United States District Court
## District of Maryland

UNITED STATES OF AMERICA

v.

DUSTIN JOHN HIGGS

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed on or After November 1, 1987)

Case Number: PJM-98-0520

Defendant's Attorney: TIMOTHY J. SULLIVAN & HARRY J. TRAINOR, JR.

Assistant U.S. Attorney: DEBORAH JOHNSTON & SANDRA WILKINSON

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____, which was accepted by the court.

☒ was found guilty on count(s) _5, 10 & 15 of Second Superseding Indictment_ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:924(c) & 18:2 | Use of a Handgun During Crime of Violence; Aiding and Abetting | January 27, 1996 | 5ss, 10ss, 15ss |

The defendant is adjudged guilty and sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Counts _____ (is)(are) dismissed on the motion of the United States.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's SSN: 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
Defendant's Date of Birth: 3/10/1972
Defendant's U.S.M. No.: 31133-037

Defendant's Residence Address:
NONE LISTED

Defendant's Mailing Address:
NONE LISTED

Name of Court Reporter: SIMPKINS

_____JANUARY 3, 2001_____
Date of Imposition of Judgment

PETER J. MESSITTE    1/5/01    Date
UNITED STATES DISTRICT JUDGE

I hereby attest and certify on _____ Jun. 8, 2001 _____ that the foregoing is a full, true and correct copy of the original on file in my office and in my legal custody.

FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _____ Deputy

APP-233

**DEFENDANT:**     **DUSTIN JOHN HIGGS**          **CASE NUMBER: PJM-98-0520**

# IMPRISONMENT

The Court has imposed consecutive sentences of death as to each of Counts 1,2,4,6,7,9,11, 12 & 14 of Second Superseding Indictment. In addition to the death Counts, the Court imposes the following sentences relative to the handgun Counts: The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of; as to Count 5 of Second Superseding Indictment - 5 years consecutive to all sentences currently being served and consecutive to the death sentence imposed in Counts 1, 2,4,6,7,9,11,12 & 14 , as to Count 10 of Second Superseding Indictment - 20 years consecutive to Count 5; as to Count 15 of Second Superseding Indictment - 20 years consecutive to Count 10.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at _____ a.m./p.m. on _____.
     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender, at his/her own expense, to the institution designated by the Bureau of Prisons at the date and time specified in a written notice to be sent to the defendant by the United States Marshal. If the defendant does not receive such a written notice, defendant shall surrender to the United States Marshal:

     ☐ before 2 p.m. on _____.

**A defendant who fails to report either to the designated institution or to the United States Marshal as directed shall be subject to the penalties of Title 18 U.S.C. §3146. If convicted of an offense while on release, the defendant shall be subject to the penalties set forth in 18 U.S.C. §3147. For violation of a condition of release, the defendant shall be subject to the sanctions set forth in Title 18 U.S.C. §3148. Any bond or property posted may be forfeited and judgment entered against the defendant and the surety in the full amount of the bond.**

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____ at _____
_____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
     DEPUTY U.S. MARSHAL

**APP-234**

DEFENDANT: DUSTIN JOHN HIGGS                    CASE NUMBER: PJM-98-0520

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  5 years as to each of Counts 5, 10 & 15 of Second Superseding Indictment, to run concurrent to each other  .

**The defendant shall comply with all of the following conditions:**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

### STATUTORY CONDITIONS OF SUPERVISED RELEASE

The defendant shall not commit any federal, state or local crime.

In any felony case, the defendant shall not possess a firearm as defined in 18 U.S.C. §921.

The defendant shall not illegally use or possess a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.
  ☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

If this judgment imposes any criminal monetary penalty, including special assessment, fine, or restitution, it shall be a condition of supervised release that the defendant pay any such monetary penalty that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment. The defendant shall notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

## STANDARD CONDITIONS OF SUPERVISION

1) The defendant shall not leave the judicial district without the permission of the court or probation officer;
2) The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) The defendant shall support his or her dependents and meet other family responsibilities;
5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) The defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) The defendant shall refrain from excessive use of alcohol;
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons convicted of a felony unless granted permission to do so by the probation officer;
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12) The defendant shall notify the probation officer within 72 hours of being charged with any offense, including a traffic offense;
13) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;
14) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendants's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

APP-235

DEFENDANT:    DUSTIN JOHN HIGGS    CASE NUMBER: PJM-98-0520

## SUPERVISED RELEASE
## ADDITIONAL CONDITIONS

### 1. SUBSTANCE ABUSE

☒ The defendant shall satisfactorily participate in a treatment program approved by the probation officer relating to substance and/or alcohol abuse, which may include evaluation, counseling, and testing as deemed necessary by the probation officer.

APP-236

**DEFENDANT:      DUSTIN JOHN HIGGS**                    **CASE NUMBER: PJM-98-0520**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $ 600.00 | $ | $ 13,687.22 |

☐ If applicable, restitution amount ordered pursuant to plea agreement. . . . . . . . . . . . $

## FINE

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the 15th day after the date of judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g).

☒ The court has determined that the defendant does not have the ability to pay a fine; therefore, a fine is waived.

☐ The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived.

☐ The interest requirement is modified as follows:

## RESTITUTION

☐ The determination of restitution is deferred until _____. An Amended Judgment in a Criminal Case will be entered after such determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|
| Financial Litigation Unit U.S. Attorney's Office, Suite 6625 101 West Lombard Street Baltimore, MD 21202 | Representative of Tamika Black: $3,850.00 | |
| | Representative of Mishann Chinn: $5,114.09 | |
| | Representative of Tanji Jackson $4,723.13 | |

**APP-237**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
     vs.                     )    Case No. PJM-98-0520
                             )
DUSTIN JOHN HIGGS,           )
                             )
            Defendant.       )

## JUDGMENT AND ORDER

The Defendant, Dustin John Higgs, was represented by Harry Trainor, Knight, Manzi, Nussbaum & LaPlaca, 14440 Old Mill Road, Upper Marlboro, Maryland 20772, and Timothy J. Sullivan, Esq., Sullivan & Sullivan, 7305 Baltimore Avenue, Suite 301, College Park, MD 20740-3234.

The Defendant was found guilty on Counts 1-15 by a jury after a plea of not guilty. Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14 are offenses punishable by death. Accordingly, the Defendant is adjudged guilty of such counts, involving the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number |
|---|---|---|---|
| 18 U.S.C. § 1111 | First Degree Premeditated Murder of Tamika Black | January 27, 1996 | 1 |
| 18 U.S.C. § 1111 | First Degree Murder of Tamika Black Which Occurred During Perpetration or Attempted Perpetration of a Felony (Kidnapping) | January 27, 1996 | 2 |
| 18 U.S.C. § 1201(a)(2) | Kidnapping of Tamika Black Which Resulted in Her Death | January 27, 1996 | 4 |
| 18 U.S.C. § 1111 | First Degree Premeditated Murder of Mishann Chinn | January 27, 1996 | 6 |

**APP-238**

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number |
|---|---|---|---|
| 18 U.S.C. § 1111 | First Degree Murder of Mishann Chinn Which Occurred During Perpetration or Attempted Perpetration of a Felony (Kidnapping) | January 27, 1996 | 7 |
| 18 U.S.C. § 1201(a)(2) | Kidnapping of Mishann Chinn Which Resulted in Her Death | January 27, 1996 | 9 |
| 18 U.S.C. § 1111 | First Degree Premeditated Murder of Tanji Jackson | January 27, 1996 | 11 |
| 18 U.S.C. § 1111 | First Degree Murder of Tanji Jackson Which Occurred During Perpetration or Attempted Perpetration of a Felony (Kidnapping) | January 27, 1996 | 12 |
| 18 U.S.C. § 1201(a)(2) | Kidnapping of Tanji Jackson Which Resulted in Her Death | January 27, 1996 | 14 |

As pronounced on October 26, 2000, the Defendant is sentenced as provided on pages 3-6 of this judgment as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14. The judgment as to Counts 5, 10 and 15 will be entered in a separate order. The sentence as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14 is also imposed pursuant to Title 18, United States Code, Sections 3591 through 3597, including particularly Sections 3594 and 3596.

It is ordered that the Defendant shall pay to the United States a special assessment of ~~$100.00~~ $50.⁰⁰ for Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14, which shall be due immediately. The special assessment as to Counts 5, 10 and 15 will be assessed in a separate order.

**APP-239**

## SENTENCE

Based upon the Special Findings and Decision of the jury on October 26, 2000, pursuant to the conviction of the defendant, DUSTIN JOHN HIGGS, under Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14, the Court hereby imposes upon the defendant a sentence of death as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14.  The Court declines to impose a fine due to the defendant's inability to pay.

The sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service.

The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death.

The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner than 60 days from the entry of the judgment of death.  If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted, at a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons, by a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal, and by intravenous injection of a

**APP-240**

lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal. Unless the President interposes, the United States Marshal shall not stay execution of the sentence on the basis that the prisoner has filed a petition for executive clemency.

Except to the extent a court orders otherwise:

(a) The Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case the Warden shall notify the prisoner as soon as possible.

(b) Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisors (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution. Upon approval of the Director of the Federal Bureau of Prisons, the Warden may grant access to such other proper persons as the prisoner may request.

(c) In addition to the Marshal and the Warden, the following persons shall be present at the execution:

APP-241

(1)   Necessary personnel selected by the Marshal and Warden;

(2)   Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;

(3)   Not more than the following numbers of persons selected by the prisoner:

> (i)   one spiritual advisor;
>
> (ii)  two defense attorneys;
>
> (iii) three adult friends or relatives; and

(4)   Not more than the following numbers of persons selected by the Warden:

> (i)   eight citizens; and
>
> (ii)  ten representatives of the press.

(d)   No other person shall be present at the execution, unless leave for such person's present is granted by the Director of the Federal Bureau of Prisons.  No person younger than 18 years of age shall witness the execution.

(e)   The Warden should notify those individuals described in paragraph (c) of this section as soon as practicable before the designated time of the execution.

(f)   No photographic or other visual or audio recording of the execution shall be permitted.

(g)   After the execution has been carried out, qualified personnel selected by the Warden shall conduct an examination of the body of the prisoner to determine that death has occurred and

shall inform the Marshal and Warden of his determination. Upon notification of prisoner's death, the Marshal shall complete and sign the Return hereunder or any similar document and shall file such document with the sentencing court.

(h) The remains of the prisoner shall be disposed of according to procedures established by the Director of the Federal Bureau of Prisons.

No officer or employee of the Department of Justice shall be required to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics. For purposes of this section, the term "participation" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

The defendant, DUSTIN JOHN HIGGS, is hereby committed to the custody of the Attorney General or her authorized representative for appropriate detention pending exhaustion of the procedures for appeal of the judgement of conviction and for review of the sentence, and pending execution of this sentence.

Signed this 3 day of January, 2006.

Peter J. Messitte
United States District Judge

I hereby attest and certify on [illegible] that the foregoing document is a full, true and correct copy of the original on file in my office and in my custody.

FELICIA C. CANNON
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

_____ Deputy

APP-243

RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

_____ Defendant delivered on _____ to _____

at _____,

with a certified copy of this judgment.


_____
United States Marshal


By: _____
        Deputy Marshal


I hereby inform this Honorable Court that the sentence of death imposed herein has been executed.


Date: _____        _____
                                    DESIGNATED UNITED STATES MARSHAL

**APP-244**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|                              |   |          |
|------------------------------|---|----------|
|                              | * |          |
|                              | * |          |
| **IN RE: DUSTIN JOHN HIGGS** | * | NO.  16-8 |
|                              | * |          |
|                              | * |          |
|                              | * |          |
|                              | * |          |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## GOVERNMENT'S  OPPOSITION TO DEFENDANT'S APPLICATION TO FILE SUCCESSIVE § 2255 MOTION

The United States of America, by its undersigned counsel, respectfully opposes defendant Dustin John Higgs's pending application for leave to file a successive motion under 28 U.S.C. § 2255.  The government submits the following in support of its opposition.

### INTRODUCTION

Movant Dustin John Higgs ("Higgs") was convicted of three counts of first-degree premeditated murder, in violation of 18 U.S.C. § 1111(a), three counts of first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*, and three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a), arising out of the brutal January 27, 1996 killings of three

1

APP-245

young women in the Patuxent National Wildlife Refuge in Maryland.[1]  Higgs was

also charged and convicted of three counts of using a firearm "during and in

relation to [a] crime of violence."  18 U.S.C. § 924(c).  Ultimately, Higgs received

nine death sentences under the Federal Death Penalty Act, *see* 18 U.S.C. § 3591 *et

seq*., one for each murder and kidnapping count, and a consecutive 45-year

sentence for the firearms convictions.  This Court affirmed each of Higgs's

convictions and sentences, and the Supreme Court denied certiorari.  *Higgs*, 353

F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004).  Higgs filed a motion

for new trial, which the district court rejected; this Court affirmed.  *See United

States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004), *cert. denied*, 503 U.S. 1004

(2004).  Higgs then filed a motion for relief under 28 U.S.C § 2255, which the

district court denied.  This Court again affirmed, in a lengthy published opinion

authored by Chief Judge Traxler.  *United States v. Higgs*, 663 F.3d 726 (4th Cir.

2011), *cert. denied*, 133 S. Ct. 787 (2012).

Pending now before this Court is Higgs's 489-page "Application for Leave

to File a Successive Motion Under 28 U.S.C. § 2255," which he filed on May 23,

2016.  ECF No. 2-1.  This Court has requested a government response no later than

June 3, 2016.  ECF No. 7.

---

[1]    The factual recitation provided herein is taken from this Court's decision
affirming Higgs's convictions and nine death sentences in *United States v. Higgs*,
353 F.3d 281 (4th Cir. 2003).  *See also* **Exh. 1** (Second Superseding Indictment).

2

In his pending application, Higgs does not challenge his multiple convictions for first-degree premeditated murder and kidnapping.  Neither does he challenge his numerous death sentences, each of which has been upheld by this Court and by the Supreme Court after numerous challenges stretching over a dozen years. Instead, Higgs challenges only his firearms convictions (and, by extension, the associated sentences) under 18 U.S.C. § 924(c).  Those convictions, in turn, are predicated upon the defendant's convictions (1) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black," **Exh. 2** (verdict sheet) at 1; (2) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn," *id*. at 2; and (3) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson." *Id*. at 3.

Higgs advances in his pending application the procedurally defaulted claim that his underlying convictions for first-degree murder and kidnapping "fail to categorically qualify as 'crime[s] of violence'" for purposes of § 924(c).  ECF No. 2-1 at 3.  On his view, the "residual clause" of § 924(c)'s definition of "crime of violence" is void for vagueness in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which construed the differently worded and differently structured "residual clause" of the Armed Career Criminal Act ("ACCA"), found at 18 U.S.C. § 924(e).  Whether the § 924(c) residual clause

3

is unconstitutionally vague is a deeply contested issue that has split the circuits—though one would never know that in reading Higgs's application.[2]  Higgs further argues that "both murder and kidnapping fail to categorically qualify as a 'crime of violence' under [Section 924(c)'s] remaining force clause."  ECF No. 2-1 at 3.  Therefore, he argues "the 'crime of violence' element cannot be satisfied here under § 924(c), and the convictions are unconstitutional."  *Id.*

For reasons described in further detail below, this Court should deny Higgs's application because he has failed to make even a prima facie showing that his proposed successive § 2255 motion is based on a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review.  28 U.S.C. § 2255(h)(2); *Tyler v. Cain*, 553 U.S. 656, 662 (2001); *United States v. Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citation omitted) ("prima facie showing" means "simply a sufficient showing of possible merit to warrant a fuller explanation by the district court").  Stated simply, Higgs's multiple convictions for first-degree premeditated murder plainly qualify as predicate "crime[s] of violence" for purposes of § 924(c).  No

---

[2]  *Compare United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016) (Section 924(c) residual clause is *not* unconstitutionally vague) to *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) (18 U.S.C. § 16(b), which is identically-worded, is unconstitutionally vague); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same).  In addition, a recent Fifth Circuit panel decision holding that § 16(b) is unconstitutionally vague was vacated on the Court's own motion, and reset for rehearing en banc.  *See United States v. Gonzalez-Longoria*, 815 F.3d 189 (5th Cir. 2016) (en banc argument on May 24, 2016).

4

court has held otherwise; no principle of law (found in *Johnson* or any other case) gestures differently; and simple common sense confirms that ***first-degree premeditated murder***, let alone kidnapping, is an offense that, at the very least, has "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).[3]

## FACTS

On the evening of Friday, January 26, 1996, Dustin John Higgs, Willie Mark Haynes, and Victor Gloria drove from Higgs's apartment at 13801 Briarwood Drive in Laurel, Maryland, to Washington, D.C. Arriving in the city in Higgs's blue Mazda MPV van, the men picked up Tanji Jackson, Tamika Black, and Mishann Chinn. Jackson knew Higgs, and they had arranged for Haynes to date Black and for Gloria to date Chinn. After stopping at a liquor store, the couples returned to Higgs's apartment to drink alcohol and listen to music. The men also

---

[3] In the alternative, for the reasons described in Section IV below, this Court should hold consideration of Higgs's application in abeyance, pending resolution of other cases currently before this Court. Because those cases could resolve various potentially case-dispositive questions at issue in this case, this Court should economize its (and the district court's) resources and withhold ruling on Higgs's application until the need to do so has fully ripened. The government is unaware of any legal impediment to the Court's authority to hold the defendant's application in abeyance. *See In re Vial*, 115 F.3d 1192, 1194 n.3 (4th Cir. 1997) (en banc) (court of appeals may extend consideration of defendant's application to file second or successive § 2255 motion if "the importance of the issue presented justified the delay," despite language in 28 U.S.C. § 2244(b)(3)(D) requiring decision within 30 days of filing or of receipt of response).

APP-249

smoked marijuana.[4]

Early on January 27, Higgs and Jackson began to argue, prompting Jackson to grab a knife from the kitchen. Hearing the commotion, Haynes, who had been in a bedroom with Black, broke up the fight, convincing Jackson to surrender the knife. Jackson, however, remained angry, and the three women left the apartment. As Jackson exited, "[s]he stopped at the door and said something like I am going to get you all f---ed up or robbed" or made "some kind of threat." The remark led Higgs to comment that Jackson "do know a lot of n-----s." Higgs saw Jackson stop and copy the license plate number of his van. Angered, Higgs commented aloud about Jackson's actions, which Gloria interpreted as concern that Jackson intended some retaliation.

Higgs said, "f---- that," retrieved his coat, and urged the men to come with him. Before leaving the apartment, Higgs took a silver .38 caliber firearm from the end table drawer and put it in his pocket. With Higgs driving the MPV van, Haynes in the front passenger seat, and Gloria behind Higgs, the men pursued the three women. Seeing the women walking on the side of the road, Higgs instructed

---

[4]   Following a 1998 arrest on federal drug charges, Gloria agreed to cooperate in the government's murder case against Higgs and Haynes. Gloria's testimony was partially corroborated by Chinn's mother and by a friend of the Jackson family, both of whom saw the victims enter a blue Mazda MPV van. Gloria pleaded guilty to being an accessory after the fact to the murders and received 84 months' incarceration and three years of supervised release.

6

Haynes to get them in the vehicle. Haynes complied, and the three women got into the back seat of the vehicle, which Higgs drove toward Washington, D.C.

According to Gloria, while en route to Washington, D.C., Higgs and Haynes leaned towards each other and quietly conversed. Higgs drove past the Baltimore-Washington Parkway into the Patuxent National Wildlife Refuge, a federal property within the jurisdiction of the United States Park Police. When he pulled over at a secluded location, one of the girls asked if they were trying to "make [them] walk from [t]here?" Higgs responded, "something like that." When the women exited the van, Higgs handed his gun to Haynes, who put it behind his back and left the van. Moments later, Gloria heard a gunshot and wiped the mist off the back window in time to see Haynes shoot one of the women in the chest. Gloria turned to ask Higgs what he was doing, but saw Higgs holding the steering wheel and watching the shootings in the rearview mirror. Gloria put his head down and listened to more shots and the sound of a woman screaming.

When the shooting ended, Haynes reentered the van and closed the door. He or Higgs then commented that they had to "get rid of the gun." Higgs drove to the Anacostia River, where he or Haynes threw the gun into the water. Higgs then drove back to his apartment, which the three men proceeded to sanitize of evidence. They wiped the patio doors and "everything else, the bathroom, the doorknobs, the stereo," and threw away any items the women might have touched,

7

such as CDs, videotapes, and liquor bottles. The men left the apartment and dropped the trash by a dumpster. Higgs and Haynes left Gloria at a fast food restaurant with an admonition to "keep [his] mouth shut."

Around 4:30 a.m., a motorist found the murdered women's bodies strewn about a roadway and contacted the Park Police. Jackson's day planner was found at the scene. It contained Higgs's nickname and telephone number, as well as a note that read "13801 'MAZDA' 769GRY" — the street number of Higgs's apartment and the tag number for his van. The police also recovered a .38 caliber wadcutter bullet at the scene. According to the medical examiner, Jackson and Black each had been shot once in the chest and once in the back. Chinn had been shot once in the back of the head.

### ARGUMENT

**1.**    **Courts may not extend *Johnson* to other legal contexts outside the ACCA in a successive habeas petition.**

*Johnson* invalidated "the 'residual clause' *of the ACCA*," *Pakala v. United States*, 804 F.3d 139, 139 (1st Cir. 2015) (per curiam) (emphasis added), based on "[t]wo features" that "conspire[d]" to make it vague:   (1) the difficulty of determining how much risk is required, and (2) the application of a risk-based standard to a hypothetical "ordinary case." *Johnson*, 135 S. Ct. at 2557, 2558. The Supreme Court emphasized, however, that its ruling should not be understood to raise doubts about (much less invalidate) other laws using similar risk-based

8

language.  *Id.* at 2561 ("The Government and the dissent next point out that dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt. . . .  Not at all.").  The Court's recent decision in *Welch v. United States* reaffirmed this point, emphasizing that *Johnson* "cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages in a particular occasion.'"  136 S. Ct. at 1261.  Because *Johnson* did not address § 924(c)(3)(B)'s residual clause, it did not invalidate that clause of its own force.  *See Taylor*, 814 F.3d at 378 (*Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes").

To be sure, *Johnson*'s reasoning provides an additional basis for challenging other differently worded residual clauses in different statutes, and some courts have extended *Johnson* in this manner.  *See United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) ("Applying *Johnson*'s reasoning here, we conclude that Section 16(b) is unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same).  Although the merits of that issue are not before the Court at this time, it is enough to note that these decisions cannot bear the weight defendant assigns to them because they were decided on direct appeal (or on a petition for review of an agency determination), a setting where appellate courts

9

appropriately decide whether to modify or refine precedent. *See generally United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) ("[D]irect review is more defendant-friendly than post-judgment review."). The instant case is a successive collateral attack on a final judgment. Accordingly, the defendant must shoulder a far greater burden here out of respect for the heightened finality interests at stake. *Id*. ("[A]n initial habeas petition is easier for a criminal defendant to litigate than a successive one."). To meet that burden, it is not enough for the defendant to argue what the law *should* be; rather, he must present a claim that is based on what the law *is* and has been recognized to be. Where a claim depends on the *extension* of precedent, it follows that authorization *cannot* be granted because the Court would need to announce a new rule of law for the first time in the defendant's own case, which it cannot do. *Cf. Tyler*, 533 U.S. at 667 (holding that the Supreme Court cannot "today" make a new rule retroactive in the defendant's own case for purposes of a successive application).

The statutes regulating successive § 2255 motions support this view. Acting in their gatekeeping capacity, the courts of appeals are not asked to conduct a plenary merits review in these cases; instead, they need only decide whether the defendant has made a "prima facie showing" that his claim satisfies one of two narrow sets of statutory criteria. 28 U.S.C. § 2244(b)(3)(C). And in making that determination, Congress has imposed strict procedural limitations: the proceedings

10

are truncated, often non-adversarial, and subject to expedited disposition. 28 U.S.C. § 2244(b)(3)(D) (applications must generally be decided within 30 days). The 30-day time frame for decision in particular is evidence that Congress generally intended the courts of appeals, acting as gatekeepers, to make a quick up-or-down determination after comparing the defendant's allegations to the statutory conditions for authorization without the need to undertake difficult legal analysis. *See Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001) ("[s]hortness of time" for resolving successive applications "implies a mechanical process; all the court need do is look up an answer in the United States Reports"); *cf. Tyler*, 533 U.S. at 664 (AEDPA's "stringent time limit" means that the courts of appeals should not have to undertake "the difficult legal analysis that can be required to determine questions of retroactivity in the first instance"). Accordingly, when an application depends on the extension of precedent rather than its application, authorization should be denied.

This Court should deny defendant's application because it is "clear as a matter of law," from both *Johnson*'s holding and its express disavowal of an intent to cast doubt on the constitutionality of other statutes, that Higgs's "identified constitutional rule"—*i.e.*, *Johnson*'s rule invalidating the ACCA's residual clause—"does not apply" to his situation because the defendant is not challenging an ACCA-enhanced sentence. There may be reasonable arguments why the

11

*Johnson* rule *should* be extended to a situation like defendant's, but that is insufficient to justify a successive collateral attack. *In re Garner* illustrates this point. Garner sought leave to file a successive collateral attack based on *Roper v. Simmons*, 543 U.S. 551 (2005), which held that the Eighth Amendment forbids the execution of a defendant who was 18 at the time of his crime. Although Garner conceded that he was more than 18 years old at the time of his crime, he argued that his death sentence was invalid under *Roper* because he had the mental age of a 14-year-old. The Sixth Circuit denied Garner's application because *Roper* had not articulated the rule of law upon which Garner's claim was based: "[t]he *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18. Rather, *Roper* clearly held that a sentence of death may not be imposed upon an offender with a *chronological* age of less than 18." *Id*. at 535-536 (emphasis in original). And while the court acknowledged reasonable policy arguments supporting Garner's novel mental-age rule, "in this analysis," the court, acting as a gatekeeper, was "confined to a consideration of constitutional law as it presently stands"; and because Garner's claim depended on a novel "extension of the law," Garner, by definition, had not made a prima facie showing. *Id*.; *see also In re Neville*, 440 F.3d 220 (5th Cir. 2006) (denying leave to file successive motion that sought an extension of a new

12

APP-256

rule).  The same reasoning applies here.  And nothing in *Welch* leads to a different result.  Higgs's application should therefore be denied.

The denial of a defendant's application is without prejudice to his right to file a new application in the event the law changes.  *See Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir. 2000).  The courts of appeals to consider *Johnson*'s applicability to statutes other than the ACCA have divided on that question, and the Fifth Circuit recently heard en banc argument on § 16(b)'s constitutionality after granting rehearing in *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016).  The existence of a circuit conflict creates a reasonable probability that the Supreme Court will grant certiorari, *see* S. Ct. R. 10(a), and that likelihood is enhanced by the fact that the conflict concerns the constitutionality of a federal statute.  If and when the Supreme Court eventually grants review and holds that *Johnson* extends to statutes like § 924(c), then a defendant could, within a year of that new decision, file a new application requesting leave to file a successive § 2255 motion invoking that new rule of law.  Of course, even then, defendant's claim would fail for the other reasons stated in this response—but Higgs (as well as other defendants) seeking to challenge a § 924(c) conviction could obtain authorization for a successive § 2255 then.

    *2.* **Higgs's Multiple Convictions For Kidnapping Plainly Qualify As "Crime[s] Of Violence" For Purposes Of The 18 U.S.C. § 924(c) "Force" Clause.**

13

**APP-257**

An offense is committed under the kidnapping statute when the defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" and that action impacts interstate or foreign commerce in any number of enumerated ways. *See* 18 U.S.C. § 1201(a). "To establish a violation of § 1201(a), the government must prove that: (1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away; (2) the victim was held; and (3) federal jurisdiction." *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (hereinafter "*Wills I*") (footnote omitted).

While the first prong can be accomplished through deceit rather than force, precedent instructs that the second prong necessarily requires the exercise of violent force or the threat thereof, as contemplated by *Johnson*. This Court has determined that, in the context of this statute, "to hold means to detain, seize, or confine a person in some manner against that person's will." *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) (hereinafter "*Wills II*"); *see United States v. Blackmon*, 209 F. App'x 321, 325 (4th Cir. Dec. 13, 2006) (unpublished) (acquittal under § 1201(a) only warranted if jury found that defendant mistakenly believed victim *consented* to being "held"); *United States v. Higgs*, 353 F.3d 281, 313 (4th Cir. 2003) (rejecting challenge to the "holding" element where the evidence supported the conclusion that the kidnapper "was prepared to confine [his

14

inveigled victims] at gunpoint if necessary"). *See also United States v. Boone*, 959 F.2d 1550, 1555 n.5 (11th Cir. 1992) (noting that "inveiglement becomes an unlawful form of kidnapping under the statute when the alleged kidnapper interferes with his victim's actions, exercising control over his victim through the willingness to use forcible action should his deception fail").

Further, the Supreme Court has found that "[i]t is this 'involuntariness of seizure and detention which is the very essence of the crime of kidnaping.'" *See United States v. Lentz*, 383 F.3d 191, 200 (4th Cir. 2004) (quoting and citing *Chatwin v. United States*, 326 U.S. 455, 460 (1946)). In order to hold a victim against his or her will, then, the alleged kidnapper must use, attempt to use, or threaten to use force necessary to restrain that individual. In other words, because the federal kidnapping statute requires an "involuntar[y] . . . seizure and detention," *Lentz*, 383 F.3d at 200, and requires that the victim be detained, seized, or confined "against that person's will," *Wills II*, 346 F.3d at 493, the federal kidnapping offense necessarily involves the use, attempted use, or threatened use of force. Kidnapping victims cannot be held against their wills by kidnappers without at least a threatened use of force. The Supreme Court has observed that "a person would 'use . . . physical force against' another when pushing him," *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), and in the context of discussing batteries, the Court has defined force in terms of what it was "capable of causing" – namely,

15

"physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Federal kidnapping's requirement of detaining a person against that person's will fits within that understanding of physical force and is a "force strong enough to constitute 'power.'" *Johnson*, 559 U.S. at 142. *Cf. United States v. Mechor-Mecono*, 620 F.3d 1180, 1186 (9th Cir. 2010) (placing another in fear of being poisoned necessarily involves threatening to force the poison on the victim). Thus, kidnapping appropriately qualifies as a predicate crime of violence under § 924(c)(3)(A).

> *3.* **Higgs's Multiple Convictions For First-Degree Murder Plainly Qualify As "Crime[s] Of Violence" For Purposes Of The 18 U.S.C. § 924(c) "Force" Clause.**

No federal court has held after *Johnson* that murder is not a crime of violence. Higgs argues that murder does not satisfy § 924(c)(3)(A) because (1) felony murder does not require the intentional use of violent force because a person could die as a result of an accident or reckless conduct during the course of a felony, and (2) premeditated murder does not categorically require the use of violent force because murder may be accomplished through poisoning, trickery, or withholding a life-saving medication or sustenance.

Higgs's argument that murder can be accomplished without force should be rejected. First, the defendant's narrow view of force would erroneously imply that murder has never been properly classified as a crime of violence under § 924(c)—

16

even without *Johnson.* Section 924(c)(3)(B), like § 16(b), turns on "a substantial risk that *physical force* against the person or property of another may be used in the course of committing the offense." Section 924(e)(2)(B)(ii) of the ACCA, by contrast, applies to "any crime" that "involves conduct that presents a serious potential risk of *physical injury* to another." Because both prongs of the crime-of-violence definitions in § 924(c)(3) and § 16 turn on "physical force," defendant's theory that murder can be accomplished without force, would imply that murder could never be a crime of violence under either statute even before *Johnson.* But again that is obviously wrong.

More fundamentally, defendant's theory cannot be reconciled with either Supreme Court precedent or the structure and legislative history of the statute. Courts "must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Torres*, 136 S. Ct. at 1626 (quoting *Abramski*, 134 S. Ct. 2259, 2267 (2014)). While interpreting the ACCA's elements clause, the Supreme Court has defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). But the Court did not limit the means of causing injury, and the Court later *rejected* a defendant's argument that "although '[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or

17

she sprinkles poison in a victim's drink.'" *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014).  More recently, in concluding that arson may involve "physical force" within the meaning of § 16, the Supreme Court concluded that some state arson offenses would fall outside the scope of § 16 not because burning property does not involve "physical force," but because § 16 is limited to physical force against the "property of another."  Hence, § 16 "would not reach arson in the many States defining that crime to include the destruction of one's own property." *Torres*, 136 S. Ct. at 1630.  And as the dissent in *Torres* noted, this Court has already agreed with the broad reading of "physical force" under § 16.  *Id.* at 1637 n.1 (citing *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007)).

The legislative history of § 924(c) confirms this reading.  When the crime of violence standard was added to § 924(c) in 1984, *see, e.g., Bailey v. United States*, 516 U.S. 137, 147-48 (1995), a Senate report explained that § 924(c) would reach offenses such as bank robbery under 18 U.S.C. § 2113(a) and assaulting a federal officer under 18 U.S.C. § 111.  "As amended by Part D, Section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer."  S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.S.C.A.N. 3182, 3491 (Aug. 4, 1983).  These are offenses that satisfy the elements clause of § 924(c), as confirmed by the legislative history of the ACCA.

18

As the D.C. Circuit has noted, Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would "include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *Mathis*, 963 F.2d at 407 (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)). It is profoundly unpersuasive that *assaulting* a federal officer under § 111 would count as a crime of violence under § 924(c)(3), but that *murder* does not.

Likewise, using the slight force needed to pull the trigger of a gun, causing death, constitutes a use of physical force. *Castleman*, 134 S. Ct. at 1415 (citing that example). *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting § 16(a) and concluding that "a person would 'use . . . physical force against' another when pushing him"). Indeed, "[s]pecifying that 'physical force' must rise to the level of bodily injury does not suggest that without the qualification 'physical force' would consist of the merest touch. It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example." *Johnson*, 559 U.S. at 143.

Defendant's view would also gut the federal solicitation statute, 18 U.S.C. § 373, which was enacted in 1984 when Congress added the crime of violence standard to § 924(c), and § 373 has *solely* an elements clause. Yet § 373 does

19

cover solicitation to commit murder.  *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).

Higgs argues that felony-murder liability eliminates murder from § 924(c)(3)(A) and § 373.  But that is wrong.  Felony-murder law would satisfy § 924(c)(3)(A).  *See, e.g., Wooden v. Commonwealth*, 284 S.E.2d 811 (Va. 1981). Defendant's arguments also rely on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), and other cases that (1) do not construe § 924(c), (2) predate Supreme Court cases like *Castleman* and *Torres*, and (3) would result, on defendant's view, in no federal offense ever satisfying § 924(c)(3)(A).  Even this Court's recent ruling in *United States v. McNeal*, 818 F.3d 141, 152-53 (4th Cir. 2016), holding that bank robbery satisfies § 924(c)(3)(A), would be wrong on defendant's view because bank robbery can be accomplished by shoving a bank teller to the ground while robbing the bank.  But both bank robbery and murder are paradigmatic crimes of violence, as Congress recognized.

> **4.    Alternatively, This Court Should Hold Higgs's Application In Abeyance Pending Several Potentially Case-Dispositive Cases That Are Currently Pending In This Court.**

Left unsaid in Higgs's application is the fact that a number of potentially case-dispositive issues are currently pending in this Court.  One of the relevant cases has completed briefing and oral argument, while the others are in more preliminary stages.  Specifically:

20

- *In re: Creadell Hubbard*, No. 15-276, addresses whether the Supreme Court's ruling in *Johnson* applies retroactively on collateral review to the Section 924(c) residual clause. That, of course, is an issue of paramount relevance to this case. *Hubbard* was argued on January 28, 2016, and the case remains pending. If this Court rules against Hubbard, then even Higgs must admit that he would have no basis for filing a successive § 2255 motion.

- *United States v. Donald Walker*, No. 15-4301, and *United States v. Bradley Campbell*, No. 15-4281, both address whether a conviction under the federal kidnapping statute qualifies as a "crime of violence" for purposes of § 924(c), in light of *Johnson*. The *Walker* case has completed briefing and was tentatively calendared for this Court's May 2016 argument session, before being continued to its "awaiting calendar" docket. The *Campbell* case is currently at the briefing stage, with the defendant's reply brief due on May 26, 2016. If this Court rules that kidnapping is (and remains) a § 924(c) "crime of violence," then Higgs again would have no legal basis to pursue a successive § 2255 motion.

Stated simply, the principle of judicial economy counsels that if this Court does not wish to immediately deny Higgs's application because first-degree premeditated murder is a § 924(c) "crime of violence,"[5] it should hold Higgs's application in abeyance until the above-described cases have been decided. If kidnapping is found to be a § 924(c) predicate—or if this Court finds that *Johnson* does not apply on collateral review to convictions secured under § 924(c)—then Higgs's application must be denied as a matter of law, and neither this Court nor the district court will have expended any resources in the interim. Conversely, if

---

[5] *Cf. United States v. Hare*, ___ F.3d ___, 2016 WL 1567051, * 10 (4th Cir. 2016) (avoiding the merits of defendants' argument that Hobbs Act robbery is no longer a § 924(c) "crime of violence" post-*Johnson*, because the jury convicted the defendants of qualifying predicate drug trafficking crimes).

21

APP-265

kidnapping is found *not* to be a "crime of violence," then this Court can address the question of whether Higgs has made out a prima facie case that his multiple first-degree premeditated murder convictions are not "crime[s] of violence" at that time. Either way, holding this case in abeyance will promote the interests of "judicial efficiency [and] conservation of scarce judicial resources," *United States v. Metzger*, 3 F.3d 756, 758 (4th Cir. 1993). That is especially the case here, where Higgs's application raises challenges only to his firearms convictions, and raises no claims whatsoever with respect to his nine separate death sentences.

## CONCLUSION

WHEREFORE, because (1) the Supreme Court has not set forth a new rule of constitutional law applicable to 18 U.S.C. § 924(c), and (2) premeditated first-degree murder is unquestionably a "crime of violence" for purposes of § 924(c), the government respectfully requests that this Court deny the defendant's application for leave to file a successive 28 U.S.C. § 2255 motion, without prejudice to his ability to file a new application in the event the applicable law changes. Alternatively, the government requests that this Court hold consideration of Higgs's application in abeyance pending the Court's decisions in *Hubbard* (No. 15-276), *Walker* (No. 15-4301), and *Campbell* (No. 15-4281).

**APP-266**

Respectfully submitted,


Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Debra L. Dwyer
Assistant United States Attorney

June 3, 2016




## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June 2016, a copy of the foregoing Motion was delivered via ECF to Matthew C. Lawry, Federal Community Defender Office for the Eastern District of Pennsylvania; and Stephen H. Sachs, WilmerHale LLP.


By: _____/s/_____
Debra L. Dwyer
Assistant United States Attorney


23

DAJ/SW USAO#1996R00274

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DEC 9 1998

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CRIMINAL NO. PJM-98-0520** |
| | : | |
| WILLIS MARK HAYNES | : | (Murder, 18 U.S.C. § 1111; Kidnapping, |
| and | : | 18 U.S.C. § 1201(a)(2); Use of a Handgun |
| DUSTIN JOHN HIGGS, | : | During Crime of Violence, 18 U.S.C. |
| Defendants | : | § 924(c); Aiding and Abetting, |
| | : | 18 U.S.C. § 2) |

...oOo...

<u>**SECOND SUPERSEDING INDICTMENT**</u>

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the

State and District of Maryland, an area within the special maritime and territorial jurisdiction of the

United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her

with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

**135**

APP-268

## COUNT TWO

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

APP-269

**136**

## ALTERNATIVE COUNT THREE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

3

**137**

## COUNT FOUR

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Tamika Black, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Tamika Black.

18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

4

APP-271

**138**

APP-272

## COUNT FIVE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts One, Two, Alternative Count Three and Count Four of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

5

## COUNT SIX

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the

State and District of Maryland, an area within the special maritime and territorial jurisdiction of the

United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her

with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

6

APP-273

140

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

7

**141**

## ALTERNATIVE COUNT EIGHT

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

APP-275

**142**

## COUNT NINE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Mishann Chinn, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Mishann Chinn.

18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

9

143

APP-276

## COUNT TEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Six, Seven, Alternative Count Eight and Nine of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

10

APP-277

**144**

## COUNT ELEVEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

## WILLIS MARK HAYNES

### and

## DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

11

APP-278

## COUNT TWELVE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

12

APP-279

## ALTERNATIVE COUNT THIRTEEN

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

13

**147**

## COUNT FOURTEEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Tanji Jackson, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Tanji Jackson.

18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

14

148

APP-281

## COUNT FIFTEEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Eleven, Twelve, Alternative Count Thirteen and Count Fourteen of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

_Lynne A. Battaglia_
Lynne A. Battaglia
United States Attorney

A TRUE BILL:

_Edward C. Brown_
FOREPERSON

_12/20/99_
Date

15

APP-282

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
          vs.                            )   Case No. PJM-98-0520
                                         )
DUSTIN JOHN HIGGS                        )
                                         )
                    Defendant.           )        /

### AMENDED NOTICE OF INTENTION TO SEEK THE DEATH PENALTY AS TO DEFENDANT DUSTIN JOHN HIGGS

COMES NOW the United States of America, pursuant to 18 U.S.C. § 3593(a), by and through its undersigned counsel, and notifies the Court and the defendant in the above-captioned case that the Government believes the circumstances of the offenses charged in Counts One, Two, Alternative Count Three, Four, Six, Seven, Alternative Count Eight, Nine, Eleven, Twelve, Alternative Count Thirteen and Count Fourteen of the Second Superseding Indictment are such that, in the event of the defendant's conviction of one or more of these offenses, a sentence of death is justified under Chapter 228 (Sections 3591 through 3598) of Title 18 of the United States Code, and that the Government will seek the sentence of death for these offenses: Count One, the first degree premeditated murder of Tamika Black in violation of 18 U.S.C. § 1111; Count Two, the first degree murder of Tamika Black which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Three, the first degree murder

**150**

of Tamika Black in violation of 18 U.S.C. § 1111; Count Four, the kidnapping of Tamika Black which resulted in her death in violation of 18 U.S.C. § 1201(a)(2); Count Six, the first degree premeditated murder of Mishann Chinn in violation of 18 U.S.C. § 1111; Count Seven, the first degree murder of Mishann Chinn which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Eight, the first degree murder of Mishann Chinn in violation of 18 U.S.C. § 1111; Count Nine, the kidnapping of Mishann Chinn which resulted in her death in violation of 18 U.S.C. § 1201(a)(2); Count Eleven, the first degree premeditated murder of Tanji Jackson in violation of 18 U.S.C. § 1111; Count Twelve, the first degree murder of Tanji Jackson which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Thirteen, the first degree murder of Tanji Jackson in violation of 18 U.S.C. § 1111; and Count Fourteen, the kidnapping of Tanji Jackson which resulted in her death in violation of 18 U.S.C. § 1201(a)(2).

The Government proposes to prove the following factors as justifying a sentence of death.

2

151

APP-284

## COUNTS ONE, TWO, AND ALTERNATIVE COUNT THREE

## THE FIRST DEGREE MURDER OF TAMIKA BLACK

A.    Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.    **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tamika Black died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.**  The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tamika Black died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(D).

B.    Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.    **Death during Commission of Another Crime.**  The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping).  18 U.S.C. § 3592(c)(1).

3

APP-285

**152**

2. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person. Specifically, the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

3. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

4. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

4

APP-286

C.   Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).

1.   **Victim Impact Evidence.**   The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. Payne v. Tennessee, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.   **Future Dangerousness of the Defendant.**   The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. Simmons v. South Carolina, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1)  On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2)  On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

5

APP-287

**154**

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

6

155

(1)  Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2)  Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3)  From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNT FOUR

### THE KIDNAPPING OF TAMIKA BLACK
### WHICH RESULTED IN DEATH

A.  **Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).**

1.  **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of

7

APP-289

the participants in the offense, and Tamika Black died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.**   The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tamika Black died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(D).

B.    Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.    **Previous Conviction of Violent Felony Involving Firearm.**   The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment.   The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

2.    **Conviction for Serious Federal Drug Offense.**   The defendant has previously been convicted of a serious federal drug

**APP-290**

offense in violation of Title II or Title III of the Controlled Substances' Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

3. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C. <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2)</u>.

1. **Victim Impact Evidence.** The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2. **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing

9

APP-291

pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

10

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.    **Obstruction of Justice.**    Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from

11

testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNTS SIX, SEVEN AND ALTERNATIVE COUNT EIGHT

## THE FIRST DEGREE MURDER OF MISHANN CHINN

A.  Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.  **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Mishann Chinn died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(C).

2.  **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Mishann Chinn died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(D).

B.  Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.  **Death during Commission of Another Crime.** The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the

12

**161**

APP-294

commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping). 18 U.S.C. § 3592(c)(1).

2. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

3. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, _et seq._) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

13

APP-295

**162**

4.    **Multiple Killings.**    The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C.    Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).

1.    **Victim Impact Evidence.**    The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. Payne v. Tennessee, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.    **Future Dangerousness of the Defendant.**    The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. Simmons v. South Carolina, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

14

**163**

APP-296

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and

15

**164**

APP-297

witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

COUNT NINE

**THE KIDNAPPING OF MISHANN CHINN
WHICH RESULTED IN DEATH**

A.   Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.   Intentional Acts to Take Life or Use Lethal Force. The defendant intentionally participated in an act, contemplating

16

**165**

**APP-298**

that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Mishann Chinn died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(C).

2.   **Intentional Acts of Violence Creating a Grave Risk of Death.**   The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Mishann Chinn died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(D).

B.   <u>Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c)</u>.

1.   **Previous Conviction of Violent Felony Involving Firearm.**   The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment.   The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual.   18 U.S.C. § 3592(c)(2).

17

2. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

3. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C. Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).

1. **Victim Impact Evidence.** The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. Payne v. Tennessee, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2. **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. Simmons v. South Carolina, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the

18

Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1)   On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2)   On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3)   On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4)   From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5)   In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6)   Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

19

APP-301

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

20

(3)    From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNTS ELEVEN, TWELVE AND ALTERNATIVE COUNT THIRTEEN

## THE FIRST DEGREE MURDER OF TANJI JACKSON

A.    Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.    **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tanji Jackson died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.**  The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

21

APP-303

B.   Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.   **Death during Commission of Another Crime.**  The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping).  18 U.S.C. § 3592(c)(1).

2.   **Previous Conviction of Violent Felony Involving Firearm.**  The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment.  The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual.  18 U.S.C. § 3592(c)(2).

3.   **Conviction for Serious Federal Drug Offense.**  The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed.  Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute

22

**171**

APP-304

cocaine base in violation of 21 U.S.C. § 841(a).  18 U.S.C. § 3592(c)(12).

    4.  **Multiple Killings.**  The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

    C.  Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).

    1.  **Victim Impact Evidence.**  The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. Payne v. Tennessee, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

    2.  **Future Dangerousness of the Defendant.**  The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. Simmons v. South Carolina, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

23

APP-305

(1)   On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2)   On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3)   On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4)   From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5)   In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6)   Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7)   Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8)   Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

24

173

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, enticed and induced other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

25

APP-307

## COUNT FOURTEEN

### THE KIDNAPPING OF TANJI JACKSON
### WHICH RESULTED IN DEATH

A. Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1. **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(C).

2. **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

B. Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person,

26

**175**

**APP-308**

specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

2. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, <u>et seq.</u>) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

3. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C. <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).</u>

1. **Victim Impact Evidence.** The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the

27

APP-309

**176**

impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.    **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1)    On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2)    On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3)    On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4)    From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

28

**APP-310**

(5) ·In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.    **Obstruction of Justice.**   Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

29

APP-311

(2)  Dustin John Higgs threatened, encouraged, enticed and induced other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3)  From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

Respectfully submitted,

Lynne A. Battaglia
United States Attorney

By: _____
Deborah A. Johnston
Assistant United States Attorney

By: _____
Sandra Wilkinson
Assistant United States Attorney

United States Attorney's Office
6500 Cherrywood Lane, Suite 400
Greenbelt, Maryland 20770-1249
(301) 344-4433

30

APP-312

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of February, 2000, a true and correct copy of the above and foregoing Amended Notice of Intention to Seek the Death Penalty As To Defendant Dustin John Higgs to be mailed first class, postage prepaid to counsel for Higgs as follows:

*Counsel for Dustin John Higgs*

Harry Trainor, Esq.
Knight, Manzi, Nussbaum & LaPlaca
14440 Old Mill Road
Upper Marlboro, Maryland 20772

Timothy Sullivan, Esquire
Sullivan & Sullivan
7305 Baltimore Avenue, Suite 301
College Park, MD 20740-3234

*Counsel for Willis Mark Haynes*

Barry Boss, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004

Joshua Treem, Esq.
Schulman, Treem, Kaminkow & Gilden
World Trade Center, Suite 1800
401 E. Pratt Street
Baltimore, Maryland 21202

Deborah A. Johnston
Assistant United States Attorney

31

APP-313

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    :

V.    :    CRIMINAL NO. PJM-98-0520

DUSTIN JOHN HIGGS    :

...oooOooo...

### VERDICT SHEET

1. Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tamika Black?

    Guilty __X__    Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 2. If you find the defendant not guilty to Question 1, please proceed to Question 2. In either case, please answer Questions 3, 4, 5 and 6.

SKIP 2. Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tamika Black?

    ~~Guilty _____    Not Guilty _____~~

3. Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tamika Black?

    Guilty __X__    Not Guilty _____

4. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tamika Black?

    Guilty __X__    Not Guilty _____

5. If you find the defendant guilty of the kidnapping of Tamika Black, did the kidnapping result in her death?

    Yes __X__    No _____

6. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black?

    Guilty __X__    Not Guilty _____

1331

APP-314

7.  Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Mishann Chinn?

Guilty __X__    Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 8. If you find the defendant not guilty to Question 7, please proceed to Question 8. In either case, please answer Questions 9, 10, 11 and 12.

*skip*  8.  Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Mishann Chinn?

Guilty _____    Not Guilty _____

9.  Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Mishann Chinn?

Guilty __X__    Not Guilty _____

10. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Mishann Chinn?

Guilty __X__    Not Guilty _____

11. If you find the defendant guilty of the kidnapping of Mishann Chinn, did the kidnapping result in her death?

Yes __X__    No _____

12. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn?

Guilty __X__    Not Guilty _____

2

**APP-315**

13. Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tanji Jackson?

Guilty __X__          Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 14. If you find the defendant not guilty to Question 13, please proceed to Question 14. In either case, please answer Questions 15, 16, 17 and 18.

SKIP 14. Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tanji Jackson?

Guilty _____          Not Guilty _____

15. Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tanji Jackson?

Guilty __X__          Not Guilty _____

16. Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tanji Jackson?

Guilty __X__          Not Guilty _____

17. If you find the defendant guilty of the kidnapping of Tanji Jackson, did the kidnapping result in her death?

Yes __X__          No _____

18. Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson?

Guilty __X__          Not Guilty _____

OCT 11, 2000
_____
Date

_____
Foreperson

3

APP-316

1333

No. 20-02

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**In re: Dustin John HIGGS, Movant**

*On Motion for Authorization to File Successive Petition under 28 U.S.C. §2255
in the United States District Court for the District of Maryland
The Honorable Peter J. Messitte, U.S. District Judge*

## RESPONSE IN OPPOSITION
## OF RESPONDENT UNITED STATES OF AMERICA

**Robert K. Hur**
**United States Attorney**

**Jason D. Medinger**
**Burden H. Walker**
**Assistant United States Attorneys**

**Assistant United States Attorneys**
**36 S. Charles Street, 4th Flr.**
**Baltimore, Maryland 21201**
**410-209-4974**

**January 28, 2020**

APP-317

## INTRODUCTION

Movant Dustin Higgs and his co-conspirator murdered three women with a handgun in 1996. For these acts, he was found guilty of three counts of first-degree murder, three counts of felony murder, and three counts of kidnapping resulting in death. He was given nine death sentences for these crimes. He was also given an aggregate, consecutive 45-year sentence for his related convictions under 18 U.S.C. § 924(c) should his death sentences somehow not be carried out.

Facing down the grim prospect of nine death sentences, and after exhausting all his appeals and collateral attacks, the defendant now asks this Court to grant him permission to launch yet another collateral attack. This Court should decline the invitation. To prevail, the defendant must convince this Court that federal first-degree murder is somehow not a "crime of violence" under § 924(c). He must also demonstrate how any ruling on his 924(c) convictions would provide him any meaningful relief given that he is already facing (and will still face even if his petition is successful) nine death sentences. Because even a cursory glance at his proposed petition shows it has no merit and would fail to provide any meaningful relief, this Court should deny the petition.

1

## STATEMENT OF JURISDICTION

Movant Dustin Higgs has applied for leave to file a successive motion under 28 U.S.C. § 2255. This Court has jurisdiction to deny or grant the request under 28 U.S.C. § 2244(b)(3)(A) and 28 U.S.C. § 2255(h).

## STATEMENT OF THE ISSUE

Whether Higgs' motion should be denied and he should not be permitted to file a successive habeas petition because: (a) even on a "cursory glance" the petition lacks merit (because federal first-degree murder is quite obviously a "crime of violence"); and (b) the proposed petition challenges only a few of the defendant's convictions under 18 U.S.C. § 924(c) and provides no basis to disturb the defendant's multiple death sentences stemming from his separate murder and aggravated kidnapping convictions.

## STATEMENT OF THE CASE

### A. Factual Background

On January 27, 1996, not long after 3:30 a.m., Dustin Higgs and his co-conspirator Willie Mark Haynes murdered Tanji Jackson, Tamika Black, and Mishann Chinn in cold blood just off the Baltimore-Washington Parkway. *United States v. Higgs*, 353 F.3d 281, 289 (2003). Higgs had organized a triple date with

2

the three women that night at his apartment, but after Jackson had gotten into an argument with Higgs, the three women left. *Id.* at 289-90. Higgs became angry, grabbed his silver .38 caliber firearm and beckoned the other two men to join him in his van to drive after the women. *Id.* at 290. Higgs caught up to the three victims, and one of the other men talked them into getting inside. *Id.* Instead of taking the women home, however, Higgs drove to the Patuxent National Wildlife Refuge, just off the Baltimore-Washington Parkway, and instructed the victims to get out of the van. *Id.* Higgs then pulled out his pistol and handed it to Haynes, who proceeded to shoot the three women dead. *Id.* A motorist found the three women's bodies "strewn about the roadway" at around 4:30am that morning. *Id.* at 290-91.

Higgs was subsequently charged by a federal grand jury with three counts of first-degree premediated murder, in violation of 18 U.S.C. § 1111(a) (Counts 1, 6, 11); three counts of first-degree murder committed in the preparation or attempted perpetration of a kidnapping, also in violation of 18 U.S.C. § 1111(a) (Counts 2, 7, and 12); three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(2) (Counts 4, 9, 14); and three counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 5, 10, 15). *Id.* at 289; Exhibit 1 (Superseding Indictment). As important here, the 924(c)

3

counts were based on two predicates, the corresponding murder *and* aggravated kidnapping charges related to each victim.  Exhibit 1 at 5, 10, 15.

A jury convicted Higgs on all counts.  He was sentenced to nine death sentences for each of the murder and kidnapping counts, and an aggregate, consecutive 45-year sentence for the three 924(c) convictions.  *Higgs*, 353 F.3d at 295.

This Court affirmed Higgs's convictions and sentences on direct appeal.  *Id.* Higgs then began filing a series of collateral attacks.

He filed his first habeas petition under 28 U.S.C. § 2255 on November 28, 2005, which the district court denied.  *Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010).  This Court granted a certificate of appealability, but still affirmed the convictions.  *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011).

Then, on December 4, 2014, although styled as a motion under Fed. R. Civ. P. 60, Higgs filed what was essentially a second 2255 petition, which the district court also denied.  *United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016). This Court denied a certificate of appealability on this claim.

Then, on May 23, 2016, Higgs filed his third attempt to collaterally attack his convictions, this time seeking permission to file a successive habeas petition in order

4

to attack his 924(c) convictions based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2), was unconstitutionally vague. *In re: Higgs*, Case No. 16-8 (4th Cir.).   This Court denied a certificate of appealability in that case.

Higgs has now filed the instant petition seeking permission to amount what is essentially his fourth collateral attack on his convictions.   He claims that he should be allowed to return to the district court to file a habeas petition attacking only his 924(c) convictions based on the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that the residual clause in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague.   Without the residual clause, he claims his 924(c) convictions are now infirm.   To achieve this result, he makes the argument that federal first-degree murder and aggravated kidnapping are not "crimes of violence" under the still-extant force clause of 924(c).   Because even a "cursory glance" at the merits shows this claim is not well-taken, and in any event will do nothing to impact his nine death sentences, the government respectfully submits that the instant motion should be denied.

## SUMMARY OF ARGUMENT

Even a cursory glance at the defendant's sole § 2255 claim reveals that it is meritless, and thus his request to file yet another habeas petition must be rejected.

To even have a chance to return to the district court to file his successive petition, the defendant here must clear several hurdles. First, he must establish his reliance on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. Then, second, and more important here, the defendant must establish "a sufficient showing of possible merit." *In re Hubbard*, 825 F.3d 225, 228 (4th Cir. 2016). In weighing whether this showing is made, this Court may, and indeed should, make a "cursory glance" at whether the defendant will prevail on the merits and achieve any kind of meaningful relief. *See id.* at 231.

Under the weight of these rigorous standards, the defendant's petition necessarily fails. This is because even a cursory glance at the merits reveals that federal murder and kidnapping resulting in death are both crimes of violence under the force clause of 924(c). No serious argument can be made that first-degree, premeditated murder does not satisfy the force clause. Nor can it be claimed that any forcible act resulting in death (here, kidnapping) is somehow a non-violent act.

6

And even if the defendant could prevail on the kidnapping-resulting-in-death argument, the law of this Circuit holds that where one 924(c) predicate is nullified, the conviction must still stand if there is a valid alternative predicate. Accordingly, here, to have any chance, the defendant must run the table and convince this Court not only that kidnapping resulting in death is not a crime of violence, but first-degree premeditated federal murder is also not a crime of violence. A cursory glance at the merits shows this a bridge too far. There is thus no basis to grant this petition.

But beyond the shortcomings in his primary argument, the defendant's petition should fail for an additional reason: allowing a successive petition would provide the defendant with no meaningful relief. The defendant will still be facing nine death sentences. His 45-year sentence for his 924(c) convictions is to be served consecutive to the nine death sentences he received. Simply put, attacking the 924(c) convictions simply does nothing to afford the defendant any meaningful relief. The petition should be denied.

## ARGUMENT

I. **HIGGS FAILS TO SATISFY THE STANDARDS GOVERNING SUCCESSIVE HABEAS PETITIONS BECAUSE HIS PETITION IS PATENTLY MERITLESS**

A. **Relevant Legal Standards**

7

By enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress imposed the following limits on review of successive motions under 28 U.S.C. § 2254:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable . . . .

28 U.S.C. § 2244(b); *see* 28 U.S.C. § 2255(h).

In addition, § 2244(b)(3)(A) provides that a successive application may not be filed in the district court without authorization from the relevant court of appeals. "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

In undertaking this "prima facie" analysis, the moving party needs to show that the application presents a claim that "relies on a [qualifying] new rule of constitutional law." *In re Hubbard*, 825 F.3d at 229 (quoting *In re Vassell*, 751

8

F.3d 267, 269 (4th Cir. 2014).   He must also make "a sufficient showing of possible merit to warrant a fuller exploration by the district court."   *Hubbard*, 825 F.3d at 229 (quoting *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003)).   In making this determination, this Court is entitled to take a "cursory glance at the merits" to determine if the claim is worth permitted.   *Id.*

**B.     A "Cursory Glance" Shows That Higgs's Arguments Are Meritless.**

As detailed above, Higgs relies on the Supreme Court's determination in *Davis* that the residual clause in 924(c)(3)(B) is void for vagueness.   Assuming this decision announced a new rule of constitutional law made retroactive on collateral review, the question then becomes whether, even without the residual clause, are the defendant's 924(c) convictions still supported by valid predicates?   In other words, are federal first-degree, premeditated murder and kidnapping resulting in murder crimes of violence under the force clause in 18 U.S.C. § 924(c)(3)(A)?   Because the answers are quite obviously yes and yes, the petition should be denied.

**1.     First Degree Murder Is A Crime Of Violence**

The federal murder statute, 18 U.S.C. § 1111, provides that "[m]urder is the unlawful killing of a human being with malice aforethought."   The statute further provides that "[e]very murder perpetrated by . . . willful, deliberate, malicious, and

9

premeditated killing; or committed in the perpetration of . . . kidnaping . . ., is murder in the first degree." *Id.* Any other killing is considered second degree murder. *Id.* Because different elements are required to prove first degree versus second degree murder, the statute is divisible. *Descamps v. United States*, 570 U.S. 254, 257 (2013). Here, the superseding indictment charged the defendant with first degree murder. Exhibit 1 at 1, 2, 6, 7, 11, 12. And the jury expressly found the defendant guilty of "first degree" murder. Exhibit 2 (Verdict Form). Accordingly, the question here becomes: does first-degree federal murder qualify as a predicate for a conviction under 924(c)? The answer is clearly yes.

Federal law prohibits individuals from using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Congress defined a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Against this standard, there is simply no possible way first-degree murder could be considered a non-violent, non-forceful act. The killing of another person necessarily requires the application of some force sufficient to cause death. That satisfies the force clause under Supreme Court precedent. *See Johnson v. United*

10

*States*, 559 U.S. 133, 140-41 (2010) (citing legal dictionary definition which provided that "murder" required the application of "extreme physical force"); *United States v. Castleman*, 572 U.S. 157, 171 (2014) (holding that indirect applications of poison satisfy the force clause where they bring about death of the victim). Indeed, this Court time and again has confirmed that various murder-related convictions satisfy the force clause. *United States v. Battle*, 927 F.3d 160, 166-67 (4th Cir. 2019) (holding that Maryland assault with intent to murder satisfies force clause); *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (holding that "second-degree retaliatory murder [18 U.S.C. § 1513] is a crime of violence under the force clause"); *United States v. Luskin*, 926 F.2d 372, 379 (4th Cir. 1991) (traveling interstate to commit murder was crime of violence under force clause because it "certainly threatened the use of violence"). If assault with intent to murder and second-degree retaliatory murder satisfy the force clause, there is simply no possible way that first-degree federal murder does not also satisfy the force clause.

And the defendant offers no real retort here. He certainly does not offer any case holding that first degree federal murder is not a crime of violence. He only opines that perhaps federal murder can be committed recklessly, and then claims that reckless crimes do not count under the force clause. But this is quite obviously

11

APP-328

wrong on both points.   First, the statute makes clear that first-degree murder requires not only "malice aforethought" but also a "willful, deliberate, malicious, and premeditated" killing.  *See United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003) (noting how federal first-degree murder "requires a showing of premeditation in addition to proof of malice").   In this way, because of the heightened mens rea requirement, there is simply no basis for the defendant to claim that first-degree is not a crime of violence.   The law (not to mention common sense) confirms it is.   *United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 554 (D. Md. 2016) (rejecting defense argument because to say that "murder is not a crime of violence under the force clause of § 924(c) strains common sense.").

Second, even if it were the case that first-degree murder could be committed recklessly (and it cannot), the defendant is wrong to contend that reckless crimes do not satisfy the force clause.   The Supreme Court has made clear they do.  *See Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) ("A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally.").

Here, because the jury convicted the defendant of first degree murder, *see* Exhibit 2, and because his 924(c) convictions were based on these first-degree

12

murder findings, and because first degree murder is a crime of violence under the force clause, there is no merit to the defendant's proposed attacks on his 924(c) convictions.   Hence, there is no reason to permit a successive petition.

### 2.    Kidnapping Resulting In Death Is A Crime of Violence

The defendant's attempts to knock down his aggravated kidnapping resulting in death convictions likewise fail.   The federal kidnapping statute, 18 U.S.C. § 1201(a), requires that the defendant "unlawfully seize[], confine[], inveigle[], decoy[], kidnap[], abduct[], or carr[y] away" a person.   As this Court has found, two of those means, inveigling and decoying, do not satisfy the elements clause of Section 924(c)(3)(A).   *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019).   However, that does not settle the matter here.   In this case, the defendant was not simply charged with basic federal kidnapping; rather, he was charged and found guilty of aggravated kidnapping resulting in death.   Exhibit 1; Exhibit 2. Aggravated forms of a statute that carry enhanced penalties (such as here, the death penalty) are divisible from basic kidnapping.   *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."); *accord Burrage v. United States*, 571 U.S. 204, 210 (2014).   Here, kidnapping resulting in death satisfies the force clause of

13

Section 924(c)(3)(A). Congress's use of the term "results" requires a causal connection between the kidnapping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See Burrage*, 571 U.S. at 214. By establishing this causal connection, the aggravated kidnapping statute requires force capable of causing physical pain or injury that was used during the course of the commission of the offense.

### 3. Even Without The Kidnapping Resulting In Death Predicates, The Murder Predicates Are More Than Sufficient To Sustain The Convictions

And even if there were some doubt about the validity of the aggravated kidnapping predicates, the indictment and verdict form here make clear that the defendant's 924(c) convictions were based on both the murder and aggravated kidnapping predicates. Under this Court's precedent, the invalidity of one predicate is not sufficient to upset the conviction where a valid, alternative predicate was also found.

This Court has explained that, "when a general verdict on a single criminal charge rests on alternative theories, one valid and the other invalid, the verdict must be set aside if it is 'impossible to tell which ground the jury selected.'" *United*

14

*States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012) (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)).   Under Supreme Court precedent, an "alternative-theory error is subject to ordinary harmlessness review, and the relevant appellate inquiry is whether the error was harmless beyond a reasonable doubt."   *Id.* (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (per curiam)).

However, when the record establishes that the jury would have convicted a defendant under § 924(c) without a challenged predicate offense, this Court has affirmed. *United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016).   In addition, the Eleventh Circuit recently affirmed the denial of habeas relief where a § 924(c) conviction was supported by two valid predicates and one invalid predicate.   *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019).   There, the defendant's "§ 924(c) charge was predicated on both conspiracy to commit Hobbs Act robbery, as charged in Count One, and drug-trafficking crimes, as charged in Counts Two and Three."   *Id.* at 1299.   Against that backdrop, *Navarro* denied the defendant's application to file a second-or-successive habeas petition.   It reasoned that "the factual proffer, which Navarro signed and acknowledged as accurate, established Navarro committed the drug trafficking crimes in Counts Two and Three and carried a firearm during and in relation to those offenses."   *Id.* at 1302. Thus, it was "apparent from the record

15

that Navarro's § 924(c) conviction is fully supported by his drug-trafficking crimes, and it therefore is outside the scope of Davis, which invalidated only § 924(c)(3)(B)'s residual clause relating to crimes of violence." *Id.*

Here, this Court must follow its precedent in *Hare* and should follow the persuasive guidance in *Navarro*. Even if there were some question about the kidnapping predicates, there can be no doubt that the jury found the defendant guilty of first degree murder. And those first degree murder predicates satisfy the force clause. Because these proper predicates supported the 924(c) convictions, there is simply no basis to disturb them. Hence, no successive petition should be allowed.

**C.    This Court Should Decline To Exercise Its Discretion To Recognize The Defendant's Claims Because It Can Afford No Meaningful Relief When The Defendant Is Still Facing Nine Death Sentences**

Finally, even if the Court were inclined to hold there was some question on the issues presented based only a cursory glance, the petition should still be denied because there is no basis to conclude that the granting of the petition will afford the defendant any meaningful relief. Under the concurrent sentence doctrine, "if a defendant has concurrent sentences on multiple counts of conviction and one count is found to be invalid, an appellate court need not consider the validity of the other counts unless the defendant would suffer 'adverse collateral consequences from the

16

unreviewed conviction.'" *See In re Williams*, 826 F.3d 1351, 1356-1357 (11th Cir. 2016) (per curiam).   This Court applies the concurrent sentencing doctrine when the defendant is seeking habeas relief that challenges the sentence he received for a given conviction, when the vacatur of that conviction would still leave in place another concurrent sentence.  *United States v. Charles*, 932 F.3d 153, 159-62 (4th Cir. 2019); *but cf. id.* (explaining that the doctrine is not generally applicable where the challenge is solely to a conviction and not to a sentence).   That doctrine applies where there is "no substantial possibility" that one of those allegedly invalid convictions would subject the defendant to "adverse collateral consequences."   *Id.*

The defendant has not and cannot make that showing here.   Regardless what happens to his 924(c) convictions, the defendant is still facing nine death sentences. There is no basis to disturb those sentences.   Indeed, those death sentences will be and must be carried out before the 45-year sentence associated with 924(c) convictions can be served.   There is simply no meaningful relief that the district court can afford by addressing the validity of the 924(c) convictions, unless and until the defendant mounts a successful attack on his death sentences.   For this reason as well, the petition should be denied.

17

APP-335

## CONCLUSION

For the foregoing reasons, this Court should deny defendant's request for authorization to file a successive petition under 28 U.S.C. § 2255.

Respectfully submitted,

Robert K. Hur
United States Attorney

 /s/
Jason D. Medinger, Assistant U.S. Attorney
Burden H. Walker, Assistant U.S. Attorney

36 South Charles Street
Baltimore, Maryland 21201
(410) 209-4800

18

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

19

**APP-336**

# CERTIFICATE OF COMPLIANCE

1.    This brief has been prepared using:

**Microsoft Word, Times New Roman, 14 Point**

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table

of citations; statement with respect to oral argument; any addendum

containing statutes, rules, or regulations, and the certificate of service, the

brief contains 3,737 words.

I understand that a material misrepresentation can result in the Court's

striking the brief and imposing sanctions.    If the Court so directs, I will provide an

electronic version of the brief and/or a copy of the word or line print-out.

/s/
Jason D. Medinger
Assistant United States Attorney

**APP-337**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of January, 2020, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System, and mailed a

copy to counsel of record.


/s/
Jason Medinger
Assistant United States Attorney

DAJ/SW USAO#1996R00274

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DEC 2 1998

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :  **CRIMINAL NO. PJM-98-0520** |
| | : |
| WILLIS MARK HAYNES | :  (Murder, 18 U.S.C. § 1111; Kidnapping, |
| and | :  18 U.S.C. § 1201(a)(2); Use of a Handgun |
| DUSTIN JOHN HIGGS, | :  During Crime of Violence, 18 U.S.C. |
| Defendants | :  § 924(c); Aiding and Abetting, |
| | :  18 U.S.C. § 2) |

...oOo...

## SECOND SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the

State and District of Maryland, an area within the special maritime and territorial jurisdiction of the

United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her

with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

**135**

APP-339

## COUNT TWO

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the

State and District of Maryland, an area within the special maritime and territorial jurisdiction of the

United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her

with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

2

APP-340

**136**

## ALTERNATIVE COUNT THREE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tamika Black, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

3

APP-341

## COUNT FOUR

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Tamika Black, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Tamika Black.


18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

4

APP-342

## COUNT FIVE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts One, Two, Alternative Count Three and Count Four of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

5

**139**

## COUNT SIX

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

6

APP-344

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

7

APP-345

## ALTERNATIVE COUNT EIGHT

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

**and**

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Mishann Chinn, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

8

APP-346

## COUNT NINE

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere,

### WILLIS MARK HAYNES

and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold Mishann Chinn, an adult woman, for a reason which was of benefit to the defendants, and which conduct resulted in the death of Mishann Chinn.

18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

9

APP-347

## COUNT TEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Six, Seven, Alternative Count Eight and Nine of this Second Superseding Indictment, which are incorporated by reference herein.


18 U.S.C. § 924(c)
18 U.S.C. § 2

10

APP-348

**144**

## COUNT ELEVEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

11

**145**

## <u>COUNT TWELVE</u>

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

**WILLIS MARK HAYNES**

**and**

**DUSTIN JOHN HIGGS**

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

12

APP-350

**146**

## ALTERNATIVE COUNT THIRTEEN

The Grand Jury for the District of Maryland charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the State and District of Maryland, an area within the special maritime and territorial jurisdiction of the United States,

### WILLIS MARK HAYNES

### and

### DUSTIN JOHN HIGGS

the defendants herein, with malice aforethought, did unlawfully kill Tanji Jackson, by shooting her with a firearm, willfully, deliberately, maliciously, and with premeditation, and did commit said unlawful and malicious killing in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping.

18 U.S.C. § 1111
18 U.S.C. § 7
18 U.S.C. § 2

13

**147**

APP-351

## COUNT FOURTEEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, on the grounds of Patuxent National Wildlife Refuge in the

State and District of Maryland, an area within the special maritime and territorial jurisdiction of the

United States, and elsewhere,

## WILLIS MARK HAYNES

### and

## DUSTIN JOHN HIGGS

the defendants herein, did knowingly, willfully and unlawfully seize, confine, inveigle, decoy,

kidnap, abduct, carry away and hold Tanji Jackson, an adult woman, for a reason which was of

benefit to the defendants, and which conduct resulted in the death of Tanji Jackson.


18 U.S.C. § 1201(a)(2)
18 U.S.C. § 7
18 U.S.C. § 2

14

APP-352

## COUNT FIFTEEN

The Grand Jury for the District of Maryland further charges:

On or about January 27, 1996, in the State and District of Maryland,

### WILLIS MARK HAYNES

and

### DUSTIN JOHN HIGGS

the defendants herein, did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder and kidnapping, in violation of Title 18, United States Code, Sections 1111 and 1201, respectively, as charged in Counts Eleven, Twelve, Alternative Count Thirteen and Count Fourteen of this Second Superseding Indictment, which are incorporated by reference herein.

18 U.S.C. § 924(c)
18 U.S.C. § 2

_Lynne A. Battaglia_
Lynne A. Battaglia
United States Attorney

A TRUE BILL:

FOREPERSON

12/20/99
Date

15

**149**

**APP-353**

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUSTIN JOHN HIGGS<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. PJM-98-0520<br>)<br>)<br>)<br>)    / |

## AMENDED NOTICE OF INTENTION TO SEEK THE DEATH PENALTY AS TO DEFENDANT DUSTIN JOHN HIGGS

COMES NOW the United States of America, pursuant to 18 U.S.C. § 3593(a), by and through its undersigned counsel, and notifies the Court and the defendant in the above-captioned case that the Government believes the circumstances of the offenses charged in Counts One, Two, Alternative Count Three, Four, Six, Seven, Alternative Count Eight, Nine, Eleven, Twelve, Alternative Count Thirteen and Count Fourteen of the Second Superseding Indictment are such that, in the event of the defendant's conviction of one or more of these offenses, a sentence of death is justified under Chapter 228 (Sections 3591 through 3598) of Title 18 of the United States Code, and that the Government will seek the sentence of death for these offenses: Count One, the first degree premeditated murder of Tamika Black in violation of 18 U.S.C. § 1111; Count Two, the first degree murder of Tamika Black which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Three, the first degree murder

APP-354

of Tamika Black in violation of 18 U.S.C. § 1111; Count Four, the kidnapping of Tamika Black which resulted in her death in violation of 18 U.S.C. § 1201(a)(2); Count Six, the first degree premeditated murder of Mishann Chinn in violation of 18 U.S.C. § 1111; Count Seven, the first degree murder of Mishann Chinn which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Eight, the first degree murder of Mishann Chinn in violation of 18 U.S.C. § 1111; Count Nine, the kidnapping of Mishann Chinn which resulted in her death in violation of 18 U.S.C. § 1201(a)(2); Count Eleven, the first degree premeditated murder of Tanji Jackson in violation of 18 U.S.C. § 1111; Count Twelve, the first degree murder of Tanji Jackson which occurred during the perpetration and attempted perpetration of a felony in violation of 18 U.S.C. § 1111; Alternative Count Thirteen, the first degree murder of Tanji Jackson in violation of 18 U.S.C. § 1111; and Count Fourteen, the kidnapping of Tanji Jackson which resulted in her death in violation of 18 U.S.C. § 1201(a)(2).

The Government proposes to prove the following factors as justifying a sentence of death.

2

151

APP-355

## COUNTS ONE, TWO, AND ALTERNATIVE COUNT THREE

## THE FIRST DEGREE MURDER OF TAMIKA BLACK

A.    **Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).**

1.    **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tamika Black died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tamika Black died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(D).

B.    **Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).**

1.    **Death during Commission of Another Crime.** The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping).  18 U.S.C. § 3592(c)(1).

3

APP-356

2. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person. Specifically, the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

3. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, *et seq.*) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

4. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

4

APP-357

C.   **Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).**

1.   **Victim Impact Evidence.**   The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.   **Future Dangerousness of the Defendant.**   The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1)   On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2)   On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

5

(3)  On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4)  From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5)  In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6)  Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7)  Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8)  Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.  **Obstruction of Justice.**  Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses.  This is shown by facts including but not limited to one or more of the following:

6

**155**

**APP-359**

(1)    Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2)    Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3)    From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNT FOUR

### THE KIDNAPPING OF TAMIKA BLACK
### WHICH RESULTED IN DEATH

A.    Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.    Intentional Acts to Take Life or Use Lethal Force. The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of

7

the participants in the offense, and Tamika Black died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tamika Black died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

B.    <u>Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c)</u>.

1.    **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

2.    **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug

8

APP-361

offense in violation of Title II or Title III of the Controlled Substances' Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a).  18 U.S.C. § 3592(c)(12).

3.    **Multiple Killings.**    The defendant intentionally killed more than one person in a single criminal episode.  18 U.S.C. § 3592(c)(16).

C.    Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).

1.    **Victim Impact Evidence.**    The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family.  Payne v. Tennessee, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.    **Future Dangerousness of the Defendant.**    The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others.  Simmons v. South Carolina, 512 U.S. 154, 163-164 (1994).  In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing

9

APP-362

pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

10

**159**

APP-363

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from

11

testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNTS SIX, SEVEN AND ALTERNATIVE COUNT EIGHT

## THE FIRST DEGREE MURDER OF MISHANN CHINN

A. Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.    **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Mishann Chinn died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Mishann Chinn died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

B. Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.    **Death during Commission of Another Crime.** The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the

12

**161**

commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping). 18 U.S.C. § 3592(c)(1).

2. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

3. **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, et seq.) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

13

4. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C. <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2)</u>.

1. **Victim Impact Evidence.** The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2. **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

14

163

APP-367

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.   **Obstruction of Justice.**   Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and

15

witnesses. This is shown by facts including but not limited to one or more of the following:

(1)  Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2)  Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3)  From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

COUNT NINE

<u>THE KIDNAPPING OF MISHANN CHINN<br>WHICH RESULTED IN DEATH</u>

A.    <u>Statutory Proportionality Factors Enumerated<br>under 18 U.S.C. § 3591(a)(2)(A)-(D)</u>.

1.    <b>Intentional Acts to Take Life or Use Lethal Force.</b> The defendant intentionally participated in an act, contemplating

16

165

APP-369

that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Mishann Chinn died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(C).

2. **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Mishann Chinn died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

B. <u>Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c)</u>.

1. **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

17

2.    **Conviction for Serious Federal Drug Offense.**   The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, <u>et seq.</u>) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a).   18 U.S.C. § 3592(c)(12).

3.    **Multiple Killings.**   The defendant intentionally killed more than one person in a single criminal episode.   18 U.S.C. § 3592(c)(16).

C.    <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).</u>

1.    **Victim Impact Evidence.**   The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family.   <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.    **Future Dangerousness of the Defendant.**   The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others.   <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994).   In addition to the capital offenses charged in the

18

APP-371

Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

19

(7)  Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8)  Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.  **Obstruction of Justice.**  Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1)  Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2)  Dustin John Higgs threatened, encouraged, and enticed other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

20

APP-373

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

## COUNTS ELEVEN, TWELVE AND ALTERNATIVE COUNT THIRTEEN

## THE FIRST DEGREE MURDER OF TANJI JACKSON

A.    Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.    **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(C).

2.    **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

21

APP-374

**170**

B.  Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.  **Death during Commission of Another Crime.** The death and injuries resulting in death occurred during the commission of, attempted commission of, and during the immediate flight from the commission of, an offense under 18 U.S.C. § 1201(a)(2) (kidnapping). 18 U.S.C. § 3592(c)(1).

2.  **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person, specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

3.  **Conviction for Serious Federal Drug Offense.** The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, _et seq._) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute

22

**171**

cocaine base in violation of 21 U.S.C. § 841(a). 18 U.S.C. § 3592(c)(12).

4. **Multiple Killings.** The defendant intentionally killed more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C. <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).</u>

1. **Victim Impact Evidence.** The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2. **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

23

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

(5) In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6) Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7) Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8) Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

24

**173**

APP-377

3. **Obstruction of Justice.** Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1) Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

(2) Dustin John Higgs threatened, encouraged, enticed and induced other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

25

## COUNT FOURTEEN

## THE KIDNAPPING OF TANJI JACKSON
## WHICH RESULTED IN DEATH

A.  Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

1.  **Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Tanji Jackson died as a direct result of the act.  18 U.S.C. § 3591(a)(2)(C).

2.  **Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Tanji Jackson died as a direct result of the act. 18 U.S.C. § 3591(a)(2)(D).

B.  Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

1.  **Previous Conviction of Violent Felony Involving Firearm.** The defendant has previously been convicted of a federal or state offense punishable by a term of imprisonment of more than one year, involving the use and attempted and threatened use of a firearm (as defined in 18 U.S.C. § 921) against another person,

26

175

specifically the defendant was convicted in the Circuit Court for Prince George's County Maryland, case number CT-96-1875X, of assault and battery, and Count 2 reckless endangerment. The offenses occurred on December 10, 1995 and involved the defendant firing a handgun at or into an occupied apartment and in addition firing the same weapon at one individual. 18 U.S.C. § 3592(c)(2).

2.   **Conviction for Serious Federal Drug Offense.**   The defendant has previously been convicted of a serious federal drug offense in violation of Title II or Title III of the Controlled Substances Act of 1970 (21 U.S.C. § 801, <u>et seq.</u>) for which a sentence of five or more years imprisonment may be imposed. Specifically, in the District of Maryland, case number PJM-96-0153, the defendant was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a).   18 U.S.C. § 3592(c)(12).

3.   **Multiple Killings.**   The defendant intentionally killed  more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

C.   <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593 (a)(2).</u>

1.   **Victim Impact Evidence.**   The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the

27

impact of the death upon the victim and the victim's family. <u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991); 18 U.S.C. § 3593(a).

2.    **Future Dangerousness of the Defendant.**    The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 163-164 (1994). In addition to the capital offenses charged in the Indictment and the statutory and non-statutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct, has threatened others with violence, has demonstrated low rehabilitative potential, and/or has demonstrated lack of remorse, including but not limited to one or more of the following:

(1) On or about March 21, 1996, Dustin John Higgs possessed a loaded semi-automatic pistol and approximately 100 rounds of ammunition.

(2) On or about March 10, 1993, Dustin John Higgs carried a handgun on his person in Montgomery County, Maryland.

(3) On or about November 19, 1995, Dustin John Higgs engaged in a drive-by shooting, discharging a firearm at the occupants of a black Nissan automobile in the area of the 1100 block of Ingraham Street, N.W., Washington, D.C.

(4) From at least the summer of 1995 until March 1996, Dustin John Higgs was engaged in the distribution of cocaine base.

28

APP-381

(5)  In or about September 1995, Dustin John Higgs pulled out a handgun and threatened to injure Enisdia Darby with it.

(6)  Dustin John Higgs continued to engage in ongoing criminal activities while on probation and subsequent to incarceration in the State of Maryland.

(7)  Dustin John Higgs threatened Janelle Chambers during 1996 to permit Higgs and his associates to use her apartment for their drug trafficking activities.

(8)  Since at least January 1999, Dustin John Higgs has stated that he will "get to" Victor Gloria or his family to silence him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

3.  **Obstruction of Justice.**  Dustin John Higgs has obstructed the investigation of the kidnappings and murders of Tamika Black, Mishann Chinn and Tanji Jackson, in that the defendant tampered and attempted to tamper with evidence and witnesses. This is shown by facts including but not limited to one or more of the following:

(1)  Dustin John Higgs destroyed and removed evidence which implicated Willis Mark Haynes and himself in the murders, including but not limited to the destruction of tapes located in the apartment at 13801 Briarwood Drive, Apartment 1924, Laurel, Maryland, and driving Willis Mark Haynes to Washington D.C. where the murder weapon was thrown into the Anacostia River.

29

(2) Dustin John Higgs threatened, encouraged, enticed and induced other individuals to lie about his whereabouts, to provide a false alibi and to deny any knowledge concerning his involvement in the murders or his relationship with any of the victims.

(3) From at least January 1999, Dustin John Higgs has planned and solicited individuals to assist him in intimidating Victor Gloria or members of his family to prevent Gloria from testifying against him regarding the murders of Tamika Black, Mishann Chinn and Tanji Jackson.

Respectfully submitted,

Lynne A. Battaglia
United States Attorney

By: _____
Deborah A. Johnston
Assistant United States Attorney

By: _____
Sandra Wilkinson
Assistant United States Attorney

United States Attorney's Office
6500 Cherrywood Lane, Suite 400
Greenbelt, Maryland 20770-1249
(301) 344-4433

30

179

APP-383

## CERTIFICATE OF SERVICE

I hereby certify that on this __8__ day of February, 2000, a true and correct copy of the above and foregoing Amended Notice of Intention to Seek the Death Penalty As To Defendant Dustin John Higgs to be mailed first class, postage prepaid to counsel for Higgs as follows:

*Counsel for Dustin John Higgs*

Harry Trainor, Esq.
Knight, Manzi, Nussbaum & LaPlaca
14440 Old Mill Road
Upper Marlboro, Maryland 20772

Timothy Sullivan, Esquire
Sullivan & Sullivan
7305 Baltimore Avenue, Suite 301
College Park, MD 20740-3234

*Counsel for Willis Mark Haynes*

Barry Boss, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004

Joshua Treem, Esq.
Schulman, Treem, Kaminkow & Gilden
World Trade Center, Suite 1800
401 E. Pratt Street
Baltimore, Maryland 21202

_____
Deborah A. Johnston
Assistant United States Attorney

31

APP-384

180

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          :

V.                                :    CRIMINAL NO. PJM-98-0520

DUSTIN JOHN HIGGS                 :

...oooOooo...

## VERDICT SHEET

1.  Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tamika Black?

    Guilty ___X___          Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 2. If you find the defendant not guilty to Question 1, please proceed to Question 2. In either case, please answer Questions 3, 4, 5 and 6.

SKIP 2.  Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tamika Black?

    ~~Guilty~~ _____          ~~Not Guilty~~ _____

3.  Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tamika Black?

    Guilty ___X___          Not Guilty _____

4.  Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tamika Black?

    Guilty ___X___          Not Guilty _____

5.  If you find the defendant guilty of the kidnapping of Tamika Black, did the kidnapping result in her death?

    Yes ___X___          No _____

6.  Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black?

    Guilty ___X___          Not Guilty _____

1331

APP-385

7.    Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Mishann Chinn?

Guilty   X              Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 8. If you find the defendant not guilty to Question 7, please proceed to Question 8. In either case, please answer Questions 9, 10, 11 and 12.

*skip* 8.    Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Mishann Chinn?

Guilty _____        Not Guilty _____

9.    Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Mishann Chinn?

Guilty   X              Not Guilty _____

10.    Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Mishann Chinn?

Guilty   X              Not Guilty _____

11.    If you find the defendant guilty of the kidnapping of Mishann Chinn, did the kidnapping result in her death?

Yes   X              No _____

12.    Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn?

Guilty   X              Not Guilty _____

2

**APP-386**

13.    Is the defendant, Dustin John Higgs, guilty or not guilty of the first degree premeditated murder of Tanji Jackson?

Guilty ___X___          Not Guilty _____

If you find the defendant guilty of first degree premeditated murder, please skip Question 14. If you find the defendant not guilty to Question 13, please proceed to Question 14. In either case, please answer Questions 15, 16, 17 and 18.

SKIP  14.    Is the defendant, Dustin John Higgs, guilty or not guilty of the second degree murder of Tanji Jackson?

Guilty _____          Not Guilty _____

15.    Is the defendant, Dustin John Higgs, guilty or not guilty of murder committed during the perpetration of the kidnapping of Tanji Jackson?

Guilty ___X___          Not Guilty _____

16.    Is the defendant, Dustin John Higgs, guilty or not guilty of the kidnapping of Tanji Jackson?

Guilty ___X___          Not Guilty _____

17.    If you find the defendant guilty of the kidnapping of Tanji Jackson, did the kidnapping result in her death?

Yes ___X___          No _____

18.    Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson?

Guilty ___X___          Not Guilty _____

___OCT 11, 2000___
Date

Foreperson

3

APP-387