No. 20-2129

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,
*PETITIONER-APPELLANT,*

V.

T. J. WATSON, WARDEN,
*RESPONDENT-APPELLEE.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:16-cv-321, Hon. Jane Magnus-Stinson, Chief J.

## REPLY BRIEF FOR APPELLANT

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Roland Park Place
830 W. 40th Street, Apt. 864
Baltimore, MD 21211
410-243-4589

Dated: December 16, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... iii

ARGUMENT ..........................................................................................1

I.     A Structural Problem Renders the Remedy Under 28 U.S.C.
       § 2255 Inadequate or Ineffective....................................................1

       A.   The structural problem ...........................................................1

       B.   The Government's arguments fail. ...........................................3

            1.   *Davis* is statutory as well as constitutional.......................4

            2.   The Government's speculation is unavailing.....................8

            3.   The Government's argument that the Fourth Circuit
                 reached the merits is inconsistent with Fourth Circuit
                 precedent. ....................................................................9

II.    Mr. Higgs Shows a Miscarriage of Justice. ...................................14

       A.   Because kidnapping is not always a crime of violence, and
            the verdict is ambiguous, the firearms convictions are
            invalid. ..............................................................................14

            1.   The Court must apply the modified categorical approach
                 to determine the predicates for Mr. Higgs's § 924(c)
                 convictions. ...............................................................14

            2.   The Government's attempt to avoid the categorical
                 approach fails..............................................................16

            3.   Courts applying the modified categorical approach do
                 not apply traditional harmless error analysis. ................18

       B.   Federal murder is not categorically a crime of violence
            under § 924(c)(3)(A). ...........................................................25

       C.   The invalid firearms convictions are themselves a
            miscarriage of justice and likely affected Mr. Higgs's
            death sentences. ..................................................................29

CONCLUSION .......................................................................................34

# TABLE OF AUTHORITIES

**Federal Cases**

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) .................................. 33

*Borden v. United States*, 140 S. Ct. 1262 (2020) ................................................. 29

*Bourgeois v. Whitley*, 784 F.2d 718 (5th Cir. 1986) ............................................ 31

*In re Colon*, 826 F.3d 1301 (11th Cir. 2016) ...................................................... 13

*Davis v. United States*, 417 U.S. 333 (1974) ................................................. 24, 30

*Dean v. United States*, 556 U.S. 568 (2009) ................................................. 27, 29

*Descamps v. United States*, 570 U.S. 254 (2013) ........................................... 15, 26

*Drayton v. United States*, No. 2:98-cr-0751-DCN-2, 2020 WL 4478400 (D.S.C. Aug. 4, 2020) ........................................................................................... 7

*Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996) ......................... 12, 13

*In re Gomez*, 830 F.3d 1225 (11th Cir. 2016) ..................................................... 23

*Hall v. Watson*, 829 F. App'x 719 (7th Cir. 2020) .......................................... 6, 30

*In re Hall*, 979 F.3d 339 (5th Cir. 2020) .............................................................. 7

*Honken v. United States*, 42 F. Supp. 3d 937 (N.D. Iowa 2013) ......................... 30

*In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) ..................................................... 10

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ....................................................... 11, 26

*Johnson v. United States*, 576 U.S. 591 (2015) ..................................................... 2

*Kirkland v. United States*, 687 F.3d 878 (7th Cir. 2012) ..................................... 20

*Middleton v. Dugger*, 849 F.2d 491 (11th Cir. 1988) .......................................... 32

*Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016) .................................................. 2

*In re Navarro*, 931 F.3d 1298 (11th Cir. 2019) .............................................. 22, 23

*Ponder v. United States*, 800 F. App'x 181 (4th Cir. 2020) ................................... 9

*Shepard v. United States*, 544 U.S. 13 (2005) .................................................... 15

*Stringer v. Black*, 503 U.S. 222 (1992) .............................................................. 32

*United States v. Armour*, 840 F.3d 904 (7th Cir. 2016) ...................................... 13

*United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012) .................................. 19, 20

*United States v. Bryant*, 949 F.3d 169 (4th Cir. 2020) ............................. 15, 17, 27

*United States v. Castillo-Marin*, 684 F.3d 914 (9th Cir. 2012) ........................... 20

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) (en banc) ............... 15, 26

*United States v. Dantzler*, 771 F.3d 137 (2d Cir. 2014) ........................................ 20

*United States v. Davis*, 139 S. Ct. 2319 (2019) ........................................ 1, 2, 5, 15

*United States v. Dickerson*, No. 3:09-cr-283, 2020 WL 954973 (E.D. Va. Feb, 27, 2020) ....................................................................................................... 10

*United States v. Dinkins*, 928 F.3d 349 (4th Cir. 2019) ........................................ 13

*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015) .................................... 15, 17

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016) .............................................. 21

*United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979) ............................................. 7

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ........................................... 32

*United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012) ...................................... 21

*United States v. Keene*, 955 F.3d 391 (4th Cir. 2020) ......................................... 5-6

*United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) ........................................ 7

*United States v. Piche*, 981 F.2d 706 (4th Cir.1992) .............................................. 7

*United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010) ..................................... 21

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc) .............. 15, 16, 27

*United States v. Steward*, 793 F. App'x 188 (4th Cir. 2019) ................................ 23

*United States v. Tucker*, 404 U.S. 443 (1972) ...................................................... 31

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc) .......... 16, 17, 22, 26

*United States v. Vederoff*, 914 F.3d 1238 (9th Cir. 2019) .................................... 27

*United States v. Vickers*, 967 F.3d 480 (5th Cir. 2020) ........................................ 28

*United States v. Williams*, 342 F.3d 350 (4th Cir. 2003) ...................................... 26

*United States v. Wilson*, 960 F.3d 136 (3d Cir. 2020) .......................................... 24

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ................................................. 1

*In re Williams*, 330 F.3d 277 (4th Cir. 2003) ..................................................... 3, 4

*Yates v. United States*, 354 U.S. 298 (1957) ........................................................ 21

## Federal Statutes

18 U.S.C. § 2 ........................................................................................................ 13

18 U.S.C. § 924 ............................................................................................. *passim*

18 U.S.C. § 1111 ................................................................................................... 25

18 U.S.C. § 1513 ............................................................ 11, 12

18 U.S.C. § 3592 ............................................................... 32

18 U.S.C. § 3593 ............................................................... 31

28 U.S.C. § 2241 ............................................................... 34

28 U.S.C. § 2244 ............................................................... 2-3

28 U.S.C. § 2255 ............................................................ *passim*

ARGUMENT

I. A Structural Problem Renders the Remedy Under 28 U.S.C. § 2255 Inadequate or Ineffective.

While § 2255 is intended to be the sole remedy for most post-conviction claims by federal prisoners, there is an exception for situations in which the "remedy by motion [under § 2255] is inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e). This Court has made clear that "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).[1]

A. The structural problem

Such a "structural problem" has prevented Mr. Higgs from obtaining review under § 2255. He has tried to use § 2255 to challenge his convictions under 18 U.S.C. § 924(c)(3) as inconsistent with recent, retroactive Supreme Court decisions issued since his original § 2255 motion was decided, in particular *United States v. Davis*, 139 S. Ct. 2319 (2019). But *Davis* involved both constitutional issues and a

---

[1] As in the Initial Brief, in this Brief "App." refers to Petitioner's Appendix. In this Brief, "2d Supp. App." refers to the Second Supplemental Appendix that Petitioner is separately requesting leave to file.

1

question of statutory interpretation, which was critical to a viable claim for Mr. Higgs—whether the "categorical approach" to statutory interpretation applies to § 924(c). *See id.* at 2327. While there is a § 2255 remedy for new decisions of constitutional law under 28 U.S.C. § 2255(h)(2), there is no such § 2255 remedy for new decisions regarding statutory interpretation. *See, e.g., Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016). Thus, if Mr. Higgs's claim is viewed as at least in part based on a new decision of statutory interpretation, there is no § 2255 remedy for his claim.

Here we reach a second structural problem with § 2255. Mr. Higgs twice sought leave from the Fourth Circuit to file a successive § 2255 motion, contending that he should be allowed to do so because *Davis* and its predecessor *Johnson v. United States*, 576 U.S. 591 (2015), gave him a viable claim for relief under 28 U.S.C. § 2255(h)(2). In both instances, the Fourth Circuit denied his request without explanation (although it granted such a request by his co-defendant, Willis Haynes). *See* Initial Br. 6–9. Because the Fourth Circuit did not explain any of those decisions, its reasons are unknown and unknowable. And the Fourth Circuit's decisions were also unreviewable. *See* 28 U.S.C.

2

§ 2244(b)(3)(E) (prohibiting appeal, rehearing, or certiorari review of denial of application for leave to file a successive motion). We do know, however, that the Fourth Circuit says it reviews only whether an application for leave to file a successive motion facially meets the requirements of 28 U.S.C. § 2255(h)(2), not whether it will or is likely to succeed on the merits once the movant is given permission to file. *See In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003).

Thus, Mr. Higgs has been denied review under § 2255 by a process in which (a) the reasoning is unknown and unknowable; (b) the result is unreviewable; (c) the result is arbitrary (by comparison to the similarly situated co-defendant Haynes); and (d) review should have been denied only if review was entirely unavailable pursuant to § 2255(h)(2). That arbitrary, unreviewable, and unknowable process is the prototypical "structural problem." The Government argues against that conclusion on several grounds, all of which are meritless.

### B. The Government's arguments fail.

The Government relies on two central concepts: (1) that *Davis* is solely a constitutional decision, and so "most" courts have allowed prisoners review of Davis claims pursuant to 28 U.S.C. § 2255(h)(2), and

(2) that the Fourth Circuit likely based its denial of review on an analysis of the merits of Mr. Higgs's underlying claim. Gov't Br. 13–18. There are three insuperable flaws with the Government's contentions. First, Davis is not solely a constitutional decision. Second, standing alone, what other courts have done is not dispositive regarding what the Fourth Circuit did. Third, the Government's merits analysis is erroneous but beyond question requires going far beyond a "cursory glance" at the merits. See In re Williams, 330 F.3d at 282. For the Fourth Circuit to have pondered and decided all of the thorny questions regarding the merits in the guise of § 2255(h)(2) review would have been inconsistent with Fourth Circuit precedent.

1. *Davis* is statutory as well as constitutional.

The Government argues that *Davis* is a totally constitutional decision; according to the Government, only its defense "that the § 924(c) predicates also qualify as crimes of violence under the elements clause, is statutory in nature." Gov't Br. 15. That is wrong; among other things it ignores the arguments raised by the Government in *Davis* and almost everything the Court said in *Davis*.

In *Davis*, the Government acknowledged that if the "categorical" approach that had been applied to similar statutes also applied to § 924(c)(3), then the § 924(c)(3) residual clause was unconstitutionally vague. *Davis*, 139 S. Ct. at 2326–27. Rather than make a constitutional argument, the Government argued that the statute should be interpreted applying a "case-specific" approach, rather than the categorical approach. And that argument, the Court stressed, was "one of pure statutory interpretation." *Id.* at 2327. The Court recognized that the case-specific approach to the statute would have some benefits, including ease of application and avoiding the constitutional concerns about the statute, since "there would be no vagueness problem with asking a jury to decide whether a defendant's real-world conduct created a substantial risk of physical violence." *Id.* (citations and quotation marks omitted). Thus, the Court was forced to confront the question "whether Congress actually wrote" a "residual clause for § 924(c) using a case-specific approach." It could answer that question of "pure statutory interpretation" only by examining the "statute's text, context, and history." *Id.* It proceeded to do so at length. *See id.* at 2327–36; *see also United States v. Keene*, 955 F.3d 391, 393 (4th Cir.

2020) (citing *Davis* for the principle that applicability of categorical approach is a "question of statutory interpretation").

Thus, for a *Davis* claim to succeed for Mr. Davis (or anyone else), two questions had to be answered in the affirmative: (1) does the categorical approach apply to § 924(c), and (2) if the categorical approach applies, is the residual clause unconstitutional? The first question is one of "pure statutory interpretation," the second is one of constitutional law. *Davis* answered both questions, and its answers to both questions were new rules. Contrary to the Government's argument here, Mr. Higgs's claim relies on new rules of both statutory interpretation and constitutional law.

In this regard, *Hall v. Watson*, 829 F. App'x 719, 720 (7th Cir. 2020), cited by the Government as holding that § 2255 is not inadequate for a challenge to a § 924(c) conviction, Gov't Br. 14, is not dispositive. *Hall v. Watson* is an unpublished, non-precedential summary order denying a last minute stay of execution. *See id.* Moreover, in *Hall v. Watson*, this Court noted that the Fifth Circuit had rejected Hall's request for leave to file a successive § 2255 motion on the merits, with an explanation—that in the Fifth Circuit's view, kidnapping resulting

in death is a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A). *See In re Hall*, 979 F.3d 339, 344 (5th Cir. 2020).[2] For Hall, there was no "structural problem" with respect to the availability of relief under § 2255; the remedy was available, but Hall lost on the merits. The remedy was not available for Mr. Higgs.

The Fourth Circuit also could have denied relief for an additional reason not related to the merits. The Fourth Circuit itself has not yet decided whether *Davis* is retroactive. *See Drayton v. United States*, No. 2:98-cr-0751-DCN-2, 2020 WL 4478400, at *3 (D.S.C. Aug. 4, 2020). While the courts of appeals that have squarely addressed the issue have found *Davis* retroactive, *see id.*; *see also* Gov't Br. 19, the Fifth Circuit has suggested in dicta that it may not be retroactive. *See In re Hall*, 979

---

[2] As discussed in Gov't Br. 19 n.5, the Government did not contend below that kidnapping qualifies as a crime of violence, and both the Fourth and the Seventh Circuits have held that federal kidnapping does not qualify. Nevertheless, the Government points out that *In re Hall* held that kidnapping resulting in death does qualify. *See id.* Not only has the Government never before raised such a contention, kidnapping resulting in death does not contain a mens rea requirement and simply adds but-for causation to the offense of kidnapping. *See, e.g.*, *United States v. McDuffy*, 890 F.3d 796, 797–98 (9th Cir. 2018) (under 18 U.S.C. § 2113, "if death results" applies to accidental killing in course of bank robbery); *United States v. Piche*, 981 F.2d 706, 711 (4th Cir.1992) ("death resulting" clause requires only that death naturally and foreseeably result); *United States v. Hayes,* 589 F.2d 811, 820–21 (5th Cir. 1979) ("if death results" requires only causation, not intent). Applying the categorical approach, kidnapping resulting in death no more qualifies as a crime of violence than kidnapping simpliciter.

F.3d at 346–47. The Fourth Circuit panel could have shared that view. Again, there is no way for us to know.

### 2. The Government's speculation is unavailing.

The Government speculates about reasons why the Fourth Circuit might have acted as it did, while also accusing Mr. Higgs of speculating. Gov't Br. 17–18. But the fact that both parties (and the district court below) are required to resort to speculation proves Mr. Higgs's points—nobody other than the judges on the Fourth Circuit panels actually knows why they acted as they did, nobody at all can review what they did, and a process that operates like that is not a structurally adequate or effective process.

The Government asserts that there is "no indication that the Fourth Circuit thinks *Davis* is statutory." Gov't Br. 17. What the Fourth Circuit supposedly collectively "thinks" is not the question.[3] Nor is the question what other courts have done. The question is whether the Fourth Circuit denied Mr. Higgs's application because it believed that *Davis* was at least in part a new rule of statutory construction. As

---

[3] The Fourth Circuit has issued no precedential or non-precedential decision on the issue.

discussed above, that belief would be consistent both with the Government's arguments in *Davis* and with *Davis* itself. The Government cites *Ponder v. United States*, 800 F. App'x 181, 184 (4th Cir. 2020), but *Ponder* does nothing to answer the question. In addition to being unpublished and non-precedential, *Ponder* addressed whether a § 2241 petitioner who had never sought to file a successive § 2255 motion had an adequate remedy under § 2255, where the Eleventh Circuit—the circuit where Ponder was convicted—had held that there is such a remedy for *Davis* claims. *Id. Ponder* does not say anything about why two separate Fourth Circuit panels denied Mr. Higgs's applications.

> 3. **The Government's argument that the Fourth Circuit reached the merits is inconsistent with Fourth Circuit precedent.**

The Government argues that the Fourth Circuit actually denied the applications based on the merits of the underlying claims. Gov't Br. 18. This argument of necessity ignores what the Fourth Circuit has said—in numerous published, precedential opinions—about how it reviews applications to file successive petitions. The Fourth Circuit has summarized its teaching on that point as follows:

> In analyzing the motion, we need not decide whether Hubbard will ultimately prevail on his claim, only whether he is entitled to pursue a successive claim. At this stage, the moving party need only make a prima facie showing that the application satisfies the requirements of § 2244 to gain pre-filing authorization. 28 U.S.C. § 2244(b)(3)(C). Thus, Hubbard only needs to show that he presents a claim that relies on a qualifying new rule of constitutional law, and that he makes a sufficient showing of possible merit to warrant a fuller exploration by the district court.

*In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016) (citations, quotation marks, brackets, and footnote omitted).

Thus, the Fourth Circuit should have denied Mr. Higgs's applications on the merits only if there was no "possible merit" to his underlying claim. And while the Government strives to make that case, there are many thorny questions to be answered before anyone could say that there was no "possible merit" to the claim. Included among those questions, which the parties have briefed extensively, are at least the following: If one of the predicate crimes is not always a crime of violence and the verdict is ambiguous as to which crime the jury relied on, is the conviction valid?[4] Does the categorical approach or the

---

[4] The Fourth Circuit has held in abeyance several cases, including capital applications for leave to file successive petitions, pending a decision on this issue. *See* Order, *In re Johnson*, No. 20-8 (4th Cir. Nov. 3, 2020), 2d Supp. App. 43 (holding case in abeyance pending a decision in *U.S. v. Juan Ortiz-Orellana*, No. 16-4844); Order, *In re Tipton*, No. 20-10 (4th Cir. Nov. 17, 2020), 2d Supp. App. 44

"modified categorical" approach apply? Is kidnapping always a crime of violence? Is felony murder always a crime of violence? If the jury was instructed and convicted on a firearms charge with a predicate of "murder" or "kidnapping," may a reviewing court treat the predicate crime as "premeditated murder" or "kidnapping resulting in death"? Is kidnapping resulting in death always a crime of violence? Is a crime committed with a mens rea of recklessness (or less) nevertheless a crime of violence?

In an attempt to avoid all of these questions, the Government asserts that in *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017), the Fourth Circuit held that murder is always a crime of violence. Gov't Br. 18. The Government errs. *Irby* was construing the retaliatory murder statute, 18 U.S.C. § 1513. *See Irby*, 858 F.3d at 234. That statute includes as an element "intent to retaliate." 18 U.S.C. § 1513(a)(1). Because the statute

---

(same); Order, *United States v. Juan Ortiz-Orellana*, No. 16-4844 (4th Cir. Nov. 30, 2020), 2d Supp. App. 45 (holding appeal in abeyance pending, inter alia, decision in *United States v. Dickerson*, No. 20-6578); *United States v. Dickerson*, No. 3:09-cr-283, 2020 WL 954973, at *3 (E.D. Va. Feb, 27, 2020) (granting certificate of appealability on issue "whether the Court must vacate a § 924(c) conviction based on an indictment that charged both a valid and invalid predicate offense"). These rulings show that the issue is an open one in the Fourth Circuit, and cast further doubt on the Government's assertion that the panel in *Higgs* rendered a merits ruling.

includes intent as an element, the questions regarding a mens rea of recklessness and whether felony murder is always a crime of violence, which arise under § 1111, do not arise under § 1513. All that *Irby* decided is that murder with "intent to retaliate" is always a crime of violence, not that § 1111 murder is always a crime of violence. And for the same reasons, issues concerning whether felony murder is a crime of violence and whether a crime with a mens rea of recklessness (or less) is a crime of violence never arose in *Irby*.

Finally, the Government argues that Haynes's application was granted because Haynes challenged the district court's instruction on aiding and abetting, which, the Government says, is a "more compelling claim" than an argument that felony murder or an offense that can be committed with a mens rea of recklessness is not always a crime of violence. Gov't Br. 18. This argument is without merit for several reasons.

First, the Government did not raise it below. *See* 2d Supp. App. 1–42. Hence, it is waived. "It is axiomatic that arguments not raised below are waived on appeal." *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 966 (7th Cir. 1996) (citing *Jean v. Dugan*, 20 F.3d 255, 265 (7th Cir.1994)).

Second, there is not a scintilla of evidence that the Fourth Circuit actually ruled on the basis belatedly and creatively imagined by the Government. Third, the Government offers no reason at all why the argument about aiding and abetting is a "more compelling claim," thus waiving the argument again before this Court. *Id.* Fourth, under 18 U.S.C. § 2, one who aids or abets commission of an offense is as liable as the principal. Aiding or abetting in the commission of an offense that qualifies under the force or elements clause of § 924(c) also qualifies under that clause. *See, e.g.*, *United States v. Dinkins*, 928 F.3d 349, 358–59 (4th Cir. 2019) (North Carolina accessory before the fact of robbery conviction, treated like aiding and abetting conviction, was crime of violence); *United States v. Armour*, 840 F.3d 904, 906–07 (7th Cir. 2016) (rejecting claim of defendant convicted of aiding and abetting attempted armed bank robbery); *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016) (same as to aiding and abetting Hobbs Act robbery). Thus, the idea that Haynes's claim relating to aiding and abetting liability was "more compelling" than those raised by Mr. Higgs is legally wrong as well as waived.

In sum, the reasons why the Fourth Circuit acted as it did remain a mystery. But there is no mystery that the process available to Mr. Higgs under § 2255 has proved inadequate to provide meaningful review of his claim. Because his firearms convictions are invalid under *Davis*, there has been a fundamental miscarriage of justice.

II.    Mr. Higgs Shows a Miscarriage of Justice.

A.    Because kidnapping is not always a crime of violence, and the verdict is ambiguous, the firearms convictions are invalid.

The Government does not contest that kidnapping is not always a crime of violence and therefore does not qualify under the force or elements clause of § 924(c)(3). The parties agree that the modified categorical approach applies in this case. Given those concessions, the firearms convictions are invalid, for the reasons that follow.

1.    The Court must apply the modified categorical approach to determine the predicates for Mr. Higgs's § 924(c) convictions.

The Fourth Circuit and the Supreme Court have made crystal clear that the categorical/modified categorical approach applies to § 924(c)'s crime of violence definition. To determine whether an offense qualifies as a "crime of violence" under the § 924(c) force clause, the court must "employ the categorical approach or the modified categorical

14

approach." *United States v. Fuertes,* 805 F.3d 485, 498 (4th Cir. 2015) (internal quotation marks omitted); *accord United States v. Bryant*, 949 F.3d 169, 172 (4th Cir. 2020) (internal citations omitted); *see also Davis*, 139 S. Ct. at 2328, 2329; *United States v. Simms*, 914 F.3d 229, 233, 239, 241 (4th Cir. 2019) (en banc). Under this approach, courts can look only to whether the statutory elements meet the crime of violence definition, not the facts of the case. *Simms*, 914 F.3d at 233; *accord Descamps v. United States*, 570 U.S. 254, 257–58 (2013); *Shepard v. United States,* 544 U.S. 13, 23 (2005).

Assuming murder and kidnapping are divisible offenses, the modified categorical approach is required, allowing the review of certain judicial documents (authorized by *Shepard*, 544 U.S. at 26) to determine whether the defendant was "necessarily" convicted of an offense that qualifies as a "crime of violence." *Descamps*, 570 U.S. at 261, 262. When the *Shepard* documents do not conclusively establish the elements of which a defendant was "necessarily" convicted, the court must assume that the defendant was convicted of the "least serious" of the disjunctive elements of the statute. *United States v.*

*Chapman,* 666 F.3d 220, 228 (4th Cir. 2012) (en banc); *United States v. Vann*, 660 F.3d 771, 775 (4th Cir. 2011) (en banc).

Here, the *Shepard* documents are ambiguous as to whether kidnapping or murder necessarily served as the predicates for the § 924(c) convictions, because the jurors were instructed they could convict under either one and returned a general verdict. App. 225–32. Therefore, as *Vann* and *Chapman* dictate, this Court must assume that Mr. Higgs's § 924(c) convictions were predicated on the less serious of the two offenses, which is kidnapping. Because kidnapping is not a crime of violence, the § 924(c) convictions are void. *See Simms*, 914 F.3d at 233.

### 2. The Government's attempt to avoid the categorical approach fails.

The Government simply asserts that "the categorical approach applies to underlying prior predicate offenses, not charged conduct." Gov't Br. 26. The Government cites no support for this proposition, and does not really even explain what it means. To the extent, however, that the Government means that the categorical approach does not apply to the inquiry whether the jury convicted Mr. Higgs of a crime of violence, it errs.

*First*, the modified categorical approach applies to jury verdicts, such as the one in Mr. Higgs's case. As the en banc Fourth Circuit clarified in *Vann,* just as in guilty pleas*,* "in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict form identifying the factual bases for conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." 660 F.3d at 774.

In the instant case, there was no special verdict form identifying murder or kidnapping as the basis of the § 924(c) convictions. Therefore, this Court must assume that the conviction rested on kidnapping—the lesser of the two offenses. *Id.*

*Second*, the modified categorical approach is not limited to prior convictions. In *Fuertes,* the Fourth Circuit explicitly said that both the modified categorical and the categorical approach apply to the "crime of violence" element in a § 924(c) offense. 805 F.3d at 498. Further, in *Bryant*, the Fourth Circuit recently applied the modified categorical approach to § 924(c)'s crime of violence element. 949 F.3d at 172. The *Bryant* court reiterated, "To determine whether an offense qualifies as a

crime of violence under the force clause of § 924(c)(3)(A), 'we apply the categorical approach or the modified categorical approach, depending on the nature of the offense.'" *Id.* (internal citations omitted). The court then proceeded to apply the modified categorical approach to determine the particular offense upon which the § 924(c) conviction necessarily rested. *Id.*

The Government's attempt to avoid the modified categorical approach and the outcome that follows fails. It squarely applies here and requires this Court to assume Mr. Higgs's § 924(c) convictions were predicated on kidnapping.

### 3. Courts applying the modified categorical approach do not apply traditional harmless error analysis.

The Government contends that any error was harmless. Gov't Br. 24–26. The Government cites several decisions in which the court conducted harmless error review. *See id.* (citing, e.g., *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012); *United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016); *In re Navarro,* 931 F.3d 1298, 1302 (11th Cir. 2019)). As discussed in detail below, most of those decisions are inapposite because they did not involve an element mandating the

modified categorical approach. The remaining decisions are readily distinguishable due to materially different facts.

Harmless error analysis applies with respect to an instructional error regarding a non-categorical element. Whether such an error is harmless depends on the facts, not the elements. But that is not the situation here. This case involves the crime of violence element of § 924(c), which requires the categorical/modified categorical approach. Thus, the relevant decisions are those applying the modified categorical approach. In such cases, the prejudice analysis is conducted without looking to the facts; the error is prejudicial if the court cannot say that the conviction necessarily rests on a charge that satisfies the force or elements clause. While the Government suggests that there are no decisions so holding, *see* Gov't Br. 26–27, in fact there are several.

In *United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012), the Fourth Circuit found plain error that resulted in a miscarriage of justice, where the district court relied on facts in the Pre-Sentence Report (PSR) to determine whether two prior offenses were committed on different occasions for purposes of applying an enhanced sentence under the Armed Career Criminal Act (ACCA). 669 F.3d at 471–72. The

court applied the modified categorical approach, looking only to *Shepard*-approved documents, and concluded that the district court erred when it relied on facts in the PSR that did not bear the earmarks of derivation from *Shepard*-approved sources. *Id.* at 470. When assessing prejudice, the court did not stray from the modified categorical approach to a fact-based harmless error analysis. This Circuit has reached the same result, relying in part on *Boykin. See Kirkland v. United States*, 687 F.3d 878, 890-95 (7th Cir. 2012); *see also United States v. Dantzler*, 771 F.3d 137, 148 (2d Cir. 2014) (similar); *United States v. Castillo-Marin*, 684 F.3d 914, 926 (9th Cir. 2012) (similar).

Here, the jury was given the choice of finding Mr. Higgs guilty of the firearms offenses based on either murder or kidnapping. Nothing in the *Shepard* documents establishes which predicate crime the jury picked. Hence, we must presume that the jury picked kidnapping. Because kidnapping is not always a crime of violence, the § 924(c) convictions are invalid, and Mr. Higgs was prejudiced.

The Government does not meaningfully engage with the implications of the modified categorical approach. Instead, it raises a

harmless error argument that relies on inapposite cases in which harmless error analysis was applied to offenses that did not implicate either the categorical or the modified categorical approach. Gov't Br. 24–26.

For example, the Government cites *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012), in which the court held that an "alternative-theory error" was harmless. *Id.*[5] *Jefferson* did not involve a § 924(c) conviction or the modified categorical approach. Rather, the court looked at the entire record to determine if an instructional error was harmless. *Id.* While that approach applies to "alternative-theory error" cases, it is inapplicable here, where the approach set forth in *Descamps*, *Shepard*, *Vann*, and *Chapman* must be followed.[6]

The Government contends that *United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016), supports its position. In fact, it does the opposite. In *Hare*, the jury explicitly found in a special verdict form that

---

[5] An "alternative-theory" error arises when a general verdict "rests on alternative theories, one valid and the other invalid." *Yates v. United States,* 354 U.S. 298, 312 (1957), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 18 (1978).

[6] These comments also apply to *United States v. Robinson*, 627 F.3d 941, 954–55 (4th Cir. 2010). Like *Jefferson*, *Robinson* is a decision that applies harmless error analysis outside of the context of the modified categorical approach.

it was convicting the defendants on each of the two § 924(c) convictions based on both a "crime of violence" and a "drug trafficking" predicate. *Id.* at 105–06. There was no ambiguity. In other words, the jury unanimously found that the defendants were guilty of the § 924(c) offenses based on a "crime of violence," and, likewise, unanimously found that the defendants were guilty of the § 924(c) offenses based on "drug trafficking." It was only based on these very explicit findings that the court found that the defendants' convictions rested on both the "crime of violence" and "drug trafficking" predicates. Here, in contrast, there was no special verdict form and nothing about the verdict form shows whether the jury convicted Mr. Higgs of the firearms offenses based on kidnapping, murder, or both crimes. *See* App. 214, 219, 224; *see also Vann*, 660 F.3d at 774–75 (discussing necessity of a "special verdict form identifying the factual bases for conviction" to support a finding that the defendant was "necessarily convicted" of a particular charge).

The other decisions cited by the Government are similar and likewise unavailing for the Government. In *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019), the court relied on the fact that in the plea

agreement Navarro "specifically stated he was agreeing 'to plead guilty to . . . knowingly using and carrying a firearm during and in relation to a crime of violence *and a drug trafficking crime* and possessing a firearm in furtherance of such crimes.'" *Id.* at 1302 (quoting plea agreement) (emphasis in *Navarro*). Furthermore, the *Navarro* court itself distinguished *In re Gomez*, 830 F.3d 1225, 1227–28 (11th Cir. 2016), in which the court had authorized a successive § 2255 motion where, as here, there was an ambiguous jury verdict. *Navarro*, 931 F.3d at 1303 n.4. It is *Gomez* that is relevant here, not *Navarro*.[7]

Finally, the Government cites to the unpublished decision in *United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019), in which the court found that an ambiguous jury verdict that failed to necessarily establish the § 924(c) predicate—either Hobbs Act robbery or Hobbs Act conspiracy—was harmless. The court did so after applying a facts-based harmless error analysis that overlooked the elements-based limits of the categorical and modified categorical approaches. *Id.* In fact, the Court failed to mention the categorical framework

---

[7] While *Gomez* reached only a preliminary conclusion as to the merits, 830 F.3d at 1228, *Gomez* and *Navarro* reject the Government's arguments here.

altogether. Therefore, *Steward* is a non-binding, unpersuasive decision that conflicts with *Shepard, Vann,* and *Chapman.*[8]

The Government concludes that "any retrospective complaint about the charging information does not constitute a miscarriage of justice." Gov't Br. 27. This is far wide of the mark. We have no way of knowing what predicate offense the jury relied on. Applying the categorical approach, we must presume that the jury convicted Mr. Higgs under § 924(c)(3) of using a firearm during a kidnapping. But kidnapping does not qualify under the force or elements clause, and the residual clause is unconstitutional. Thus, Mr. Higgs was convicted of an invalid offense. His conviction was for "an act that the law does not make criminal"; such a conviction "inherently results in a complete miscarriage of justice." *[Joseph] Davis v. United States*, 417 U.S. 333, 346 (1974) (quotation marks omitted).

---

[8] The Third Circuit's decision in *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020), while published, is otherwise similar to *Steward*, in that it simply finds the error harmless without any mention or analysis of the categorical approach. As such, it is unpersuasive, as well as non-binding in this circuit.

**Federal murder is not categorically a crime of violence under § 924(c)(3)(A).**

Alternatively, even assuming arguendo that the § 924(c) convictions were predicated on murder, those convictions are still void. The Government agrees that the modified categorical approach applies to the question whether murder under 18 U.S.C. § 1111 is always a crime of violence. Gov't Br. 21. Thereafter, it forgets about the modified categorical approach. Instead of applying that approach, it argues that all that matters is that Mr. Higgs was convicted of premeditated murder and premeditated murder is a crime of violence. *Id.* at 21–22. The Government ignores how the modified categorical approach works.

The jury instructions and the verdict forms for the § 924(c) charges allowed the jury to convict on those charges if Mr. Higgs used or carried a firearm during the commission of "murder," simpliciter. The jury convicted Mr. Higgs of both premeditated and felony murder. App. 226–29 (jury instructions), 230–32 (verdict). There was no special verdict form specifying the type of murder that the jury associated with the firearm charge. Therefore, applying the modified categorical approach, the *Shepard* documents do not allow for the conclusion that the jury "necessarily" convicted Mr. Higgs of using a firearm during the

commission of premeditated murder. *Descamps*, 570 U.S. at 261, 262. In these circumstances, the court should assume that the defendant was convicted of the "least serious" of the disjunctive elements of the statute, *Vann*, 660 F.3d at 775; *Chapman,* 666 F.3d at 228, i.e., felony murder.

Mr. Higgs does not dispute that premeditated murder under § 1111 or any other type of murder that includes an intent element qualifies as a crime of violence. *Cf. Irby*, 858 F.3d at 234, 237 (murder with intent to retaliate under § 1513 is a crime of violence). The issue is whether felony murder is also necessarily a crime of violence.

The Government contends that this would be relevant only if § 1111 were indivisible. Gov't Br. 23.[9] The Government errs. The fact that § 1111 is divisible means only that the modified categorical approach applies, as the Government acknowledges. *Id.* at 20–21. "The modified categorical approach is simply a tool for implementing the

---

[9] The Government cites *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003), as though it supported the Government's argument. But all *Williams* supports is the uncontested fact that § 1111 is divisible. *Williams* does nothing to suggest that the question whether felony murder is a crime of violence is irrelevant.

categorical approach." *Bryant,* 949 F.3d at 173 (citations and quotation marks omitted). Under both the categorical approach and the modified categorical approach, the question is whether the statutory elements of the particular offense meet the crime of violence definition. *Simms*, 914 F.3d at 233. Since § 1111 includes felony murder and it is impossible to say whether the jury convicted based on premeditated murder or felony murder, the Government must show that felony murder is always a crime of violence. It is not.

In *United States v. Vederoff*, 914 F.3d 1238, 1247–48 (9th Cir. 2019), the Ninth Circuit held that Washington felony murder is not always a crime of violence. The Government attempts to distinguish *Vederoff* on the ground that the Washington felony murder statute does not enumerate "dangerous" felonies, while § 1111(a) does. Gov't Br. 23. But the relevant holding of *Vederoff* is that Washington felony murder does not satisfy the force or elements clause because "Washington law imposes liability for negligent or even accidental felony murder." *Vederoff*, 914 F.3d at 1248. Similarly, under § 1111, no additional showing of intent is required once it is shown that the defendant intended to commit an enumerated felony, and death resulted. *See*

27

*Dean v. United States*, 556 U.S. 568, 575 (2009) ("The felony-murder rule is a familiar example: If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder.") (citing 18 U.S.C. § 1111). Because § 1111 lacks any mens rea requirement (beyond that required for a felony like kidnapping that is itself not always a crime of violence), it suffers from the same infirmity as the Washington statute.[10]

Furthermore, Mr. Higgs has shown that because the elements clause can pass muster under the categorical approach only if it requires the intentional use of force, a statute like § 1111 that includes reckless or negligent felony murder is not categorically a crime of violence. Initial Br. 33–35, 40. The Government's only response is that the Supreme Court has granted certiorari to decide whether ACCA's use of force clause includes crimes with a mens rea of recklessness.

---

[10] The Government cites *United States v. Vickers*, 967 F.3d 480, 485–87 (5th Cir. 2020), as supporting its argument. *Vickers* held that Texas felony murder at the relevant time required a mental state of recklessness or above, *id.* at 486, thus distinguishing it from the Washington statute and § 1111.

Gov't Br. 24 (citing *Borden v. United States*, No. 19-5410).[11] Thus, the Government suggests that Mr. Higgs "is not entitled to habeas relief based on a speculative favorable decision in *Borden*." Gov't Br. 24.

The Government has things topsy-turvy. As Mr. Higgs showed, and the Government has done nothing to rebut, current law favors his claim. It is the Government that hopes a favorable outcome in *Borden* will change its position. But if the Government hopes for help from *Borden*, it should not be trying to execute Mr. Higgs before *Borden* is decided. *See* ECF No. 16, Notice of Scheduled Execution. In any event, a mens rea of recklessness is not required for felony murder; an accidental killing in the course of a felony suffices. *Dean*, 556 U.S. at 575.

### C. The invalid firearms convictions are themselves a miscarriage of justice and likely affected Mr. Higgs's death sentences.

As discussed above, Mr. Higgs's firearms convictions are for "act[s] that the law does not make criminal"; such convictions "inherently

---

[11] *See Borden v. United States*, 140 S. Ct. 1262 (2020) (granting certiorari petition as to Question 1); Pet. for Writ of Certiorari, *Borden v. United States*, No. 19-5410, 2019 WL 9543574, at *ii (filed July 24, 2019).

result[] in a complete miscarriage of justice." *[Joseph] Davis*, 417 U.S. at 346. Those convictions should therefore be vacated, irrespective of any effect on Mr. Higgs's death sentences.

The Government argues to the contrary, citing noncapital decisions and quoting this Circuit's recent order in *Hall v. Watson*. Gov't Br. 27–28. The decisions in noncapital cases, however, involved challenges to noncapital concurrent sentences. *Id.* (quoting *Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012)). They do not stand for the proposition that a court faced with invalid convictions that resulted in consecutive sentences may simply allow the invalid convictions to stand. *See Honken v. United States*, 42 F. Supp. 3d 937, 1196 (N.D. Iowa 2013) (vacating duplicative convictions and amending judgment even though this relief did not affect the death sentence). Moreover, Mr. Higgs intends to seek commutation of his death sentences through executive clemency. The invalid firearms convictions could negatively affect his attempt to obtain clemency.

While this Court apparently adopted the Government's position in *Hall v. Watson*, it did so in an unpublished, non-precedential summary order denying a last minute stay of execution. *See* 829 F. App'x 719.

After considering the parties' arguments in this fully briefed and argued appeal, this Court should make clear in a published decision that invalid convictions in capital cases should be vacated even if they do not impact the death sentence.

Assuming that some connection between the § 924(c) convictions and the death sentences is required, however, Mr. Higgs makes that showing. As shown in Initial Br. 42, under *United States v. Tucker*, 404 U.S. 443, 448 (1972), a defendant must be resentenced on the remaining convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by the invalid convictions. *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986). Thus, the Government has the standard wrong when it says that Mr. Higgs cannot prove that the penalty phase jury relied on the § 924(c) convictions. Gov't Br. 28. The burden is on the Government's side to show that the jury's death sentences were not affected by the § 924(c) convictions. This the Government cannot do.

Capital sentencing under the Federal Death Penalty Act involves a weighing process where the jury weighs aggravating and mitigating factors. *See* 18 U.S.C. § 3593(e) (outlining the weighing process). In

such a weighing process, any improper weight on the aggravating side of the scale may skew the result. *See Stringer v. Black*, 503 U.S. 222, 232 (1992) ("[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale."); *Middleton v. Dugger*, 849 F.2d 491, 495 (11th Cir. 1988) (finding prejudice resulting from counsel's failure to present psychiatric evidence, in part because such evidence could have lessened the weight of the aggravating factors).

The question here, therefore, is whether the invalid § 924(c) convictions may have affected the jury's weighing process. It is clearly possible that they did so. For example, one of the statutory aggravating factors found by the jury was that Mr. Higgs had a previous conviction of a violent felony involving a firearm. *United States v. Higgs*, 353 F.3d 281, 295 (4th Cir. 2003); 18 U.S.C. § 3592(c)(2). The weight of that statutory aggravating factor was likely increased by Mr. Higgs's invalid convictions for use of a firearm under § 924(c)(3). While the aggravating factor applies regardless of the facts of the capital offense, it acquires added weight owing to the concept of recidivism that applies when

someone violates the same kind of law more than once. *See*

*Almendarez-Torres v. United States*, 523 U.S. 224, 243 (1998)

(recidivism "is a traditional, if not the most traditional, basis for . . .

increasing an offender's sentence"). Here, it was the sum of the invalid

§ 924(c)(3) convictions that gave this added recidivist weight to the

statutory aggravating factor.

In light of the Eighth Amendment's heightened requirement of

reliability in capital sentencing and because the "possibility" exists that

the jury improperly relied upon the unconstitutional § 924(c)

convictions in sentencing him to death, Mr. Higgs should be granted

habeas relief from the § 924(c) convictions and habeas relief as to his

death sentences on the remaining counts, and then resentenced. At a

minimum, the invalid firearms convictions should be vacated, allowing

the trial court to determine the proper procedure by which to resentence

Mr. Higgs.

**CONCLUSION**

For all of the reasons set forth herein and in Petitioner's prior submissions, this Court should vacate the district court's decision, and either remand to that court to consider the merits of Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241, or grant the petition.

/s/ Matthew Lawry
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Roland Park Place
830 W. 40th Street, Apt. 864
Baltimore, MD 21211
410-243-4589

Dated: December 16, 2020

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 32(c) because it contains 6,912 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Century.

/s/ Matthew C. Lawry
Matthew C. Lawry

## CERTIFICATE OF SERVICE

I, Matthew Lawry, hereby certify that on December 16, 2020, I electronically filed the foregoing brief with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause 15 paper copies of the brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with Seventh Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matthew C. Lawry
Matthew C. Lawry