No. 20-2129

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,
*PETITIONER-APPELLANT,*

V.

T. J. WATSON, WARDEN,
*RESPONDENT-APPELLEE.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:16-cv-321, Hon. Jane Magnus-Stinson, Chief J.

## SECOND SUPPLEMENTAL APPENDIX TO REPLY BRIEF FOR APPELLANT

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Roland Park Place
830 W. 40th Street, Apt. 864
Baltimore, MD 21211
410-243-4589

Dated: December 16, 2020

## Index to Appendix

Return to Show Cause, March 22, 2017 ........................................................................ SSA-001

Supplemental Return to Order to Show Cause, August 9, 2019 ...................................... SSA-026

United States vs. Corey Johnson, No. 20-8, Order, November 3, 2020 ........................... SSA-043

United States vs. Richard Tipton, No. 20-10, Order, November, 17, 2020 ...................... SSA-044

United States vs. Juan Alberto Ortiz-Orellana, No, No.16-4844 (L),

November 30, 2020 ...................................................................................................... SSA-045

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,       )
                               )
           Petitioner,    )
                               )
      v.                  )  Cause No. 2:16-cv-00321-JMS-MJD
                               )
CHARLES DANIELS, Warden,    )
                               )
          Respondent.    )

**RETURN TO ORDER TO SHOW CAUSE**

For his return to the Order to Show Cause and in response to

Petitioner Dustin John Higgs's petition for a writ of habeas corpus, filed

pursuant to 28 U.S.C. § 2241, the Respondent advises the Court as follows:

**BACKGROUND[1]**

Petitioner Dustin John Higgs is an inmate currently housed at the

United States Penitentiary, located in Terre Haute, Indiana.   Higgs was

convicted by a jury in the District of Maryland of:  three counts of first-degree

premeditated murder, in violation of 18 U.S.C. § 1111(a); three counts of first-

---

[1] The background information is taken in part from the United States Court of Appeals for the Fourth Circuit's opinion affirming Higgs's conviction, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).  In addition, throughout this response the United States will make the following references: Dkt. = the docket in this § 2241 case; Crim. Dkt. = the docket in Higgs's criminal case in the District of Maryland (8:98-cr-00520-PJM-2).

degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*; and three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(2), all of which are punishable by life imprisonment or death. Higgs was also convicted of three counts of using a firearm "during and in relation to [a] crime of violence," in violation of 18 U.S.C.A. § 924(c).

Ultimately, Higgs received nine death sentences under the Federal Death Penalty Act of 1994, *see* 18 U.S.C.A. § 3591-3598 (the "FDPA" or "Act"), one for each murder and kidnapping count, and a consecutive 45-year sentence for the firearm convictions. *See* 18 U.S.C. § 924(c)(1).  Higgs's convictions and sentence were affirmed on appeal. *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004).

### *The Kidnapping and Murder of Tanji Jackson, Tamika Black, and Mishann Chinn*

On the evening of Friday, January 26, 1996, Dustin John Higgs, Willie Mark Haynes, and Victor Gloria drove from Higgs's apartment at 13801 Briarwood Drive in Laurel, Maryland, to Washington, D.C.  Arriving in the city in Higgs's blue Mazda MPV van, the men picked up Tanji Jackson, Tamika Black, and Mishann Chinn.  Jackson knew Higgs, and they had arranged for Haynes to date Black and for Gloria to date Chinn. After

2

stopping at a liquor store, the couples returned to Higgs's apartment to drink alcohol and listen to music.  The men also smoked marijuana.[2]

Early on January 27, Higgs and Jackson began to argue, prompting Jackson to grab a knife from the kitchen.  Hearing the commotion, Haynes, who had been in a bedroom with Black, broke up the fight, convincing Jackson to surrender the knife.  Jackson, however, remained angry, and the three women left the apartment.  As Jackson exited, "[s]he stopped at the door and said something like I am going to get you all f---ed up or robbed" or made "some kind of threat."  The remark led Higgs to comment that Jackson "do know a lot of n-----s."  Higgs saw Jackson stop and copy the license plate number of his van.  Angered, Higgs commented aloud about Jackson's actions, which Gloria interpreted as concern that Jackson intended some retaliation.

Higgs said, "f---- that," retrieved his coat, and urged the men to come with him. Before leaving the apartment, Higgs took a silver .38 caliber firearm from the end table drawer and put it in his pocket.  With Higgs

---

[2] Following a 1998 arrest on federal drug charges, Gloria agreed to cooperate in the government's murder case against Higgs and Haynes. Gloria's testimony was partially corroborated by Chinn's mother and by a friend of the Jackson family, both of whom saw the victims enter a blue Mazda MPV van. Gloria pleaded guilty to being an accessory after the fact to the murders and received 84 months' incarceration and three years of supervised release.

driving the MPV van, Haynes in the front passenger seat, and Gloria behind

Higgs, the men pursued the three women.  Seeing the women walking on the

side of the road, Higgs instructed Haynes to get them in the vehicle.  Haynes

complied, and the three women got into the back seat of the vehicle, which

Higgs drove toward Washington, D.C.

According to Gloria, while en route to Washington, D.C., Higgs and

Haynes leaned towards each other and quietly conversed.  Higgs drove past

the Baltimore-Washington Parkway into the Patuxent National Wildlife

Refuge, a federal property within the jurisdiction of the United States Park

Police.  When he pulled over at a secluded location, one of the girls asked if

they were trying to "make [them] walk from [t]here?"  Higgs responded,

"something like that."   When the women exited the van, Higgs handed his

gun to Haynes, who put it behind his back and left the van.  Moments later,

Gloria heard a gunshot and wiped the mist off the back window in time to see

Haynes shoot one of the women in the chest.  Gloria turned to ask Higgs

what he was doing, but saw Higgs holding the steering wheel and watching

the shootings in the rearview mirror. Gloria put his head down and listened

to more shots and the sound of a woman screaming.

When the shooting ended, Haynes reentered the van and closed the

door.  He or Higgs then commented that they had to "get rid of the gun."

4

Higgs drove to the Anacostia River, where he or Haynes threw the gun into the water.  Higgs then drove back to his apartment, which the three men proceeded to sanitize of evidence.  They wiped the patio doors and "everything else, the bathroom, the doorknobs, the stereo," and threw away any items the women might have touched, such as CDs, videotapes, and liquor bottles.  The men left the apartment and dropped the trash by a dumpster.  Higgs and Haynes left Gloria at a fast food restaurant with an admonition to "keep [his] mouth shut."

Around 4:30 a.m., a motorist found the murdered women's bodies strewn about a roadway and contacted the Park Police. Jackson's day planner was found at the scene.  It contained Higgs's nickname and telephone number, as well as a note that read "13801 'MAZDA' 769GRY" — the street number of Higgs's apartment and the tag number for his van.  The police also recovered a .38 caliber wadcutter bullet at the scene.  According to the medical examiner, Jackson and Black each had been shot once in the chest and once in the back.  Chinn had been shot once in the back of the head.

### Higgs's Post-Conviction Motions

Following his unsuccessful direct appeal, Higgs filed a motion for new trial, in the District of Maryland which was rejected.  The Fourth Circuit affirmed.  *United States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004).  Higgs

**SSA-005**

then filed a motion for relief under 28 U.S.C § 2255, which the trial court denied. The Fourth Circuit again affirmed. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011).

Then, in May 2016, Higgs filed an application with the Fourth Circuit to file a second or successive § 2255 motion. Appeal No. 16-0008 (4th Cir. May 23, 2016). In the application, Higgs did not challenge his multiple convictions for first-degree premeditated murder and kidnapping. Neither did he challenge his numerous death sentences, each of which has been upheld after numerous challenges stretching over a dozen years.

Instead, Higgs challenged only his firearms convictions (and, by extension, the associated sentences) under 18 U.S.C. § 924(c). Those convictions, in turn, are predicated upon Higgs's convictions (1) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black; (2) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn; and (3) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson. *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

Specifically, Higgs argued that that his underlying convictions for first-degree murder and kidnapping failed to categorically qualify as "crimes of

6

violence" for purposes of § 924(c), following the Supreme Court's decision in

*Johnson v. United States*, 135 S. Ct. 2551 (2015). *Id.* In addition, he argued

that both murder and kidnapping fail to categorically qualify as a crime of

violence under Section 924(c)'s remaining force clause and as such, the 'crime

of violence' element cannot be satisfied here under § 924(c), and the

convictions are unconstitutional. *Id.* at 4. The Fourth Circuit rejected those

arguments, denying his application last year. *United States v. Higgs*, No. 16-

0008 (4th Cir. Jun. 27, 2016).

In the instant § 2241 habeas corpus petition Higgs raises the same

arguments that he presented to the Fourth Circuit in his application to file a

successive § 2255 motion. Dkt. 11, p. 4.

### ISSUE

Whether Higgs's 28 U.S.C. § 2241 habeas corpus petition must be

dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. § 2244(a) or

whether, pursuant to the "savings clause" provision of 28 U.S.C. § 2255(e),

this Court may consider the merits of Higgs's challenge to his conviction.

7

## DISCUSSION[3]

**I.    Higgs's § 2241 petition must be dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. § 2244(a).**

A § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *Davis v. United States*, 417 U.S. 333, 343 (1974). A prisoner is therefore generally limited to bringing only one motion under § 2255. *Id.*

A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under 28 U.S.C. § 2241. The "savings clause" in 28 U.S.C. § 2255(e) authorizes a federal prisoner to file a §

---

[3] Because "courts should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241," the government's analysis will be based predominately on Fourth Circuit law. *Salazar v. Sherrod*, No. 09–cv–619–DRH–DGW, 2012WL 3779075 at *3 (S.D. Ill. Aug. 31, 2012) (unpublished) (citing cases); *Hernandez v. Gilkey*, 242 F.Supp.2d 549, 554 (S.D. Ill. 2001).

SSA-008

2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016); 28 U.S.C. § 2255(e).

In *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), a death penalty case, the Seventh Circuit made clear that while there is no absolute bar to the use of the § 2255(e) savings clause for *new evidence*, the obstacle in the petitioner's path to earlier relief must have been a "structural problem with section 2255." *Webster*, 784 F.3d at 1125. "In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Id.* at 1136. The test remains whether § 2255 is an inadequate or ineffective remedy, meaning "whether it allows the petitioner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id.* (internal quotation marks and citation omitted); *see In re Davenport*, 147 F.3d 605, 609 (7th Cir.1998).

The Seventh Circuit has further explained the scope of *Webster*: "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence." *Poe*, 834 F.3d at 774. Indeed, as noted in *Poe*, "the *Webster* court took great care to assure that its holding was narrow in scope [stating]– 'it will be the *rare* case where records that *predate* the trial are found much

9

later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of [the defendant's] sentence.'" *Poe*, 834 F.3d at 774 (quoting *Webster* 784 F.3d at 1140) (first emphasis added).

**A.      Higgs cannot demonstrate that there is a structural problem with § 2255 that prevents him from seeking relief**

Because § 2255 was and is adequate to test the legality of Higgs's conviction, this Court lacks jurisdiction to grant the habeas relief he seeks.

Higgs has not been procedurally prevented from raising his claims.  In his petition to file a second or successive § 2255 motion, Higgs raised the same *Johnson* claims he presents in the instant petition.  Given this prior opportunity to bring this claim and failing to make a *prima facia* showing, the savings clause does not apply to Higgs.  He had an unobstructed procedural opportunity.  His arguments were reviewed and considered by the Fourth Circuit, which rejected them. *Order*, at 2, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 27, 2016); *Government's Opposition to Defendant's Application to File Successive § 2255 Motion, United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).  Although not specifically stated, the Fourth Circuit's rejection must be based on a finding that (1) the Supreme Court has not set forth a new rule of constitutional law applicable to 18 U.S.C. § 924(c), and that (2) premeditated first degree murder and/or kidnapping is a "crime

10

of violence" for purposes of § 924(c).

In short, Higgs fails to demonstrate that his remedy under § 2255 was inadequate or ineffective. His legal theories regarding his *Johnson* claims were reviewed by the Fourth Circuit and he is not entitled to another post-conviction action. *Garza v. Lappin*, 253 F.3d 918, 992 (7th Cir. 2001) ("The mere fact that [the] petition would be barred as a successive petition under § 2255 . . . is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing."); *San–Miguel v. Dove*, 291 F.3d 257, 261 n. 2 (4th Cir. 2002).

This is not a rare case involving a structural problem in § 2255.  This is simply a case where Higgs prefers the Seventh Circuit precedent to the Fourth Circuit's view.  That is not enough for § 2241 relief.

### B.     Higgs cannot show that § 2255 is inadequate or ineffective

Background

Higgs was charged and convicted under § 924(c), part of the Gun Control Act of 1968, as amended, of three counts of using and carrying a firearm during and in relation to a crime of violence, that is murder (18 U.S.C. § 1111) and kidnapping (18 U.S.C. § 1201).  Section 924(c)(3) defines "crime of violence" as:

11

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(j) provides in pertinent part:

Any person who, in the course of a violation of subsection (c), causes the death of a person through the use of the firearm, shall—

(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life.

Murder and Kidnapping are both qualifying predicate "crimes of violence" and *Johnson* does not change this.

*Johnson* concerns § 924(e), part of the Armed Career Criminals Act ("ACCA"), as amended, which defines "violent felony." Section 924(e)(2)(B) states:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

12

> (ii) is burglary, arson, or extortion, involves use
> of explosives, or otherwise involves conduct that
> presents a serious potential risk of physical injury to
> another; and

Both 924(c) and 924(e) have a "force clause" and a "residual clause." Sections 924(c)(3)(A) and 924(e)(2)(B)(i) are the "force clauses" and §§ 924(c)(B) and 924(e)(2)(B)(ii) are the "residual clauses." *United States v. Roof*, __ F.Supp.3d ___, 2016 WL 8118564 at *14 (D. S.C. Dec. 5, 2016). As seen above, the respective forces clauses are identical regarding force used against persons. While *Johnson* held the § 924(e)(2)(B)(ii) residual clause to be vague—it did not consider the force clause. *Id.* ("Textual differences between the § 924(c) and § 924(e) residual clauses might be 'crucial in determining whether the holding in *Johnson* reaches § 924(c)(3)—a question now pending before the Supreme Court.'") (quoting and citing *United States v. Moreno–Aguilar*, 198 F.Supp.3d 548, 549 (D. Md. 2016)). *See also Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted,* 137 S. Ct. 31 (2016) (No. 15–1498) (granting writ of certiorari on same question regarding identical language in 18 U.S.C. § 16(b)).

In the Fourth Circuit, "if the 'most innocent' conduct proscribed by the predicate statute does not fall within either the force clause or the residual clause, then the offense categorically is not a crime of violence regardless of

13

whether the facts of a particular case involve violent conduct." *Moreno-Aguilar*, 198 F. Supp. 3d at 551.

In this case, because murder and kidnapping qualify as crimes of violence under § 924(c)'s force clause, *Johnson* is irrelevant and Higgs's conduct is deemed criminal− accordingly, he entitled to no relief under § 2241. *Id. See United States v. Taylor*, 814 F.3d 340, 378 (6th Cir. 2016) (*Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes").

Under Fourth Circuit Law, Kidnapping is a Crime of Violence Under § 923(c)(3)(A)[4]

An offense is committed under the kidnapping statute when the defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" and that action impacts interstate or foreign commerce in any number of enumerated ways. *See* 18 U.S.C. § 1201(a). "To establish a violation of § 1201(a), the government must prove that: (1) the victim was seized, confined, inveigled, decoyed, kidnapped,

---

[4] The arguments presented here were considered by the Fourth Circuit in denying Higgs's application to file a successive § 2255 motion. *Government's Opposition to Defendant's Application to File Successive § 2255 Motion*, at 13, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

14

abducted, or carried away; (2) the victim was held; and (3) federal jurisdiction." *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (hereinafter "*Wills I*") (footnote omitted).

While the first prong can be accomplished through deceit rather than force, precedent instructs that the second prong necessarily requires the exercise of violent force or the threat thereof, as contemplated by *Johnson*. The Fourth Circuit has determined that, in the context of this statute, "to hold means to detain, seize, or confine a person in some manner against that person's will." *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) (hereinafter "*Wills II*"); *see United States v. Blackmon*, 209 F. App'x 321, 325 (4th Cir. Dec. 13, 2006) (unpublished) (acquittal under § 1201(a) only warranted if jury found that defendant mistakenly believed victim *consented* to being "held"); *Higgs*, 353 F.3d at 313 (rejecting challenge to the "holding" element where the evidence supported the conclusion that the kidnapper "was prepared to confine [his inveigled victims] at gunpoint if necessary"). *See also United States v. Boone*, 959 F.2d 1550, 1555 n.5 (11th Cir. 1992) (noting that "inveiglement becomes an unlawful form of kidnapping under the statute when the alleged kidnapper interferes with his victim's actions, exercising control over his victim through the willingness to use forcible action should his deception fail").

15

Further, the Supreme Court has found that "[i]t is this 'involuntariness of seizure and detention which is the very essence of the crime of kidnaping.'" *See United States v. Lentz*, 383 F.3d 191, 200 (4th Cir. 2004) (quoting and citing *Chatwin v. United States*, 326 U.S. 455, 460 (1946)).  In order to hold a victim against his or her will, then, the alleged kidnapper must use, attempt to use, or threaten to use force necessary to restrain that individual.  In other words, because the federal kidnapping statute requires an "involuntar[y] . . . seizure and detention," *Lentz*, 383 F.3d at 200, and requires that the victim be detained, seized, or confined "against that person's will," *Wills II*, 346 F.3d at 493, the federal kidnapping offense necessarily involves the use, attempted use, or threatened use of force. Kidnapping victims cannot be held against their wills by kidnappers without at least a threatened use of force.  The Supreme Court has observed that "a person would 'use . . . physical force against' another when pushing him," *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), and in the context of discussing batteries, the Court has defined force in terms of what it was "capable of causing" – namely, "physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Federal kidnapping's requirement of detaining a person against that person's will fits within that understanding of physical force and is a "force strong enough to constitute 'power.'" *Johnson*, 559 U.S. at 142. *Cf. United States v.*

16

*Mechor-Mecono*, 620 F.3d 1180, 1186 (9th Cir. 2010) (placing another in fear of being poisoned necessarily involves threatening to force the poison on the victim). Thus, under Fourth Circuit law, kidnapping appropriately qualifies as a predicate crime of violence under § 924(c)(3)(A).

The Seventh Circuit's recent decision in *United States v. Jenkins*, 849 F.3d 390 (7th Cir. 2017), does not necessarily change this. In addition to the fact that Fourth Circuit law controls here, *Jenkins* relied on a materially different set of arguments. *Id.* (finding that "kidnapping is not a crime of violence under the Force Clause" where the government did not argue that § 1201(a) requires the use of force).

<u>Murder is a Crime of Violence Under § 923(c)(3)(A)[5]</u>

In all events, no federal court has held after *Johnson* that murder is not a crime of violence. Higgs argues that murder does not satisfy § 924(c)(3)(A) because: (1) felony murder does not require the intentional use of violent force because a person could die as a result of an accident or reckless conduct during the course of a felony, and (2) premeditated murder does not categorically require the use of violent force because a person may

---

[5] The arguments presented here were considered by the Fourth Circuit in denying Higgs's application to file a successive § 2255 motion. *Government's Opposition to Defendant's Application to File Successive § 2255 Motion*, at 16, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

intentionally kill another person in ways that do not require violent physical force. Dkt. 11, p. 3.

Higgs's argument that murder can be accomplished without force should be rejected.  First, Higgs's narrow view of force would erroneously imply that murder has never been properly classified as a crime of violence under § 924(c)—even without *Johnson*.  Section 924(c)(3)(B), like 18 U.S.C. § 16(b), turns on "a substantial risk that *physical force* against the person or property of another may be used in the course of committing the offense." Section 924(e)(2)(B)(ii) of the ACCA, by contrast, applies to "any crime" that "involves conduct that presents a serious potential risk of *physical injury* to another."

Because both prongs of the crime of violence definitions in § 924(c)(3) and § 16 turn on "physical force," Higgs's theory that murder can be accomplished without force, would imply that murder could never be a crime of violence under either statute even before *Johnson*.   That is obviously wrong.

More fundamentally, Higgs's theory cannot be reconciled with either Supreme Court precedent or the structure and legislative history of the statute.  Courts "must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Torres v. Lynch*, 136

18

S. Ct. 1619, 1626 (2016) (quoting *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014)); *Moreno-Aguilar*, 198 F. Supp. 3d at 553. While interpreting the ACCA's elements clause, the Supreme Court has defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

But the Court did not limit the means of causing injury, and the Court later *rejected* a defendant's argument that "although '[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink.'" *United States v. Castleman*, 134 S. Ct. 1405, 1414-15 (2014) (stating instead that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force" and noting that the force used need not be applied directly to the body of the victim"). *See also Roof*, 2016 WL 8118564 at * 14 (citing *Castleman*− "Any felony having as an element the intentional infliction of bodily injury on another person is a crime of violence under § 924(c).").

More recently, in concluding that arson may involve "physical force" within the meaning of § 16, the Supreme Court concluded that some state arson offenses would fall outside the scope of § 16 not because burning

19

property does not involve "physical force," but because § 16 is limited to physical force against the "property of another."  Hence, § 16 "would not reach arson in the many States defining that crime to include the destruction of one's own property."  *Torres*, 136 S. Ct. at 1630.  And as the dissent in *Torres* noted, the Fourth Circuit has already agreed with the broad reading of "physical force" under § 16. *Id.* at 1637 n.1 (citing *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007)).

The legislative history of § 924(c) confirms this reading.  When the crime of violence standard was added to § 924(c) in 1984, *see, e.g., Bailey v. United States*, 516 U.S. 137, 147-48 (1995), a Senate report explained that § 924(c) would reach offenses such as bank robbery under 18 U.S.C. § 2113(a) and assaulting a federal officer under 18 U.S.C. § 111.  "As amended by Part D, Section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer." S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.S.C.A.N. 3182, 3491 (Aug. 4, 1983).  These are offenses that satisfy the elements clause of § 924(c), as confirmed by the legislative history of the ACCA.  As the D.C. Circuit has noted, Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would

20

"include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *United States v. Mathis*, 963 F.2d 399, 407 (D.C. Cir. 1992) (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)).  It is profoundly unpersuasive that *assaulting* a federal officer under § 111 would count as a crime of violence under § 924(c)(3), but that *murder* does not.

Likewise, using the slight force needed to pull the trigger of a gun, causing death, constitutes a use of physical force.  *Castleman*, 134 S. Ct. at 1415 (citing that example).  *Cf. Leocal*, 543 U.S. at 9 (interpreting § 16(a) and concluding that "a person would 'use . . . physical force against' another when pushing him"). Indeed, "[s]pecifying that 'physical force' must rise to the level of bodily injury does not suggest that without the qualification 'physical force' would consist of the merest touch.  It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example." *Johnson*, 559 U.S. at 143.

Higgs's view would also gut the federal solicitation statute, 18 U.S.C. § 373, which was enacted in 1984 when Congress added the crime of violence standard to § 924(c), and § 373 has *solely* an elements clause. Yet § 373 does cover solicitation to commit murder. *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).

21

Higgs argues that felony-murder liability eliminates murder from § 924(c)(3)(A) and § 373.  But that is wrong.  Felony-murder law would satisfy § 924(c)(3)(A). *See, e.g., Wooden v. Commonwealth,* 222 Va. 758, 284 S.E.2d 811 (1981).  Higgs's arguments also rely on *United States v. Torres-Miguel,* 701 F.3d 165 (4th Cir. 2012), and other cases that (1) do not construe § 924(c), (2) predate Supreme Court cases like *Castleman* and *Torres,* and (3) would result in no federal offense ever satisfying § 924(c)(3)(A).  The Fourth Circuit's recent ruling in *United States v. McNeal,* 818 F.3d 141, 152-53 (4th Cir. 2016), holding that bank robbery satisfies § 924(c)(3)(A), would be wrong on Higgs's view because bank robbery can be accomplished by shoving a bank teller to the ground while robbing the bank.  But both bank robbery and murder are paradigmatic crimes of violence, as Congress recognized.

As shown, Higgs's multiple convictions for kidnapping and first-degree premeditated murder plainly qualify as predicate "crime[s] of violence" under § 924(c)'s "force clause."  At the very least kidnapping and premeditated murder have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).

In addition, even under the residual clause, Higgs's claim would fail. *Moreno-Aguilar,* 198 F. Supp. 3d at 554–58 (distinguishing § 924(c)(3)(B)

SSA-022

from ACCA's residual clause and finding that § 924(c)(3)(B) "is not unconstitutionally vague"). *See also, United States v. Hernandez*, No. 2:16-CR-37-NT, 2017 WL 111730 (D. Me. Jan. 11, 2017) (following Second, Sixth, and Eighth Circuits and "[t]he majority of district courts to consider this issue," that § 924(c)'s residual clause is distinct enough from ACCA's residual clause to uphold its constitutionality). *Cf. Beckles v. United States*, No. 15–8544 (U.S. Mar. 6, 2017) (distinguishing *Johnson*− catchall definition of "crime of violence" in the advisory U.S. Sentencing Guidelines can't be void for vagueness under the due process clause).

In short, Higgs's claims have failed up to this point not because of problems with § 2255 but because his claims are meritless.  This Court should reject his attempt to circumvent a broad array of thoughtful decisions dismissing the argument Higgs repeats here.

## CONCLUSION

For all of the foregoing reasons, the Respondent respectfully urges the Court to dismiss Higgs's petition for writ of habeas corpus pursuant to

SSA-023

28 U.S.C. § 2241, with prejudice, for lack of jurisdiction.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ James R. Wood

James R. Wood
Chief, Appeals Division
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
E-mail: Bob.Wood@usdoj.gov

24

SSA-024

CERTIFICATE OF SERVICE

I certify that on March 22, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all ECF-registered counsel of record *via* email generated by the Court's ECF system.

By: s/ James R. Wood
James R. Wood
Chief, Appeals Division
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-6125
E-mail: Bob.Wood@usdoj.gov

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:16-cv-00321-JMS-MJD |
| | ) | |
| CHARLES DANIELS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**SUPPLEMENTAL RETURN TO ORDER TO SHOW CAUSE**

The Respondent, by counsel, responds to with the Court's order issued on June 26, 2019.  (Dkt. 31.)

The Supreme Court's decision in *United States v. Davis*, 588 U.S. __, 139 S. Ct. 2319 (June 24, 2019), has no impact on this issues raised in this cause of action.  As presented in the Respondent's initial return, Higgs's arguments are procedurally barred.  His claims are constitutional in nature, and, as such, are expressly contemplated under 28 U.S.C. § 2255(h)(2).  He therefore cannot jam his claim into 28 U.S.C. § 2241.

Even so, Higgs cannot show a miscarriage of justice.  His murder convictions remain crimes of violence under the force clause of 18 U.S.C. § 924(c)(3)(A), and his three firearm convictions remain valid.  This is another reason § 2241 is an inappropriate mechanism for Higgs.

For the reasons stated in the Respondent's initial response, and for the

reasons stated herein, this Court should dismiss Higgs's petition for a writ of habeas corpus.

## BACKGROUND[1]

Petitioner Dustin John Higgs is an inmate currently housed at the United States Penitentiary, located in Terre Haute, Indiana.   Higgs was convicted by a jury in the District of Maryland of: three counts of first-degree premeditated murder, in violation of 18 U.S.C. § 1111(a); three counts of first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*; and three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(2).   All of these crimes were punishable by life imprisonment or death.  *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003).  Higgs was also convicted of three counts of using a firearm "during and in relation to [a] crime of violence," in violation of 18 U.S.C.A. § 924(c).

Ultimately, Higgs received nine death sentences under the Federal Death Penalty Act of 1994, *see* 18 U.S.C.A. § 3591-3598 (the "FDPA" or "Act"). He also received an aggregated consecutive 45-year sentence for the firearm convictions.  *See* 18 U.S.C. § 924(c)(1); *United States v. Higgs*, 353 F.3d 281,

---

[1] Throughout this response the United States will make the following references: Dkt. = the docket in this § 2241 case; Crim. Dkt. = the docket in Higgs's criminal case in the District of Maryland (8:98-cr-00520-PJM-2).

2

333 (4th Cir. 2003).  Higgs's convictions and sentence were affirmed on appeal. *Id.* at 334.

Higgs does not challenge his multiple convictions for first-degree premeditated murder and kidnapping.  Nor does he challenge his numerous death sentences, each of which has been upheld after numerous challenges stretching over a dozen years.

Instead, Higgs challenges only his firearms convictions (and, by extension, the associated sentences) under § 924(c).  Those convictions, in turn, were predicated upon Higgs's three convictions for using a firearm in the commission of a crime of violence—that is either the murder or kidnapping of his three victims.  *See* Government's Opposition to Defendant's Application to File Successive § 2255 Motion at 2, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

Relying on *Johnson v. United States*, 135 S. Ct. 2551 (2015), Higgs argues that his underlying convictions for first-degree murder and kidnapping fail to categorically qualify as "crimes of violence" for purposes of § 924(c).  And, indeed *Davis* found that the residual clause of § 924(c)(3)(B) is void for vagueness.  *Davis*, 139 S. Ct. at 2336.  However, as argued by the Respondent in his initial response, Higgs is procedurally barred from bring his claims in a § 2241 petition.  Because 28 U.S.C. § 2255 was and is adequate to test the legality of Higgs's conviction, this Court lacks

3

jurisdiction to grant the habeas relief he seeks.

And, as also argued in the Respondent's initial response, Higgs's multiple convictions for kidnapping and first-degree premeditated murder plainly qualify as predicate "crime[s] of violence" under § 924(c)'s "force clause," §924(c)(3)(A).  Thus, *Davis*, which only addressed the residual clause (§ 924(c)(3)(B)), not the force clause (§ 924(c)(3)(A)), has no impact.

Nor can Higgs show a miscarriage of justice where his 45-year aggregated firearm sentences were ordered to run consecutive to his "nine death sentences  . . . one for each murder and kidnapping count."  *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003).

### DISCUSSION[2]

For the reason previously expressed in the Respondent's initial response, Higgs's claims are procedurally barred under the gatekeeping

---

[2] The Seventh Circuit "has not decided which circuit's law applies to a 2241 petition brought in the district of the petitioner's incarceration but challenging the conviction or sentencing determination of another district court in another circuit." *Cano v. Warden, USP-Terre Haute*, 2:17-cv-00441-JMS-MJD, 2018 WL 3389746 (S.D. Ind. Jul. 12, 2018).  Nevertheless, this district has applied the law of the circuit of conviction in reviewing a sentence or conviction under § 2241, in part to avoid inconsistent results with motions under § 2255, which apply the law of the circuit where the petitioner was convicted.  *Id. See also Salazar v. Sherrod*, No. 09–cv–619–DRH–DGW, 2012WL 3779075 at *3 (S.D. Ill. Aug. 31, 2012) (unpublished) (citing cases); *Hernandez v. Gilkey*, 242 F.Supp.2d 549, 554 (S.D. Ill. 2001).  As such, the Respondent's analysis as to substantive claims will be based predominately on Fourth Circuit law.

4

provision of 28 U.S.C. § 2244(a). (Dkt. 16.) Higgs cannot show that 28 U.S.C. § 2255 is "inadequate or ineffective to test the legality of his detention." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016); 28 U.S.C. §2255(e). Thus, his petition should be dismissed for lack of jurisdiction. *United States v. Wheeler*, 886 F.3d 415, 423 (4th Cir. 2018); *Spencer v. United States*, No. 16-CV-182-DRH, 2016 WL 1086933, at *3 (S.D. Ill. Mar. 21, 2016); *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003).

As to his *Johnson* claim, the Supreme Court's recent decision in *Davis* has no measurable impact. Higgs cannot show that he is actually innocent of his firearm charges.

## I.    Higgs Fails to Show that § 2255 Is Inadequate or Ineffective—In fact, He Raises a Constitutional Claim, Which is Contemplated by § 2255

Higgs fails to meet his burden to establish that his remedy under § 2255 is inadequate or ineffective.

In his reply, Higgs argues that he meets the exceptions discussed in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998). (Dkt. 29, p. 2-3.) He claims that he (1) relies on "not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion," (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is "grave enough ... to be deemed a miscarriage of

5

justice corrigible therefore in a habeas corpus proceeding," such as one resulting in "a conviction for a crime of which he was innocent." *Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016).  (Dkt. 29, p. 2-3.)

Higgs is wrong.  While Higgs meets the second exception—*Johnson* is retroactive, *Welch v. United States*, 136 S. Ct. 1257 (2016)—he cannot meet the first and third exceptions.

### A.    First Exception: *Johnson* and *Davis* are Constitutional Cases, Not Cases of Statutory Interpretation

Higgs cannot meet the first exception.  Higgs's arguments rely on *Johnson* and now *Davis*—both decisions involve an issue of constitutional law rather than statutory interpretation.  Higgs's claim is therefore barred by *Davenport*.

*Johnson* is a constitutional case.  In *Johnson*, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563.  *Johnson* announced a new rule of constitutional law, not a rule of statutory construction.  *See Price v. United States*, 795 F.3d 731, 733-34 (7th Cir. 2015) ("*Johnson* rests on the notice requirement of the Due Process Clause of the Fifth Amendment, and thus the new rule that it announces is one of constitutional law."); *King v. Werlich*, No. 16-cv-300-DRH-CJP, 2016 WL 1583936 at * 2 (S.D. Ill. Apr. 20, 2016) ("*Johnson* cannot

6

be the basis for a § 2241 petition"). So Higgs's *Johnson* claim *must* be raised in a § 2255 petition.

The same is true for *Davis*. *Davis* simply extended *Johnson's* holding to § 924(c)(3). *See Davis*, 139 S. Ct. at 2325–27. The Court's holding could not have been clearer that it was announcing a constitutional ruling: "We agree with the court of appeals' conclusion that § 924(c)(3)(B) is *unconstitutionally* vague." *Id.* at 2336 (emphasis supplied). Thus, *Davis* likewise involves an issue of constitutional law.

Higgs does nothing to rebut this obvious conclusion. He says that, "after his [§ 924(c)] conviction[s] became final, the Supreme Court issued a retroactively applicable decision interpreting the federal criminal statute under which [he] was convicted in such a manner that the conduct underlying the conviction is no longer criminal." *Hendrickson v. Kizziah*, No. 6:18-cv-316-GFVT, 2019 WL 2271123 at *4 (E.D. Ky. June 12, 2019). But that is precisely the type of claim for which § 2255(h)(2) provides. Higgs's claim here is not one for § 2241.

That is true despite the Fourth Circuit's previous denial of a second motion under § 2255(h)(2). As noted in the government's initial response, Higgs relied upon § 2255(h)(2) and sought permission from the Fourth Circuit to raise his *Johnson*-type claim in a successive § 2255 motion in his district of conviction. (Dkt. 16, p. 6.) The Fourth Circuit denied the motion. (*Id.*) That,

7

does not render § 2255 inadequate or ineffective.  *Garza v. Lappin*, 253 F.3d 918, 922 (7th Cir. 2001) ("The mere fact that Garza's petition would be barred as a successive petition under § 2255, however, is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing.").

Importantly, Higgs's application for a second § 2255 predated *Davis*. Thus, the government objected to that application, in part, "because it is 'clear as a matter of law,' from both *Johnson's* holding and its express disavowal of an intent to cast doubt on the constitutionality of other statutes, that Higgs's 'identified constitutional rule'—i.e., *Johnson's* rule invalidating the ACCA's residual clause—'does not apply' to his situation because [Higgs] is not challenging an ACCA-enhanced sentence."   Citing *In re Garner*, 612 F.3d 533, 536 (6th Cir. 2010), the government concluded that the circuit court was "confined to a consideration of constitutional law as it presently stands"; and because [Higgs's] claim depended on a novel "extension of the law," Higgs, by definition, had not made a *prima facie* showing [under 28 U.S.C. § 2244(b)(3)(C)]."  Government's Opposition to Defendant's Application to File Successive § 2255 Motion at 12, *In Re Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

In doing so, the government noted the existence of the then-circuit

8

court conflict and suggested there was a "reasonable probability that the Supreme Court" in the future would issue an opinion as to whether *Johnson's* holding extends to 18 U.S.C. § 924(c). *Id.* at 13. Thus, the government proposed that the Fourth Circuit, deny Higgs's application *without prejudice* so that Higgs could "file a new application" if and when the Supreme Court issued a decision extending *Johnson* to § 924(c). *Id.* (And indeed, in *Davis*, the Supreme Court extended *Johnson's* holding to §924(c).)

The Fourth Circuit followed the government's suggestion in part. It "denied" Higgs's application but not "without prejudice." *Order* at 2, *In re Higgs*, No. 16-0008 (4th Cir. Jun 27, 2016). Higgs is now armed with *Davis*, however, shifting this paradigm.

But, as of the date of this filing, Higgs has not sought permission to file a successive § 2255 motion based on *Davis*. Until he attempts to do that—which, after all, § 2255(h)(2) contemplates for constitutional cases such as this—Higgs fails to meet his burden of showing that § 2255 is inadequate or ineffective to test the legality of his detention. *Collins v. Bezy*, No. 1:06-cv-00006- SEB-VSS, 2006 WL 418653 at *1 (S.D. Ind. Feb. 17, 2006) (citing *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001) and *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999)); *see also Barnett v. Quintana,* No. 5:18-cv-00279, 2018 WL 7078579, at *17 (S.D. W. Va. Dec. 18, 2019) *(*citing *Hood v. United States,* 13 F. App'x 72 (4th Cir. 2001)).

9

Higgs cannot meet the first *Davenport* exception—in large part because § 2255(h)(2) permits an avenue for his claim in his district of conviction.

**B.      Third Exception: Higgs is Not Actually Innocent of His § 924(c) Convictions and He Cannot Show a Miscarriage of Justice**

Even if this was not a constitutional case, Higgs cannot meet the third exception.  He cannot show a miscarriage of justice — that he is actually innocent of carrying or using a firearm during and in relation to a crime of violence.  § 924(c).

To establish actual innocence relating to the gun convictions, Higgs "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal citations and quotation marks omitted).  Actual innocence "means factual innocence, not mere legal insufficiency . . . In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make." *Id.* at 624.

As an initial matter, even if Higgs's three firearm convictions were found to be invalid, he cannot show a miscarriage of justice by the 45-year aggregated gun sentence where he was sentenced to nine death sentences— one for each murder and kidnapping count. *Higgs*, 353 F.3d at 289.   His firearm convictions have no impact on his murder and kidnapping convictions or their related sentences, and certainly do not lengthen Higgs's term of

10

imprisonment.

Regardless, as noted in the government's opposition to Higgs's application to file a successive § 2255 motion, its initial response, and in this supplemental response, Higgs's murder offenses qualify as crimes of violence under the "force clause" (also known as the "elements clause") of § 924(c)(3)(A).  *See* Government's Opposition to Defendant's Application to File Successive § 2255 Motion at 16, *In Re Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016); (Dkt. 16).  Thus, even without reliance on the now invalid residual clause, § 924(c)(3)(B), a reasonable juror would find Higgs guilty of using a firearm during and in relation to a crime of violence.

That said, it does appear Higgs was charged with use of a firearm during and in relation to the murder *and* kidnapping.  *See Higgs*, 353 F.3d at 333.  *Higgs*, 353 F.3d at 314 ("In order to establish a violation of 18 U.S.C.A. § 924(c), the government was required to prove that Higgs (1) "used or carried a firearm," and (2) that he "did so during and in relation to" the murders.").  As discussed below, murder clearly qualifies under § 924(c), but kidnapping does not.  But the conjunctive charge is irrelevant here (and harmless).  Murder unquestionably qualifies as a crime of violence, so Higgs cannot show a miscarriage of justice.

SSA-036

### 1. Murder Qualifies as a Crime of Violence under the Force Clause, 18 U.S.C. § 924(c)(3)(A)

It goes without saying: murder is "a quintessential crime of violence." *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017).  Higgs's claim otherwise runs counter to case law and common sense.

Higgs was convicted of killing Tanji Jackson, Tamika Black, and Mishann Chinnin violation of 18 U.S.C. § 1111 which provides:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

> Any other murder is murder in the second degree.

18 U.S.C.A. § 1111(a).

Killing someone with a firearm, clearly involves "the use or attempted use of physical force, against the person of another."  18 U.S.C. § 924(c)(3)(A); *see also United States v. Castleman*, 572 U.S. 157, 170 (2014) (it "does not matter" that "the harm occurs indirectly, rather than directly (as with a kick or punch)," noting that, under the defendant's reasoning, "one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not

12

the trigger, that actually strikes the victim."); *United States v. Mathis*, No. 3:14CR00016, 2016 WL 8285758 (W.D. Va. Jan. 25, 2016) (the court has no difficulty concluding that murder, even if by poison or starvation, requires the use of physical force against the victim such that it qualifies as a crime of violence under § 924(c)(3)(A)); *United States v. Checora*, 155 F.Supp.3d 1192 (D. Utah 2015) (finding it "impossible to cause death without applying physical force as explained in *Castleman*").

At to be sure, other courts since *Johnson* have held that murder under 18 U.S.C. § 1111, qualifies as a "crime of violence" under the "force" clause, § 924(c)(3)(A).  *See e.g., Thompson v. United States*, 924 F.3d 1151, 1158-59 (11th Cir. 2019) (second-degree murder offenses under 18 U.S.C. § 1111 qualify as crimes of violence under § 924(c)(3)(A)); *United States v. Russell*, No. 05-CR-401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (notwithstanding *Johnson* and *Dimaya*, murder in aid of racketeering "qualifies as a 'crime of violence' under the elements clause of § 924(c)(3), not its residual clause"); *Percy v. United States*, No. CV-16- 02066-PHX-DGC, 2017 WL 2838469, at *4 (D. Ariz. July 3, 2017) (second degree murder under § 1111 is a crime of violence for purposes of § 924(c)); *United States v. Heard*, No. 13-cr-00764-WHO-7, 2016 WL 9088834, at *2-3 (N.D. Calif. Jan. 29, 2016) (section 1111(a) murder is a crime of violence under the force clause). *United States v. Lobo-Lopez*, 206 F.Supp.3d 1084, 1096 (E.D. Va. 2016)

13

("[C]ontrary to defendant's contention, felony murder, as defined by § 1111, constitutes a crime of violence pursuant to the force clause of § 924(c)."); *United States v. Moreno-Aguilar*, 198 F.Supp.3d 548, 554 (D. Md. 2016) (finding that section 1111 "necessarily involve[s] use of physical force against another and thus [is a crime] of violence under the force clause of § 924(c)").

Murder is a crimes of violence under the applicable force clause. § 924(c)(3)(A). Thus, because Higgs's § 924 counts were supported by one crime of violence, he cannot show a miscarriage of justice.

### 2. Thus, It Is Irrelevant that Kidnapping Is Not a Crime of Violence under the Force Clause

Kidnapping, however, is not a crime of violence under either circuit's law.

The Fourth Circuit, pre-*Johnson*, had held that kidnapping qualified under the elements clause. *See* (Dkt. 16, p. 14-17.) That is no longer true. Today, citing *Davis*, the Fourth Circuit determined that "both requirements of 18 U.S.C. § 1201(a) may be committed without violence" and that "kidnapping clearly does not categorically qualify as a crime of violence under the force clause, § 924(c)(3)(A)." *United States v. Walker*, No. 15-4301, slip op. at 7 (4th Cir. Aug. 9, 2019).

This new Fourth Circuit precedent is yet another reason that Higgs should bring his claim in the Fourth Circuit. Higgs is now armed with *Davis*

14

and *Walker*, which he was not when he first moved for a second motion under § 2255(h)(2).

Moreover, *Walker* alleviates a potential concern.  Higgs is no longer faced with a scenario where his district of confinement has better law regarding kidnapping than his district of conviction.  So any residual unfairness of that dichotomy has been alleviated.

*   *   *

Higgs's *Johnson* and *Davis* claims, which are constitutional in nature, are procedurally barred.  Further, he cannot show that § 2255 is inadequate or ineffective where he has not sought permission from the Fourth Circuit to raise his *Johnson* claim following the *Davis* decision.  Higgs has an avenue to raise his claim, he just chose wrongly here.

Nor can Higgs show a miscarriage of justice.  His firearm convictions remain valid where murder qualifies as a crime of violence under the force clause.  § 924(c)(3)(A).

Finally, *Johnson* and *Davis* have no measurable impact on Higgs's sentences.  Without the 45-year aggregated consecutive firearm sentence, Higgs still has nine valid death sentences.

This Court should dismiss Higgs's petition.

SSA-040

## CONCLUSION

For the reasons stated in Respondent's Return to Order to Show Cause,

and for the reason stated herein, the Respondent respectfully urges the Court

to dismiss Higgs's petition for a writ of habeas corpus.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ Brian Reitz
 Brian Reitz,
 Assistant United States Attorney
 Office of the United States Attorney
 10 W. Market St., Suite 2100
 Indianapolis, Indiana 46204-3048

16

## CERTIFICATE OF SERVICE

I certify that on April 9, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all ECF-registered counsel of record *via* email generated by the Court's ECF system.

By:    s/ Brian Reitz
   Brian Reitz
   Assistant United States Attorney
   Office of the United States Attorney
   10 W. Market St., Suite 2100
   Indianapolis, Indiana 46204-3048
   Telephone: (317) 226-6333
   Fax: (317) 226-6125
   E-mail: Brian.Reitz@usdoj.gov

17

**SSA-042**

FILED: November 3, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-8
(3:92-cr-00068-DJN-2)
_____

In re: COREY JOHNSON, a/k/a O, a/k/a CO

     Movant

_____

O R D E R

_____

For reasons appearing to the court, this case is placed in abeyance pending a decision by this court in *U.S. v. Juan Ortiz-Orellana*, No. 16-4844.

For the Court

/s/ Patricia S. Connor, Clerk

FILED: November 17, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-10
(3:92-cr-00068-DJN-1)
_____

In re: RICHARD TIPTON, a/k/a Whittey

      Movant

_____

O R D E R

_____

For reasons appearing to the court, this case is placed in abeyance pending a

decision by this court in *United States v. Ortiz-Orellana*, No. 16-4844.

For the Court

/s/ Patricia S. Connor, Clerk

**SSA-044**

FILED: November 30, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 16-4844 (L)
(8:13-cr-00496-RWT-2)
_____

UNITED STATES OF AMERICA

> Plaintiff - Appellee

v.

JUAN ALBERTO ORTIZ-ORELLANA, a/k/a Chele, a/k/a Furia

> Defendant - Appellant

_____

O R D E R

_____

Upon consideration of appellants' consent motion to hold case in abeyance,

the court grants the motion and places this case in abeyance pending a decision by

the court in *United States v. Dickerson*, No. 20-6578, and issuance of the mandate

in *United States v. Medley*, 972 F.3d 399 (4th Cir. 2020) (No. 18-4789).

For the Court

/s/ Patricia S. Connor, Clerk

**SSA-045**