2020 WL 7707165
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

UNITED STATES OF AMERICA
v.
DUSTIN JOHN HIGGS, Defendant.

Criminal No. PJM 98-520
|
12/29/2020

## MEMORANDUM OPINION

**\*1** More than two decades ago, a jury sitting in the District of Maryland found Defendant Dustin Higgs guilty on 15 counts for the first-degree murder and kidnapping of Tamika Black, Mishann Chinn, and Tanji Jackson. The jury subsequently determined that Higgs should receive the death penalty on each of the murder and kidnapping charges. On January 9, 2001, the Court entered its final Judgment and Order on the jury's verdict and sentence, indicating the procedures for imposing that sentence. On appeal, the Fourth Circuit affirmed Higgs's conviction and sentence and the Supreme Court denied certiorari. *See United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004). Higgs has been on death row ever since and is currently incarcerated at Federal Correctional Complex Terre Haute in the state of Indiana.

Now, some 20 years later, the Government seeks to carry out Higgs's death sentence.

Federal law provides that a federal execution shall be carried out in accordance with the laws of the state in which the defendant was sentenced. *See* 18 U.S.C. § 3596(a). However, Maryland abolished the death penalty in 2013, more than 12 years after Higgs was sentenced in this Court. Today, in the absence of state law by which to carry out Higgs's sentence in Maryland, the Government asks the Court to amend its 2001 Judgment and Order and direct that his execution be carried out in Indiana, pursuant to Indiana law.

Higgs merits little compassion. He received a fair trial and was convicted and sentenced to death by a unanimous jury for a despicable crime. That said, the Court believes it lacks the authority to do as the Government asks and will deny the Government's motion.

### I. Background

**A. Factual Background**

On the evening of January 26, 1996, Higgs, Willis Haynes, and Victor Gloria picked up Tanji Jackson, Tamika Black, and Mischann Chinn in Washington, D.C., and drove them to Higgs's apartment in Laurel, Maryland, to drink alcohol, listen to music, and smoke marijuana. In the early pre-dawn hours of the following morning, Higgs and Jackson got into an argument, prompting Jackson to grab a knife from the kitchen. Haynes persuaded Jackson to drop the knife, whereupon Jackson, along with Black and Chinn, angrily walked out of the apartment. According to Gloria, as Jackson left, she made some sort of general threat against the men and, once outside the apartment, appeared to write down the license plate number of Higgs's van.

Higgs observed this and, in response, angrily grabbed his coat and his silver .38 caliber handgun and urged Haynes and Gloria to accompany him to catch up with the departing women. The three men got into Higgs's car and pursued the women, with Higgs driving, Haynes in the front passenger seat, and Gloria in the back seat behind Higgs. When they caught up with the three women, Haynes, at Higgs's direction, persuaded the women to get in the vehicle, presumably to be driven home. Higgs commenced driving towards Washington, D.C. Meanwhile, according to Gloria, Higgs and Haynes engaged in a quiet conversation in the front of the van, which Gloria could not hear. But instead of taking the women home, Higgs drove into the Patuxent National Wildlife Refuge, a federal refuge in Laurel, Maryland, and pulled over in a secluded spot. One of the young women asked the men if they were trying to "make [them] walk from there," to which Higgs responded, "Something like that." The women then got out of the car.

**\*2** In the front seat, Higgs whispered something to Haynes and handed his gun to Haynes, who put it behind his back and got out of the car. Moments later, Gloria, who remained in the back seat of the car, heard a gunshot and wiped the mist off the back window in time to see Haynes shoot one of the women in the chest. Gloria turned to ask Higgs what he was doing and saw Higgs holding the steering wheel, watching the shootings in the rearview mirror. Gloria put his head down and heard more shots and a woman screaming.

Haynes then returned to the van and the men drove away, leaving the women, all of whom had apparently been shot, on the road or roadside. **Higgs** drove the van to the Anacostia River, where he or Haynes threw the gun into the water, then drove back to **Higgs's** apartment to clean up and to throw away any items that the women might have touched. **Higgs** and Haynes then dropped Gloria off at a fast food restaurant and warned him to "keep [his] mouth shut."

Around 4:30 the same morning, a driver found the bodies of the three women strewn along Maryland Route 197, which runs through Patuxent National Wildlife Refuge, and contacted the U.S. Park Police. The Court distinctly recalls from the trial testimony that at least one of the women's bodies appeared to have been run over by a vehicle. At the scene, the police found Jackson's day planner, which contained **Higgs's** nickname and telephone number, as well as part of **Higgs's** address and the license plate number on his van. A medical examiner later determined that Jackson and Black had each been shot once in the chest and once in the back and that Chinn had been shot once in the back of the head.

Almost three years later, on December 21, 1998, **Higgs** and Haynes were indicted on three counts each of first-degree premeditated murder, *see* 18 U.S.C. § 1111(a), first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*, kidnapping resulting in death, *see* 18 U.S.C. § 1201(a)(2), and using a firearm in the commission of a crime of violence, *see* 18 U.S.C. § 924(c).

The cases were severed for trial and Haynes was tried first. The jury found him guilty on all counts but thereafter failed to reach a unanimous verdict on whether to impose a death sentence. On August 24, 2000, the Court therefore sentenced Haynes to concurrent life terms on the first-degree murder and kidnapping counts and to a 45-year consecutive sentence on the firearm offenses. The Fourth Circuit affirmed Haynes's conviction and sentence on appeal, and the Supreme Court denied certiorari. *See United States v. Haynes*, 26 F. App'x 123 (4th Cir. 2001), *cert. denied*, 535 U.S. 979 (2002).

At **Higgs's** trial, which began five weeks after Haynes was sentenced, a different jury returned guilty verdicts against **Higgs** on all counts. On October 26, 2000, after hearing evidence on aggravating and mitigating factors relevant to a possible death sentence, the jury returned a sentence of death against **Higgs** on each of the murder and kidnapping counts. On January 9, 2001, the Court entered judgment on the jury's verdict. ECF No. 414.

The Fourth Circuit affirmed both **Higgs's** conviction and sentence, and the Supreme Court denied certiorari. *See United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004). Shortly thereafter, the Fourth Circuit affirmed this Court's denial of **Higgs's** motion for a new trial, as to which the Supreme Court again denied certiorari. *See United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004), *cert. denied*, 543 U.S. 1004 (2004). In the intervening years, **Higgs** has sought, and has been consistently denied, various other forms of post-conviction relief, all denials being affirmed on appeal. *See, e.g.*, *Higgs v. United States*, 711 F. Supp. 2d 479, 487 (D. Md. 2010), *aff'd*, 663 F.3d 726 (4th Cir. 2011), *cert. denied*, 568 U.S. 1069 (2012); *United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016); *see also* Order Denying Petition for a Writ of Habeas Corpus, *Higgs v. Daniels*, No. 16-cv-321 (S.D. Ind. Apr. 30, 2020), *appeal pending*, *Higgs v. Watson*, No. 20-2129 (7th Cir. filed June 29, 2020).

**B. Relevant Legal Background**

 **\*3** The Court's 2001 Judgment and Order states that **Higgs** was "adjudged guilty" on all 12 counts, including 9 counts punishable by death. It provides that he "is sentenced as provided on pages 3–6 of this judgment," pages which set forth several procedural details regarding implementation of the sentence of death. Although the Judgment and Order does not explicitly designate Maryland as the state in which and according to the laws of which **Higgs's** sentence is to be implemented, it does direct that the sentence is "imposed pursuant to Title 18, **United States** Code, Sections 3591 through 3597, including particularly Sections 3594 and 3596." In relevant part, section 3596 requires that "implementation of the sentence" of death must occur "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Here, that state is Maryland.

Under the same provision, the Court was authorized—indeed, required—to designate another state only "[i]f the law of the State d[id] not provide for implementation of a sentence of death." *Id.* In 2001, when **Higgs** was sentenced, Maryland law did provide for the death penalty and its

implementation. *See* Md. Code, art. 27, § 413 (2001) (providing for death penalty for individuals convicted of first-degree murder); Md. Code, art. 27, § 627 (2001) (providing for execution by lethal injection). It was not until 2013 that Maryland repealed its statutes relating to the imposition and implementation of death sentences, *see Bellard v. State*, 452 Md. 467, 472 (2017), thereby abolishing the death penalty and calling into question the procedure for implementing **Higgs's** death sentence in 2021.

### C. Recent Procedural History

On August 4, 2020, the Government filed the present motion, less than two pages in length, requesting that the Court clear the way for **Higgs's** execution in the absence of Maryland state law governing its implementation. The Government at first asked the Court to amend its 2001 Judgment and Order to provide for the sentence of death to be carried out in the state of Indiana rather than Maryland. On August 19, **Higgs** filed a response in opposition to the Government's motion, arguing in part that the Court lacked the authority to modify his judgment of conviction.

On September 1, the Government put forth a 19-page reply, conceding for the first time that the Court indeed lacked the authority to amend the judgment, asking instead that the Court "supplement" its judgment. The following day, **Higgs** filed a motion to strike or summarily deny the Government's motion and reply or, in the alternative, allow **Higgs** to file a surreply. The Court declined to strike the Government's motion but granted **Higgs** leave to file a surreply, which he did on September 18, 2020.

Without waiting for the Court's response, the Government proceeded to schedule **Higgs's** execution for January 15, 2021.[1] The Court held a telephone conference with the parties on December 8, 2020, and now considers the Government's motion and **Higgs's** opposition thereto.

[1]  *See* Notice of Execution Date (Nov. 20, 2020), ECF No. 649. It is not lost on the Court that this execution is scheduled to occur just five days before the inauguration of a new president who has stated his opposition to capital punishment. **Higgs** is set to be the fifth and final federal inmate to be executed in the waning days of the current administration. *See* Mark Berman & Matt Zapotosky, *Trump Administration Sets Wave*

*of Executions for Days Leading Up to Biden Inauguration*, Wash. Post (Dec. 2, 2020, at 4:31 p.m.), https://www.washingtonpost.com/national-security/federal-executions-accelerate-before-biden-inauguration/2020/12/02/34db45e0-340d-11eb-b59c-adb7153d10c2_story.html.

### II. Discussion

The Court considers first whether it has the authority to amend or supplement its original judgment to designate a new state for **Higgs's** execution. It holds that it does not. The Court next considers whether it is authorized to designate a new state without such designation constituting an amendment or supplement to the original judgment. The Court concludes that, under relevant case law, it cannot provide the Government the relief it seeks.

### A. The Court's Authority to Amend Its Judgment

 **\*4**  The Government's initial, extraordinary request that the Court amend its original judgment and sentence is something that the Court plainly cannot do. A " 'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). Only a few limited exceptions to this rule exist, none of which applies here. *See* 18 U.S.C. § 3582(c) (permitting sentence reductions for "extraordinary and compelling reasons," for certain elderly prisoners, as "otherwise expressly permitted by statute," or pursuant to sentencing range reductions); Fed. R. Crim. P. 35 (permitting sentence corrections for clear error or sentence reductions for substantial assistance to the Government); *see also United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed.").

The Fourth Circuit has taken a very a narrow view of the authority of district courts to amend *any* aspect of a criminal sentence in the absence of an explicitly recognized exception authorizing such amendment. For example, in *United States v. Jones*, the Fourth Circuit held that a district court lacked authority to amend the defendant's judgment to require immediate payment of a fine imposed four years earlier, even though the amendment sought to bring the

sentence in compliance with subsequent case law. 238 F.3d 271, 272–73 (4th Cir. 2001). The court in *Jones* was clear that, "[a]lthough there are circumstances under which a district court may modify or correct a criminal judgment order, none of them authorize[s] the district court to [amend a judgment] based solely on a subsequent change in case law." *Id.* at 272. The court rejected the Government's argument that it should nevertheless affirm the district court's amending order because the defendant could not "show that he was harmed by the amendment." *Id.*

Since the *Jones* court found that a district court lacked authority to amend a judgment to revise the terms for payment of a fine where the original judgment was no longer in compliance with the law, the Court believes *a fortiori* that it lacks authority to amend the judgment as to the place of execution, where Maryland law no longer provides procedures for an execution.

**B. The Court's Authority to Supplement Its Judgment**
The Court finds it notable that the Government first wrote in support of a "Motion to Amend Judgment and Order" but then in reply "agree[d] that this case does not present circumstances that would permit the Court to alter **Higgs's** criminal judgment." That explains why the Government abruptly changed its stance and asks that the Court instead "supplement" its judgment to the same effect. [2] Gov't Reply at 6, ECF No. 644. This avails the Government not at all.

[2] The Government frames this issue by suggesting that the relevant portion of the written Judgment and Order, including the statutory references and procedural directives, is not in fact part of the sentence but amounts to severable language that may be ignored or amended by the Court at will. The Court finds this suggestion wholly unpersuasive, both as a practical matter and in light of Supreme Court and Fourth Circuit precedent described herein. *See, e.g.*, *Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment.").

The Court is unaware of any applicable case addressing whether the Court might have clear-cut authority to "supplement" a final judgment when it may not "amend" one. But the Court is able to look to analogous Fourth Circuit case law for guidance. *United States v. Lightner*, sheds some light

on the question. There, the Fourth Circuit vacated a district court's letter opinion purporting to "clarify" the defendant's criminal judgment with respect to the payment of an imposed fine. 266 F. App'x 240, 241 (4th Cir. 2008). The court explained its decision as follows:

> ***\*5*** The original judgment provides that the fine be paid according to the schedule of payments prepared by the Probation Office. In its [later] opinion, the district court imposed the requirement that Lightner participate in the [Inmate Financial Responsibility Program]. However informal and well-intended the court's letter, the practical effect of the clarification was accomplishing "through the back door" what the district court was admonished from doing in *Jones*. Based on *Jones*, we find that the court was unauthorized to "clarify" the judgment, which essentially served to amend the judgment.

*Id.* at 242. *Lightner* thus clearly shows that the Fourth Circuit views even a supplemental order issued merely to clarify a monetary sentence as an amendment to the original judgment "through the back door" and therefore beyond the authority of the district court.

True, while the Court's original designation of Maryland occurred only by implication— by ordering implementation according to 18 U.S.C. § 3596, which at the time of judgment required execution of the sentence in Maryland— the practical effect of the original judgment was necessarily designation of the state of Maryland. The Court thus concludes that a supplemental order designating a different state for **Higgs's** execution would constitute an amendment of the original judgment in all but name. To the extent that the Government requests that the Court supplement or "clarify" its 2001 Judgment and Order by designating Indiana in lieu of Maryland as the place of **Higgs's** execution, such a supplement is precluded by the Fourth Circuit's decision in *Lightner*.

## C. The Court's Authority to Designate a New State without Amending or Supplementing Its Judgment

As an alternative of questionable distinction, the Government unpersuasively argues that the Court may, and indeed must, "enter a new order" designating Indiana to implement **Higgs's** sentence. The Government's theory is that because such an order purportedly "would not contradict the court's [2001] Judgment and Order," it could not be considered an impermissible modification or supplement of that judgment. Gov't Reply at 9.

The Government rests its argument for a separate order on the language of 🚩 18 U.S.C. § 3596, which it contends "indicates that the relevant inquiry should focus on the time of implementation, not initial sentencing." *Id.* at 11. In considering the Government's textual argument, it is helpful to view the relevant statutory provision in context:

> [1] A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. [2] **When the sentence is to be implemented**, the Attorney General shall release the person sentenced to death to the custody of a **United States** marshal, **who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed.** [3] **If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State**, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

🚩 18 U.S.C. § 3596(a) (emphases and sentence numbering added). The Government suggests that the temporal phrase at the beginning of the second sentence extends to the third

sentence, which should be read to mean that "[i]f the law of the State does not provide for implementation of a sentence of death" "[w]hen the sentence is to be implemented," *then* "the court shall designate another State." But the third sentence could just as easily be read in relation to the last phrase of the second sentence, which refers to the original imposition of the sentence (i.e., "in the manner prescribed by the law of the State *in which the sentence is imposed*"). [3]

[3] This is not an inappropriate time to invoke the rule of lenity, by which ambiguous words of a criminal statute are construed more favorably to the defendant. *See Rule of Lenity*, *Black's Law Dictionary* (11th ed. 2019).

**\*6** Indeed, in reality, a district court sitting in a state that does not have the death penalty would ordinarily "designate another State" at the time it imposes the sentence, not at some later time. In fact, in the case of every current federal death row inmate who was sentenced in a state that did not have laws for implementing a death sentence, the court designated a different state under 🚩 section 3596 *at the time of and as part of* the final judgment and sentencing order. *See* Judgment at 6, *United States v. Tsarnaev*, No. 13-cr-10200 (D. Mass. June 24, 2015), ECF No. 1480 (designating Indiana); Judgment at 2, *United States v. Rodriguez*, No. 04-cr-55 (D.N.D. Feb. 8, 2007), ECF No. 652 (designating South Dakota); *see also* Amended Judgment and Order at 2, *United States v. Sampson*, No. 01-cr-10384 (D. Mass. Feb. 6, 2017), ECF No. 2917 (designating Indiana after new trial and conviction).

The designation of a different state under 🚩 18 U.S.C. § 3596, then, invariably occurs at the time of sentencing, whether it is explicit or implicit. It is part of the criminal judgment. In no sense does 🚩 section 3596 grant the Court authority and jurisdiction it does not otherwise possess, i.e., to amend or supplement its judgment well after the fact.

As far as the Court can tell, there are only two other federal inmates in the same situation as **Higgs**, both having been sentenced to death in states that later abolished the death penalty: Kenneth Lighty and Ronald Mikos. Lighty was convicted and sentenced to death in this very Court in 2006, seven years before Maryland repealed its death penalty. *See* Judgment and Order, *United States v. Lighty*, No. 03-cr-457-PJM (D. Md. Mar. 10, 2006), ECF No. 248. [4] Mikos was convicted and sentenced to death in the Northern District of

Illinois in 2006, and Illinois subsequently abolished the death penalty in 2011. *See* Judgment (Sentencing Order), *United States v. Mikos*, 02-cr-137 (N.D. Ill. 2006), ECF No. 426. Unlike in the present case, however, the Government has not moved for designation of a new state to implement either Lighty's or Mikos's death sentence.

4 Lighty is currently back before this Court on a number of post-conviction filings.

Also unlike here, the criminal judgments in both cases explicitly designated the state in which the sentence was to be implemented under  section 3596. In *Mikos*, the judgment specifically provides (using the language of  section 3596) that the defendant's sentence shall be implemented "in the manner prescribed by the death penalty law of the State of Illinois." *Id.* at 2. Likewise, in *Lighty*, as it happens, this Court's judgment uses the same language to require that the defendant's sentence shall be implemented "in the manner prescribed by the law of the State of Maryland." Judgment at 1–2, *Lighty*, No. 03-cr-457-PJM. In those cases, it would be difficult, if not impossible, to argue that the designation of a state other than Illinois or Maryland, respectively, would not amend the judgments, since it would necessarily contradict explicit directives of the original judgments.

Again, while the 2001 Judgment and Order does not explicitly direct execution of the sentence in the state of Maryland, it does so impliedly by reference to  section 3596. So, although an order designating a state other than Maryland to implement **Higgs's** sentence might not literally contradict the explicit language of the Judgment and Order, it would definitely change its effect. To conclude that the Court is authorized, at this late stage, to designate a state other than Maryland here, when the court could not do so in *Mikos* or *Lighty*, would ignore the identical practical effect in all these cases. *See Lightner*, 266 F. App'x at 242. The judgment in *Mikos* designated Illinois as the state of execution, while the implicit effect of the judgment here was to designate Maryland as the state of execution. Either way, a change to the state designation would alter the original judgment. That is something the Court lacks the authority to do.

 **\*7** In the Government's view, not allowing the designation of a state other than Maryland "would be an absurd result and itself contrary to the sentence of death." Gov't Reply at 9. But *reductio ad absurdum* never fares well against *dura lex, sed lex*. This is especially true when it is a matter

of life and death. A mere desire to avoid an unintended result cannot overcome a district court's lack of authority to amend a criminal judgment. Congress may not have intended for  section 3596 to "provide a windfall to a defendant" in this rarest of circumstances, *id.* at 11, but that appears to be the outcome. Unless and until the Fourth Circuit or indeed the Supreme Court creates a relevant exception to the prohibition, such that *Jones* and *Lightner* would not be relevant or controlling here, the Court concludes that it lacks authority to amend or supplement its judgment to avoid a purportedly "absurd result."

### III. Conclusion

The Court finds that any order it might issue designating a state other than Maryland for the implementation of **Higgs's** death sentence—whether labeled an amendment, a supplement, or a new order—would necessarily modify its 2001 Judgment and Order and therefore would be beyond the authority of the Court recognized in *Jones* and *Lightner*.

It might be said that there is every reason to permit this execution to go forward: **Higgs's** crimes were an abomination, his central responsibility is indisputable, and he had a fair trial on both in terms of guilt and the applicability of the death penalty before a jury of his peers. The jury's verdict was affirmed on appeal, and this Court and appeals courts have considered and rejected **Higgs's** numerous post-conviction motions throughout the intervening years. If it had clear authority to act, the Court would see no impediment to concluding that Indiana is an appropriate place to carry out the execution, as the Government requests. But the 2001 Judgment and Order provides, by reference to  section 3596, that the execution is to be carried out according to Maryland law. The Court is not in a position to declare that it is authorized to circumvent the strong prohibition against amending a criminal sentence simply by calling such an amendment a "supplement" or "new order."

Until a higher court dispels the Court's concern that it lacks authority to act, the Government's Motion to Amend Judgment and Order, or to do the same by supplemental directive, is **DENIED**. A separate Order will issue.

### All Citations

Slip Copy, 2020 WL 7707165

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.